UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:                                              **Case No. 18-23674 (SHL)**
                                                    **Chapter 13**

**Joseph T. Granchelli**                            <u>**OBJECTION**</u>

                    Debtor(s).
-------------------------------------------------------X

## <u>THE DEBTOR'S OBJECTION TO MOTION TO REOPEN CASE FILED BY DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR HSI ASSET LOAN OBLIGATION TRUST 2007-1</u>

NOW HERE COMES the Debtor Joseph T Granchelli by way of objection to the reopening of his dismissed Chapter 11 Subchapter V bankruptcy case filed by Deutsche Bank National Trust Company, et al, ("DBNTC").  The Debtor through Counsel states as follows:

### I.    <u>Introduction</u>

1. Inits Motion to eopen the Debtor's Chater 11 Subch V Bankruptcy  to undo a sale and put horses back into a barn, the Movant sums up its discontent with the result of the court approved sale and demand for recourse as follows:

*"As outlined in more detail below, because the transaction was the result of fraud, was never consummated, and Secured Creditor is covering the property's carrying costs, the court should vacate the October 2020 order and overturn the sale and vesting deed into EI."* (see Motion ECF Dkt No 169 Pg. 5)[1]

2. The Debtor Joseph T. Granchelli (hereinafter "Debtor" or "Joseph T. Granchelli") respectfully submits this objection to the motion to reopen his dismissed Chapter 13 bankruptcy case filed by the alleged "secured creditor" Deutsche Bank National Trust Company as Trustee for HIS Asset Loan Obligation Trust 2007-1 ( hereinafter "DBNTC"

---

[1] Movant filed its motion nearly 5 months ago and waited until less than four days before objections are due (including Mother's Day weekend) to amend its motion without circulating a blacklined version to all parties.  The Debtor avers the Movant set the wheels in motion inviting litigation and should be held responsible for every single untruth told by it in the process of this motion practice.

or "Movant")[2]. As set forth herein below, DBNTC comes to this court with unclean hands after realizing (recently and apparently for the first time) that has been paying for taxes and insurance on a property the Debtor no longer owns,  for a mortgage lien voided by the bankruptcy court 4 years ago as the property transferred free and clear of all liens.

3.  The Movant and self-proclaimed (still) secured-creditor clearly dislikes the fact that the property known as 1071 Grove Street, Mamaroneck, NY was ordered to be sold by the Honorable Judge Robert D Drain in an order entered on October 13, 2020 (ECF Dkt No. 111).  The court should note, the order entered was over the objection of DBNTC via its servicer Nationstar Mortgage d/b/a Mr Cooper (hereinafter "Mr. Cooper") through its counsel the McCabe Weisberg Conway law firm.  This court should also note the order granted the sale to the highest bidder namely, the Movant DBNTC.

4.  It is undeniable that DBNTC and its servicing agent Mr Cooper  along with its counsel all sat on the rights of DBNTC (as the highest bidder) when they collectively failed to close within 60 days of entry of the order.  This epic failure fuels the Movant which now has absolute  gall to come to this court pointing fingers at every party except themselves, crying foul and conjuring up a story of some  masterful unspecific fraud committed by the second highest bidder "Earth improvements Inc", the  Debtor and undersigned counsel .

5.  As set forth below, amidst the smoke and mirrors of its motion, DBNTC, Mr. Cooper and its attorneys never address two independent closing counsel, identified in the court record, or the reality that in contempt of a federal court order, Mr. Cooper as the

---

[2] As discussed further herein, the underlying debt stems from a Note and Mortgage executed by the Debtor's father of similar name, "Joseph M Granchelli" (deceased). The Debtor recognizes he property acquired from his father is subject to a lien, but the underlying debt has never been the Debtor's obligation.

servicing agent for DBNTC unilaterally rejected the court approved payment tendered to it, thereby arguably - waiving it forever.

6. The Debtor Joseph Granchelli offers the attached affidavit (**Exhibit A**) in support of this objection. There is no fraud. As set forth below any attempt to suggest a fraud was committed is a tactic to deflect attention away from all the collective errors, neglect and pure failings of the Movant, its servicing agent and its lawyers.

7. The Debtor avers that he divested himself of all right, title and interest in the property at closing as contemplated by the court's order approving the sale.

8. The Debtor has no interest in the property as it sits today, owned exclusively by Earth Improvements, since closing on December 15, 2020.

9. The Debtor currently lives a peaceful life working hard and enjoying his now college aged daughter.

10. The Debtor does not wish to have his life disrupted by being forced back into bankruptcy at the whim of DBNTC and does not wish to have the sale of the unwanted property "undone" as the Movant now demands.

11. At the time of his bankruptcy, the Debtor could not afford the property nor accept the risk of exposure, as the Honorable Judge Drain reiterated on the record, and the Debtor made the best possible decision for the bankruptcy estate to sell the property with bankruptcy court approval.

12. As set forth below any discontent felt by the Movant DBNTC after disregarding the language in the order requiring it to close within 60 days, neglecting to request an extension of time as the court offered as a possibility on the record and also missing the

window of opportunity to appeal the 2020 final order are not issues the Debtor nor the bankruptcy court should be asked to cure now.

13. The Debtor, as demonstrated below, notified the Movant and its lawyers of the sale on more than one occasion and provided absolute proof that funds were delivered to the Movant's servicing agent by the Debtor's closing attorney.  Any statement by the Movant that it was not paid, didn't receive a check or that the closing was not consummated is a brazen untruth worthy of sanctions for fraud on the court.

14. The Debtor demonstrates below the funds from the closing were delivered ti DBNTC's servicing agent and summarily rejected.  Reopening the Debtor's bankruptcy does not eliminate any claim by the buyer for waiver of tender which can clearly be brought in a state court proceeding.  Fights over funds post closing have nothing to do with the Debtor or his dismissed case and is not a basis to reopen the case.

15. The Debtor will demonstrate below that the third component of the Movant's motion, ie., the mortgage behemoth Deutsche Bank National Truste Company and its servicer, another behemoth in the mortgage servicing world, are singing the blues because they have been paying the buyer Earth Improvement's property taxes and hazard insurance, f true, the Debtor takes no position other than to say, this too is a state court issue having absolutely nothing to do with the Debtor or his dismissed bankruptcy case.

16. If the Movant feels the homeowner, Earth Improvements, is unjustly enriched, it can file a lawsuit in the state court.  The sheer stupidity, for lack of a better word, of the Movant to be paying for a property sold at bankruptcy 363 sale 4 years after the fact needs to be addressed internally at the bank or servicing agent or perhaps at a shareholder's meeting. Wasteful spending of the Movant demonstrates poor business decisions evidencing the

fact that one hand does not know what the other is doing, but it has nothing to do with the

Debtor Joseph T Granchelli or his dismissed bankruptcy case.

## II.      <u>Statement of Pertinent Facts and Procedural History</u>

17. While the reiteration of the facts of the underlying dismissed bankruptcy case are long,
the Debtor avers it is necessary to recap and demonstrate the level of non-stop
incompetence of the Movant and its team of servicing agent and attorneys from the start
of the Debtor's case.  It boggles the mind of any serious practitioner to think a winning
credit bid could possibly fail to close, until one considers the whole history of neglect and
lack of care the Movant exhibited throughout the Debtor's bankruptcy case.

18. The Debtor filed a chapter 13 case on or about October 29, 2018 (ECF Dkt. No. 1) and
said case was subsequently converted to a case under Chapter 11 Subchapter V per order
entered on April 10, 2020 ( ECF Dkt. No. 62).

19. Subsequently, despite best efforts, the Debtor was unable to present a confirmable plan,
and upon motion of William Harrington, United States Trustee, SDNY, (ECF Dkt No
149) the bankruptcy case was dismissed by order entered by this Honorable Court on
June 21, 2021 (ECF Dkt No. 162)

**20.** Now, DBNTC seeks to reopen the dismissed Chapter 13 bankruptcy case as set forth
below.

21. At the start of the Chapter 13 phase, the Debtor filed a motion to extend the automatic
stay (ECF Dkt. No. 4) which was granted unopposed, and order entered on November 11,
2018 (ECF Dkt. No. 11).

22. In the Debtor's affidavit of support incorporated into the Debtor's motion to extend the automatic stay, the undersigned counsel affirmed for the record that the Debtor obtained a discharge in a prior 2017 Chapter 7[3] case (see Tirelli Affidavit ECF Dkt. No. 4 Part 3 ¶4).

23. The Debtor filed for bankruptcy protection with full intention to address and resolve THREE (3) primary issues in his bankruptcy case as follows:

    a.  The Debtor wanted to save his homestead located at 100 Gay Ridge Road, Yorktown, NY which was in foreclosure, pre-petition;

    b.  The Debtor disputed a non-dischargable sales tax debt allegedly owed to NY State from a past business owned by the Debtor years prior to filing the instant case (see POC No. 1-1filed by NYS Dept of Taxation and Finance in the amount of $672,513.68); and

    c.  The Debtor wanted to resolve issues with a problematic, secondary property which the Debtor acquired from his father, "Joseph M. Granchelli" (deceased) located at 1071 Grove Street, Mamaroneck, NY which was also in foreclosure, pre-petition.

24. The Court established the bar date for claims as January 7, 2019 with notice served on all creditors (ECF Dkt No. 6).

25. The Debtor listed Mr. Cooper, the known servicing agent of Movant DBNTC as the creditor related to the Debtor's secondary property located at 1071 Grove Street, Mamaroneck, NY (hereinafter the "property" or "problem property" or "secondary

---

[3] The prior chapter 7 discharge is an important case fact as it effects the validity of all claims for money in the instant case, to the extent they were dischargeable at the time of the Chapter 7 case. The Debtor does not seek nor need a second discharge and reiterates his desire not to reopen his bankruptcy case as it serves no purpose for him or his estate.

property") and listed the debt as disputed on schedule D of his petition  (ECF Dkt. No. 1 Sched. D).

**26.** The claims bar date came and went and DBNTC failed, neglected, refused or otherwise simply did not file a timely proof of claim, a fact conspicuously missing from the statement of facts filed by Movant in its instant motion. **At all times relevant the Movant had no valid claim in the Debtor's bankruptcy case; the record speaks for itself.**

27. Because the Movant failed to file a timely proof of claim, the Debtor through counsel wanting to bring DBNTC into the proceeding to deal with the liens on the property acquired from his father, exercised his right under FRBP 3004 and filed a proof of claim, disputed, in the amount of $1.00 on January 8, 2019 and served the same on Mr. Jay Bray, CEO of Mr. Cooper (see POC 5).

28. DBNTC continuing to sit on its rights and blatantly ignore all notice of Debtor's bankruptcy case, continued to foreclose on the subject property of the bankruptcy estate THREE (3) months post-petition, in violation of the automatic stay.  The Debtor through counsel served a warning letter on the creditor and posted the same on the Court's ECF docket on January 16, 2019 (ECF Dkt No. 16)

29. The Debtor's 362 violation warning letter was met with a responsive missive from Attorney Melissa DeCerbo advising the court that her firm cured the violation, which was also caused by said firm on behalf of its client. (ECF Dkt. No. 18)

30. DBNTC and its servicer Nationstar Mortgage Servicing d/b/a Mr. Cooper (hereinafter "Mr. Cooper"), despite having its own counsel appearing on record, continued to ignore

the Debtor's bankruptcy and did not react to POC 5-1 filed with the court and served on

the servicer's CEO with not so much as a single phone call to Debtor's counsel.

31. The Debtor through undersigned counsel still desirous of resolving issues surrounding the

secondary property, filed a motion on February 24, 2019 for an order under FRBP 2004

seeking documentation on the loan and a deposition of a corporate representative of the

creditor so that the Debtor could verify his father's residual mortgage debt and lien and

decide how best to handle the lien and the property in the context of his pending

bankruptcy case.  (ECF Dkt No. 21)

32. Without filing either a proof of claim or Motion or Relief From Stay, Attorney Melissa

DiCerbo filed an opposition to the Debtor's 2004 motion on March 1, 2019 (see ECF Dkt

No. 22) ironically claiming producing the documents requested by the Debtor was

"overly burdensome" for her client.

33. On March 4, 2019, the Court ordered the 2004 motion for documents and a deposition

over DBNTC's objection. (ECF Dkt. No. 23)

34. On March 5, 2019 without filing a motion seeking to file a late claim or otherwise

obtaining leave from the Court, Attorney DiCerbo filed the untimely POC 7-1 on behalf

of DNBTC seeking $1,168,457.00.  Said claim was filed nearly 2 months after the bar

date and nearly 2 months after POC 5-1 was filed through Debtor's counsel as set forth

herein above. Again this fact of the claim was filed well past the bar date is also

conspicuously not revealed by the DBNTC in its instant moving papers.

35. The parties proceeded under the court ordered 2004 process during which time, it became

clear the mortgage debt was in fact not the debtor's obligation but rather that of his

deceased father, Joseph M Granchelli.

36. It remains undisputed that the property needed major repairs and lacked a certificate of occupancy.

37. It remains undisputed that the property generated nominal under market rent of $1200 per month, not enough money to justify the exposure to the estate.

38. DBNTC, continuing to sit on its rights, still had not filed a Motion for Relief From Stay leaving he Debtor with the only logical solution to get rid of the property and sell it.

39. On or about August 28, 2019, a Motion to Dismiss Case was filed by the Standing Chapter 13 Trustee, Krista Preuss, Esq.  Trustee Preuss argued in favor of dismissal, in relevant part, "… the Debtor does not qualify for Chapter 13 relief as the Debtor's secured debt of $2,746,861.58 exceeds the jurisdictional limit of $1,257,850.00, pursuant to 11 U.S.C. §109(e)." (see ECF Dkt. No. 36 at Para. 5)

40. While the Debtor did not agree with Attorney Preuss's assessment of the case, the Debtor did exceed the jurisdictional debt limits due to the tremendous NYS sales tax claim as mentioned above coupled with the mortgage debt on the Debtor's primary residence (see generally  POCs 1, 2, 3, 4 and 5).

41. On January 31, 2020, the Debtor filed a motion to sell the property under 11 USC 363. (see ECF Dkt No. 56).  In his motion, the Debtor *invites* the instant Movant and all other creditors and interested parties to submit a credit bid. Once again, DBNTC omits to disclose to this Honorable Court, in the instant motion, that it was invited to submit a credit bid to counter the stalking horse bidder's offer to purchase.

42.  On March 13, 2020 the Debtor, unable to (yet) reduce the NYS Tax claim and very much aware of the Chapter 13 Trustee's pending Motion to Dismiss, filed a Motion to

Convert his Chapter 13 case to a case under the recently introduced new bankruptcy option, "Chapter 11 Subchapter V" (see ECF Dkt. No. 65).

43. The Debtor's Motion to Sell Property was originally scheduled for hearing on March 25, 2020 but due to the mandatory lockdowns, canceled court activity and such pandemic restrictions, the motion was adjourned to June 15, 2020.

44. Debtor's Motion to Convert was case was granted by the Court on April 10, 2020.

### III.    **Debtor's Motion to Sell Property**

45. The Debtor through counsel filed a Motion to Sell Property pursuant to 11 U.S.C. §363. Specifically, the Debtor's motion sought to sell the property located at 1071 Grove Street in Mamaroneck, NY which at all times was a secondary property the Debtor acquired a few years prior to filing the instant case from his father Joseph M Granchelli (deceased). The property at issue was not the Debtor's primary residence

46. The motion was met with TWO (2) written objections. The first by Melissa DiCerbo, Esq. of the law firm of McCabe Weisberg Conway as counsel for the creditor, Mr. Cooper as servicer to DBNTC. Said objection expressed a strong dislike for the Debtor wanting to sell the property but did not provide any reasonable alternative to immediately divest the Debtor of his interest in the property. Counsel complained about the perceived low bid but offered only an exterior broker price opinion and not certified interior appraisal as she could have if her client was concerned about the adequacy of the offer. Counsel also did not address any basis for the creditor's decision to not simply file a motion for relief from stay. (ECF Dkt. No. 83)

47. The second objection to the sale was submitted via letter by the non-attorney Subchapter V Trustee, Mr. Huebscher. (ECF Dkt No 82) Respectfully, Mr. Huebscher indicated the wrong property address in the subject line of his letter objection and thus may have confused the Debtor's primary residence (100 Gay Ridge Road, Yorktown, NY) with the property proposed for sale (1071 Grove Street, Mamaroneck NY) when he discussed a valuation obtained off "Zillow" which, like Ms DiCerbo's BPO, does not account for interior condition of the property.   In his letter objection, Mr. Heubscher does claim that the Debtor, during an IDI meeting, indicated that he did not know and couldn't recall the name of the proposed buyer.  In his objection, Mr. Huebscher agreed the property should be sold but thought there would be some benefit to the estate if it were listed; a point that was addressed by the Debtor in written opposition ( ECF DKT 85)  and by the Honorable Judge Robert D Drain at the hearing on the Debtor's motion.

48. The Debtor through counsel filed an omnibus opposition to the TWO (2) written objections.  (see ECF Dkt. 85)

49. At the hearing on the Debtor's motion on June 15, 2020 the Honorable Judge Robert D Drain addressed the concerns of the creditor and the Sub V trustee ultimately concluding it only makes sense for the Debtor to "get rid of [the property]".  The court approved the sale over the objections and adjourned the hearing for additional notice purposes and to provide DBNTC additional 40 + days time to contemplate making a credit bid.

(Transcript Attached as **Exhibit B**) .

1 either side could persuade me

2 otherwise. It appears clear to me that under any scenario,

3 even if this property were marketed by the most five star gold

4 epaulet real estate agent in Westchester County, it would not

5 sell for more than the bank's claim. The bank asserts that the

6 mortgage debt probably at this point is close to 1.2 million,

7 and the value of this property is anywhere between the
purchase

8 price under this contract and conceivably, on a lightning

9 strikes basis, somewhere north of 700,000 dollars, which would

10 leave a 500,000-dollar deficiency. And the debtor doesn't
want

11 it. And at some point, it is detrimental to the debtor's

12 estate to keep it, plus which there's a risk of just having
it,

13 so it makes sense to get rid of it.

14 **The second point is that it doesn't appear that the**

15 **bank really has a claim against the debtor. It just has a
lien**

16 **on the property. So the continued accrual of the bank's claim**

17 **doesn't hurt other creditors or the estate. It's not clear to**

18 **me why the bank hasn't moved for relief from the stay.**

19 **Ms. DiCerbo, your client wants the property, right?**

20 **It wants to have clear title and move on.**

21 **MS. DICERBO: That's correct. That's correct, Your**

22 **Honor.** That's all –
may be other liens. We haven't done a lien search. I can

2 certainly do one. But some of the liens that were included in

3 our prior motion are debts that were actually carried by Mr.

4 Granchelli's father, who has the same name.

5 THE COURT: All right.

6 MS. TIRELLI: So some of those judgment liens

7 certainly would be affecting that property as well.

8 THE COURT: All right. But they didn't get notice of

9 this sale, right?

10 MS. TIRELLI: No, they did not.

11 THE COURT: Okay. So I think that --

12 Ms. DiCerbo, have you done a lien search?

13 MS. DICERBO: I have not, Your Honor. I mean, I can

14 certainly reach out to my client to see if they have. I

15 probably wouldn't know that information until later on today.

16 THE COURT: Well, so my take on this, ultimately, is

17 as follows. This motion should be adjourned for two reasons.

18 First, it needs to be properly served on all creditors, and
in

19 particular, on any entity besides Deutsche Bank that would be

20 known to assert a lien on this property, because a 363(f)
sale

21 wouldn't be effective as to that lien unless they got notice
of

22 the motion.

23 And in addition, it doesn't appear to have been served

24 on all creditors, which is necessary under the bankruptcy rules

25 for a sale out of the ordinary course. So that's one reason for the adjournment.

2 The other reason is Deutsche Bank should be given time

3 to decide whether it wants to credit bid on this property. If

4 it knows who the lienholders are, it can get it a lot faster

5 through a 363(k) credit bid and sale with clean title than it

6 could in a foreclosure sale.

7 And under the longstanding case law in the Southern

8 District going back to 1986, the Beker Industries Case, In re

9 Beker Industries Corp., 63 B.R. 474, 476 (Bankr. S.D.N.Y.

10 1986), the SDNY follows the value interpretation of Section

11 363(f)(3) as to first liens. And of course, anyone else, even

12 if they don't consent, could be squeezed out in a foreclosure

13 sale. Indeed, if there are unpaid taxes, so could Deutsche

14 Bank under -- which would mean that 363(f)(5) is satisfied.

15 **But Deutsche Bank clearly believes the property is**

16 **worth more than the purchase price under this current contract.**

17 **At least that's what its motion says. So it should be given**

18 **additional time, basically a deadline to credit bid, which**

19 **would be the next hearing date.**

20 **I'm less concerned about having other parties be**

21 marketed, because, again, this property is, under any scenario,

22 underwater, and Deutsche Bank doesn't have an unsecured claim

23 in this case that would be reduced by potential marketing to

24 third parties. But I am concerned about Deutsche Bank's

25 opportunity to make a credit bid. The reason to permit the

sale, again, under 363(f) of the Beker case, leaving aside for

2 the moment 360(f)(5) (sic) is that ultimately this really is an

3 albatross this property. And as Judge Buschman said in Beker

4 and the court in Boston Generating said -- 440 B.R. 302 (Bankr.

5 S.D.N.Y. 2010), where a debtor in a reorganization case -- this

6 applies in 11, of course, would also apply in a 13 -- is

7 selling a property because that will enable him or her or it to

8 have more money available, because it's relieved of the costs,

9 with which to pay off creditors and reorganize, then it can be

10 sold in a short sale, assuming that there's adequate notice and

11 the opportunity to credit bid

12 So I suggest that this be adjourned for approximately

13 thirty days, and that three days before the hearing Deutsche

**14 Bank notify Ms. Tirelli whether it intends to credit bid in**

**15 excess of the bid that's on the table, and if so, we'll have an**

**16 auction at the hearing. If not, it's likely, if I assume**

**17 there's been proper notice on everyone else, that I'll approve**

**18 the sale.**

19 MS. TIRELLI: Okay. Thank you, Your Honor.

20 THE COURT: Okay. So Ms. Tirelli, you should get an

21 adjourn date from Ms. Lee (ph.) and then let Ms. DiCerbo know

22 what it is. And again, remind her that the deadline for

23 Deutsche Bank to inform you that it intends to credit bid in

24 excess of the current offer is three days before then.

25 MS. TIRELLI: Yes, Your Honor.

(June 15, 2020 Transcript Pgs. 14-17)


27. The very Honorable Court considered the offer presented, the amount of the debt, the fact the debt would not be paid during the bankruptcy case as the creditor had only a lien against the property and not a debt owed by the Debtor.

28. The court further mentioned the creditor never filed a Motion for Relief From Stay leaving the Debtor to deal with the lien the only way he could.  The court adjourned the hearing to give additional time and ample opportunity for the creditor to submit a credit bid if the creditor believed the offer of the buyer was too low.

29. Judge Drain also expressed his lack of concern about the listing of the property because
    the lien far exceeded the value that the market would yield, placing the value at
    somewhere between the offer and (if lightning strikes) $700,000.00.

30. The Honorable Robert D Drain left the parties with a clear record of all that he
    considered.  The Court opened the gateway for the creditor to reject the offer of Earth
    Improvements with a credit bid.

31. Also during the June 15, 2020 hearing, the  Honorable Judge Drain conducted an inquiry
    to determine if the buyer was in insider

THE COURT: It if it does do that notice, then we'll

2 have an auction at that hearing. If not, then I'll approve the

3 sale. I'll approve the sale either way, it just depends on who

4 the winning bidder is going to be.

5 MS. TIRELLI: Right. Right.

6 THE COURT: Let me ask though, since I have the buyer

7 and the debtor on the phone, is there any connection at all

8 between the buyer or its principals and the debtor?

9 THE DEBTOR: No, Your Honor.

10 MS. TIRELLI: Wait. Say your name so he knows who you

11 are.

12 THE DEBTOR: Oh. My name is Joe Granchelli.

13 THE COURT: Okay. Very well. So you don't have

14 any -- there's no agreement between you and the buyer other

15 than the sale agreement --

16 THE DEBTOR: No.

17 THE COURT: -- for the buyer's principals?

18 THE DEBTOR: No, Your Honor.

19 THE COURT: Okay. All right. All right. Does anyone

20 have any questions on that process?

21 MS. TIRELLI: No, Your Honor. Linda Tirelli. No.

22 THE COURT: Okay. Very well. So you should get the

23 adjourn date from Ms. Lee.

(see June 15, 220 Transcript Pg. 18)

32. The hearing on the sale was adjourned to July 25, 2020. A copy of the transcript of the adjourned hearing is attached as **Exhibit C**.

33. The creditor through its counsel, Attorney DiCerbo, as directed by the court did advise the undersigned of the credit bid in advance of the hearing and went on to cast a credit bid for full amount allegedly owed.

13 THE COURT: All right. So Ms. DiCerbo this is a time

14 for Deutsche Bank to make a credit bid here if it wishes to do

15 so.

16 MS. DICERBO: Yes, Your Honor. My client would like

17 to bid a hundred percent of the total debt, which is in the

18 amount of $1,280,240.65.

19 THE COURT: Okay. I have a feeling that's going to be

20 the winning bid.

(July 25, 2020 Transcript Pg 9 Lns 13-20)

    34. The Court again stated that there was no point to market the property since it would always be a short sale based on the amount owed. (see July 25, 2020 Transcript Pg 12 Lns 16-24)

    35.  During the July 25, 2020 hearing, the Debtor through counsel asked the court to set a parameters by way of a time frame for the winning bid, ie., the Movant DBNTC's own credit bid, to close.

16 MS. TIRELLI: Your Honor, I'm sorry. Linda Tirelli.

17 If I could just have one more question? In the order, if we

18 could just maybe put a time limit on the amount of time to

19 close. Only because very recently I've encountered an issue in

20 a Chapter 13 case where it's taking the bank literally eight

21 months to close, so I -- it was not Deutsche Bank, but I just -

22 -

23 THE COURT: All right.

24 MS. TIRELLI: -- want to know if we could do that.

25 THE COURT: Well, I think, first of all, you probably

1 have a form of order at this point for a credit bid purchase,

2 right?

3 MS. TIRELLI: Yes we do. Yes.

4 THE COURT: Okay. So that should be helpful. You

5 should provide Ms. DiCerbo with a copy of that right away.

6 Ms. DiCerbo, is there any objection to putting in,

7 like, a sixty day outside date?

8 MS. DICERBO: Somewhere between sixty to ninety days,

9 I think, is fair.

10 MS. TIRELLI: Your Honor, I think --

11 THE COURT: Well, why don't we say sixty days from --

12 MS. DICERBO: Given the pandemic and everything.

13 MS. TIRELLI: They don't need to meet in person.

14 THE COURT: If there's a -- let's put it this way.

15 Sixty days, subject to extension for circumstances outside of

16 the parties' control.

17 MS. TIRELLI: Okay.

## IV.    Additional Facts Withheld from the Court and/or Misstated to the Court by Movant DBNTC and its Attorney

36. The Movants papers start with a glaring misleading statement to the court as follows:

*"On February 22, 2007, Joseph Granchelli executed and delivered a note (the "Note") to Secured Creditor's predecessor-in-interest, HSBC Mortgage Corporation (ISA), in the original amount of $597,600.00. ...To secure the note's repayment, also on February 22, 2007, Joseph Granchelli executed and delivered a mortgage (the "Mortgage") to Mortgage Electronic Registration Systems, Inc ("MERS"), as Nominee for HSBC Mortgage (USA), against the above referenced property."*(see ECF Dkt No. 169 Pg. 3 ¶2 Relevant Facts and Procedural History")

37. The Movant and its attorneys purposely try to mislead the court the US Trustee and all interested parties with the above statement in her moving papers by not revealing to the court that the "Joseph Granchelli" who signed the note and mortgage is <u>NOT</u> the same person as the instant Debtor Joseph T. Granchelli. As set forth herein above at the June

15, 2020 hearing Attorney DiCerbo confirmed the note obligation was that of the Debtor's father, not the Debtor.

38. It is undisputed that the Debtor's father, the deceased Mr. Joseph M. Granchelli together with his wife and mother of the Debtor, Mrs. Laura Granchelli, executed the note and only the late Mr. Granchelli executed the mortgage. The Debtor avers that it is deliberate and calculated intention of the Movant and its attorneys to misinform the court and incite this court by allowing the court to conclude the signer of the note and mortgage is the Debtor Joseph T Granchelli, who has a name similar to his father. The Debtor did not take out the mortgage loan nor did he sign a mortgage lien. The Debtor owes no money to the Movant and thus the Movant would never participate in any distribution or otherwise paid under the Debtor's bankruptcy case except in a sale of the as subject property.

39. The Movant goes on to say *"Secured Creditor filed a Proof of Claim in the bankruptcy action on or about March 5, 2019, in the amount of $1,168,896.46." ."( ECF Dkt 169 Pg. 4)*

40. The Movant and its attorneys lack candor to the tribunal in so omitting to tell the Court that the claim filed was 2 months *after* the bar date established in the Chapter 13 phase. The claims bar date was January 7, 2019 and that the only timely claim filed pertaining the lien of DBNTC was that of the Debtor (POC No. 5) filed pursuant to F.R.B.P.3004. The Movant in the instant motion to reopen, did not have a valid timely filed claim in the case and its attorney decided not to let the facts get in the way of her client's story to the court.

41. The Movant and its attorneys outright misstated the truth to the court in its papers stating the following:

*"On or about October 13, 2020 the court granted the motion and issued an order permitting the sale of the property to EI".* (Application Pg. 4 at Second full para.)

42. This is a clever statement is deceptive and implies that Earth Improvements was the winning bidder, which is not true. The Movant was the winning bidder with a credit bid of almost $1.2million, Earth Improvements was the second highest bidder offering only $403,500.00.

43. DBNTC and its lawyer misrepresent the truth to lead this court to believe the would-be buyer Earth Improvements won the bidding process by some grand scheme to defraud all parties. Earth Improvements did not win the bidding process, it lost. Movant concealed the fact that its own credit bid was the <u>winning bid</u>. As set forth herein above, Mr. Cooper as the servicing agent cast a credit bid through counsel on behalf of DBNTC for the full amount owed on the lien. (see Order attached hereto as **Exhibit C**)

44. The Movant and its attorneys also deliberately opted not to disclose to this Honorable Court that DBNTC, as the winning bidder, **<u>failed to close within 60 days</u>** as required under the order <u>and</u> never requested an extension of time to close as discussed on record at the July 25, 2020 hearing. Instead, the Movant writes in its application, *"Pursuant to the court's October 13, 2020 order, EI submitted a bid in the amount of $403,500.00, which sale into EI was completed on or about December 15, 2020."[sic](ECF Dkt. No. 169, Pg. 4)*

45. The Movant deliberately omitted to tell this court that it never consummated its own sale failing to close within the 60 days allowed under the order. Under the order if DBNTC

did not close within 60 days, the order became null and void as to DBNTC and the sale went to the next highest bidder, Earth Improvements. Earth Improvements was <u>not</u> the winning bidder, it was second to the winning bid. Earth Improvements exercised its rights under the order after DBNTC did not exercise its own rights.

*46.* Had Movant wanted to close and take title, as discussed on record by the presiding judge, all it needed to do was call a title company and send a prepared deed to Debtor's counsel for execution by the Debtor. Had it done so, the undersigned would have returned fully executed deed to DBNTC's counsel of record, Melissa Dicerbo, Esq. or whatever title company she designated for recording. Closing would have been a simple no-brainer for the winning credit bidder, DBNTC if it truly wanted clear title as Attorney DiCerbo indicated at the June 15, 2020 hearing. *But once again, the Movant DBNTC sat on its rights and didn't show up.*

47. The Debtor avers he and his counsel heard nothing further from Attorney DiCerbo or her client after the court entered the order on October 13, 2024 approving the sale. By contrast, counsel for the second highest bidder was diligent and closed in the time frame provided under the order. DBNTC is upset with the wrong parties.

48. Movant again misrepresents the truth with a blatant lie about the buyer, Earth Improvements not making payment at closing to the creditor. In its original application the Movant states, *"A review of Secured Creditor's business records, however, shows that no such payment was received and therefore, Secured Creditor's claim, and mortgage lien, are still of record and remains unpaid."(ECF Dkt 169Pg.4)*[4] The fact was refuted with proof sent to Ms DiCerbo by the undersigned showing her that her own

---

[4] The Debtor reserves the right to seek discovery of the records searched and deposition of the party conducting the alleged search.

**client acknowledged receiving payment from Attorney Hatem** (real estate closing

counsel for the Debtor) in a letter dated January 2021 which was emailed to Melissa

DiCerbo Esq and copied to the undersigned by closing counsel, Albert Hatem, Esq.

49.  The Debtor avers that to the best of his knowledge the payment was made to the

Movant and disclosed to its counsel, Attorney DiCerbo.  The Debtor presented himself

at closing represented by Attorney Albert Hatem to transfer the subject property out of

his name into the name of Earth Improvements.  The Court should note that Earth

Improvements was represented by its own counsel at closing, Attorney Whitney

Singleton.

50. Post-closing, Attorney Albert Hatem delivered to the Debtor and his bankruptcy counsel

a detailed closing statement together with copies of the checks cut at closing. In

compliance with the Court's order, the Debtor through counsel filed a copy of the

complete closing statement with the copies of the checks, including the check made

payable to the creditor's servicing agent, Mr Cooper on the court's ECF system. (see

ECF Dkt. No. 130).

51. The existence of this clear published notice of the closing (ECF Dkt 130) to Ms DiCerbo

and her client that a closing occurred and payment was sent to the servicer, begs the

question, if payment was not received by her client, _why_ didn't Ms DiCerbo

immediately contact the undersigned, Mr. Hatem, Mr. Singleton or the bankruptcy

court?   Any serious practitioner who knows of a false closing statement published on

ECF, especially the attorney for the would-be recipient of the funds, would take action

and not wait 4 years.  The answer is obvious.  DBNTC via its servicer Mr. Cooper did

receive the proceeds of the sale as memorialized in its letter to Mr. Hatem

acknowledging receipt of the check and states the payment is rejected. A payment not received could not be rejected. If payment was not received, Mr Cooper would not know of Mr Hatem the Debtor's closing attorney or have any reason to send him a letter.

52. On January 20, 2021, Attorney Victoria Lehning, a Senior Associate from the office of Debtor's counsel, received an email from the Debtor's closing attorney, Albert Hatem. Mr. Hatem received letter from Mr. Cooper rejecting the payment from the closing. Ms. Lehning responded with the complete contact information for Attorney DiCerbo. (see January 20, 2021 email exchange with attachments attached hereto as **Exhibit D**) There was never any truth to the matter asserted by counsel in the Movant's original application that payment was not received. This untruth is repeated in the amended application and again in the creditor's objection to Earth Improvements Motion for Sanctions. **Mr. Cooper not only received the payment tendered, but it also waived it by rejecting the same *in contempt of the court's order*.**[5]

53. On January 21, 2021, Debtor's counsel and her staff were copied on an email from Attorney Albert Hatem to Attorney Melissa DiCerbo. Said email advised Ms. DiCerbo that her client rejected the payment tendered to it which was sent in adherence with the court's 363 order. Mr. Hatem attached a copy of the cover letter, copy of the 363 order, copy of the payment tendered and a copy of Ms. DiCerbo's client's letter. ( see January 21, 2021 email with attachments attached hereto as **Exhibit E**)

54. The Court should note that nothing further was heard from Ms DiCerbo until the filing of the instant motion accusing the Debtor, the buyer and the undersigned of fraud. but falls way short of laying out the elements of fraud with any specificity. Attorney

---

[5] The Debtor reserves the right to seek further discovery and sanctions on the issue of tender waiver and to present proof of a pattern of practice of Mr. Cooper rejecting legitimate payments tendered to it without valid reason.

DiCerbo also conspicuously leaves out the fact the buyer and the Debtor had separate counsel for closing.

55. It is obvious that Attorney DiCerbo and her client conspired in advance of filing the fabricated story about not receiving the funds and telling a tall tale about a mass fraud by an honest but unfortunate Debtor and multiple third parties.  Clearly, Ms. DiCerbo was apprised of the rejection letter generated by her own client because the Debtor's closing counsel sent it to her via email and US mail back in January 2021. Consistent with the rest of case, DBNTC and its lawyer did nothing in response to the letter presented by Mr Hatem. Clearly DBNTC, Mr Cooper and the McCabe Weisberg firm partake in the blame game but refuse to admit their own grotesque disorganization and communication showing only that truly the left hand has no clue what the right hand is doing.

### V.    Post-Sale Misconduct of DBNTC

56. On February 10, 2022, the Debtor received disturbing confirmation in the U.S. Mail that he is again named in court proceedings in which DBNTC is again attempting to continue a foreclosure of 1071 Grove Street, Mamaroneck, NY.  *Could it be that DBNTC was never notified by it's counsel that the property was sold pursuant to a federal bankruptcy court order in 2020?*

57. The property foreclosure pertains to the same property the Debtor no longer holds title to after selling it pursuant to the court's 363 order.  The law firm continuing the foreclosure is none other than the law firm known as McCabe Weisberg Conway (hereinafter, "McCabe") the firm at which Attorney DiCerbo is employed and the firm which continues to represent the Movant at all times relevant.

58. Debtor's undersigned counsel called the McCabe firm and spoke with Attorney Deana Cheli explaining the property was sold pursuant to an order of the US Bankruptcy Court while the debtor was in an active bankruptcy. Debtor's counsel followed up the call memorializing it in an email confirming that Ms Cheli advised that she received an email from the bankruptcy counsel (ie., Melissa DiCerbo) and confirmed the existence of the 363 order and the fact that the her client did in fact bid, won the bid and never closed nor requested an enlargement of time to close. Clearly the lawyers in various departments at the McCabe firm were all aware of the facts but were going to attempt to foreclose anyway. (see February 10, 2022 email exchange with attachments attached hereto as **Exhibit F**)

59. Continuing with brazen misrepresentations to the court, in its application to reopen Mr Granchelli's bankruptcy, the Movant states, *"A property search shows that the real property located at 16 Riverside Place, Dobbs Ferry, New York 10522 is owned by one Helen Racaneelli…" (*ECF Dkt No 169 Pg. 5 *)* This is a false statement fabricated from whole cloth. There could be no property search showing any such ownership because it is not true.

60. This Court should not tolerate creditors responsible for putting patently false statement before the court. The Movant and its counsel, Attorney DiCerbo, should be made to produce the property search they reference in the instant motion. The Debtor avers Ms. Helen Racanelli has never owned 16 Riverside Place, Dobbs Ferry, NY and that no property search was conducted to suggest otherwise.

61. The movant also stated a bold conclusion that *"because EI is not paying the taxes against the property, then it cannot possibly believe it owns it" (ECF Dkt No 169 Pg. 5)*

The Debtor has not owned the subject property since October 13, 2020.  The Debtor has no knowledge or insight as to why a mortgage servicing agent as large as Mr. Cooper would expend money on behalf of the mortgage behemoth DBNTC paying for property taxes on a property after rejecting the court ordered funds from the court approved sale.

62. As discussed below, a mortgage servicer paying taxes it does not owe is a clear sign of greater disorganization and once again one hand in a compartmentalized institution not knowing what the other hand  is doing.

63. The Debtor is not paying the taxes and any issue DBNTC has with the current owner is not a bankruptcy issue – it's a state court issue.

64. If the mortgage servicer like Mr Cooper or its principle DBNTC wants reimbursement for taxes it wrongly paid, it should be embarrassed to admit this publicly for its shareholders to read  and go seek payment from the rightful owner, Earth Improvements in a state court proceeding.  This issue has no place in in the context of a reopened dismissed bankruptcy case of the honest but unfortunate Debtor.

**VI    Argument**

**Earth Improvements Was Judicially Determined To Be A Non-Insider Under 11 USC 101(31)**

65. DBNTC dances around the term "insider" creating imaginary connective dots between the Debtor his attorney and the buyer as if it's the pop culture game of "7 degrees of Kevin Bacon".

66. The Movant starts by making up a story about some imaginary "property record search" revealing that Mrs. Helen Racanelli, a Debtor and client of the undersigned in an unrelated case, *owns* a property located at 16 Riverside  in Dobbs Ferry, NY.  DBNTC that falsely assumes that because the bidder, Earth Improvement, may not may not

maintain an address at the same address and because Mrs Racanelli is the undersigned client – Poof! Like magic, Earth Improvements *must therefore* be insider of the Debtor, Joseph Granchelli.

67. The Debtor avers that the Court properly questioned he Debtor about an connection with the budder Earth Improvements and concluded none exists. (See Transcripts attached as Exhibits B and C)

68. The Debtor avers, the convoluted theory proffered by the Movant of a relationship between the Debtor Joseph T Granchelli and the bidder, Earth Improvements is not what Congress had in mind when drafting 11 USC 101(31) as referenced in 11 U.S.C. 363.

69. Only certain individuals with specific types of relationships with both individual and corporate  debtors are classified as insiders.  An insider is a party considered to have an influence on a debtor's actions.  DBNTC fails to describe in any manner how Earth Improvements has ever had an actual relationship with the Debtor or  exhibited any influence over the Debtor, Joseph Granchelli.

70. An insider is thought to have the ability to influence the debtor's actions. Because of their close relationship, transactions between debtors and insiders are not considered to be at arm's length, making them subject to the close scrutiny of the bankruptcy court. DBNTC fails to give any example of Earth Improvements being in a position to ever influence the Debtor.

71. Per 11 USC 101(31), an insider of an individual debtor is any of the following parties:

- Any relative of the debtor

- A general partner of the debtor

- A partnership in which the debtor is a general partner

- A corporation of which the debtor exercises control

72. Movant DBNTC fails to demonstrate by any stretch of the imagination that anyone Earth Improvements or anyone who works for it is in any way related to the Debtor Joseph T Granchelli.

73. Debtor Joseph T Granchelli is not in business with the buyer and never has been. DBNYC has failed to show any relationship between the Debtor and Earth Improvements.

74. In the context of bankruptcy, an "insider" typically refers to individuals closely associated with the debtor, such as officers, directors, or relatives, as defined in 11 U.S.C. § 101(31). In the S.D.N.Y., courts extend the definition to include individual debtors themselves, especially when they seek to purchase assets from their bankruptcy estate.

**75.** There is no conflict of interest between the parties and DBNTC fails to demonstrate otherwise.

**VII.**      **DBNTC's Motion Fails To Meet the Standard for Reopening Dismissed Bankruptcy Cases**

76. Under the Bankruptcy Code, a bankruptcy court has discretion to reopen a dismissed bankruptcy case. However, such discretion is not without limits and is bound to certain legal standards. The burden falls on the Movant to demonstrate "good cause" for reopening the case.  DBNTC falls quite short of its burden. In re Randle, 472 B.R. 721, 726 (Bankr. S.D.N.Y. 2012) makes clear that "[t]he movant must demonstrate that reopening the case is warranted by some extraordinary circumstances or compelling need."  There is no extraordinary circumstances in the present motion – save for the fact

DBNTC didn't show up to close its own credit bid and comes back 4 years later to complain about it, might be extraordinary but not the sort of circumstance that reopens a dismissed case.

77. The Defendant has failed to satisfy the burden of demonstrating the existence of extraordinary circumstances or compelling need to justify the reopening of the dismissed Chapter 11 bankruptcy case. The mere assertion of a desire to address specific financial matters is insufficient to meet the requisite legal standard. In re Jenkins, 537 B.R. 575, 581 (Bankr. S.D.N.Y. 2015) held that "[t]he mere desire to address unresolved financial matters does not constitute good cause for reopening a bankruptcy case." The Movant harps about its spending its own money on taxes and insurance post-sale but shows no connection between this poor business decision and the Debtor's bankruptcy case.

78. This precedence in S.D.N.Y. Honorable Courts have consistently held that a motion to reopen a dismissed bankruptcy case must be supported by specific and substantial grounds. Franks v. Smith, 514 B.R. 143, 150 (Bankr. S.D.N.Y. 2014) emphasized that "[t]he movant bears the burden of establishing the existence of extraordinary circumstances or compelling need justifying the reopening of a dismissed bankruptcy case." General accusations of unsubstantiated fraud is not a compelling reason to reopen the Debtor's case.

## VIII.        Conclusion

For the reasons stated above and supported by relevant case law from this jurisdiction, the Plaintiff respectfully urges this Honorable Court to deny DBNTC's motion to reopen the Debtor's dismissed Chapter 11 bankruptcy case. Movant has failed to demonstrate the

existence of extraordinary circumstances or compelling need warranting the reopening of

the case. Justice and legal precedent demand the denial of the motion.

**WHEREFORE**, it is respectfully requested that the Court DENY the relief requested by Movant

and award such other and further relief as the Court deems just and proper.

**Dated**: White Plains, New York
         May 14, 2024

                           Law Offices of Tirelli Law Group, LLC

                           By:     __/s/ Linda M. Tirelli____
                                   Linda M. Tirelli, Esq.
                                   Attorneys for Debtor
                                   50 Main Street, Suite 1265
                                   White Plains, New York 10606
                                   (914) 732-3222