1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6    HELEN RACANELLI,                        Main Case No.

7          Debtor.                           16-22617-shl

8    - - - - - - - - - - - - - - - - - - - -x

9    In the Matter of:

10   JOSEPH T. GRANCHELLI,                    Main Case No.

11         Debtor.                           18-23674-shl

12   - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                300 Quarropas Street

16                White Plains, New York

17

18                May 21, 2024

19                2:24 PM

20

21   B E F O R E:

22   HON. SEAN H. LANE

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  ART

2

1

2  Helen Racanelli

3

4  Doc. #158 United States Trustee's Motion to Reopen Chapter 11

5  Case

6

7  Doc. $167 Debtor's Objection to the United States Trustee's

8  Motion to Reopen Chapter 11 Case

9

10  Joseph T Granchelli

11

12  Doc. #169 Deutsche Bank's Motion to Reopen Chapter 11 Case

13

14  Doc. #180 United States Trustee's Motion to Reopen Chapter 11

15  Case

16

17  Doc # 183 Motion for Sanctions / Motion of Earth Improvements,

18  Inc. for an Order (i) Reopening the Chapter 11 Case Pursuant to

19  11 U.S.C. (b); (ii) Finding Deutsche Bank National Trust

20  Company in Contempt of This Court's Sale Order Dated October

21  13, 2020; (iii) Compelling Compliance Therewith By Releasing a

22  Mortgage Lien on Real Property Located at 1071 Grove Street,

23  Mamaroneck, New York; and (iv) Imposing Civil Contempt

24  Sanctions In the Form of Attorneys Fees and Costs as well as

25  Coercive Civil Contempt Sanctions Pursuant to 11 U.S.C. (a) and

3

1

2  Rule 9011

3

4  Doc. #185 Deutsche Bank's Amended Motion to Reopen Case

5

6  Doc. #191 & 194 Debtor's Objection to Motions to Reopen Case

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Michael Drake

21  eScribers, LLC

22  7227 North 16th Street, Suite #207

23  Phoenix, AZ 85020

24  (800) 257-0885

25  operations@escribers.net

4

1

2  A P P E A R A N C E S:

3  TIRELLI LAW GROUP PLLC

4      Attorneys for Debtors

5      50 Main Street

6      Suite 390

7      White Plains, NY 10606

8

9  BY:   LINDA M. TIRELLI, ESQ.

10

11

12  GORDON REES SCULLY MANSUKHANI, LLP

13      Attorneys for Linda M. Tirelli, Esquire

14      One Battery Park Plaza

15      28th Floor

16      New York, NY 10004

17

18  BY:   JARED M. MOGIL, ESQ.

19

20

21

22

23

24

25

5

1

2  UNITED STATES DEPARTMENT OF JUSTICE

3       Office of the United States Trustee

4       One Bowling Green

5       Suite 534

6       New York, NY 10004

7

8  BY:   ANDY VELEZ-RIVERA, ESQ.

9

10

11  MCCABE, WEISBERG & CONWAY, LLC

12       10 Midland Avenue

13       Suite 1205

14       Port Chester, NY 10573

15

16  BY:   MELISSA S. DISCERBO, ESQ.

17

18

19  KIRBY ASINER & CURLEY LLP

20       Attorneys for Earth Improvements, Inc.

21       700 Post Road

22       Suite 237

23       Scarsdale, NY 10583

24

25  BY:   DAWN KIRBY, ESQ.

6

1

2      ALSO PRESENT:

3          ERIC HUEBSCHER, Former Subchapter V Trustee

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

7

P R O C E E D I N G S

1

2      THE COURT:  With that, the next matter that's on is

3   really two cases that are related.  The Helen Racanelli Chapter

4   11, 16-22616 -- 617, excuse me, and the Joseph Granchelli case,

5   18-23-674.  They're both on for a motions to reopen.

6      And so let me start by getting appearances from the

7   movants.  So starting with the United States Trustee's Office.

8      MR. VELEZ-RIVERA:  Good afternoon, Your Honor.  Andy

9   Velez-Rivera for the U.S. Trustee.

10      THE COURT:  All right.  And on behalf of Deutsche

11   Bank.

12      MS. DICERBO:  Good afternoon, Your Honor.  Melissa

13   DiCerbo on behalf of Deutsche Bank.

14      THE COURT:  All right.  And on behalf of Ms. Tirelli?

15      MS. TIRELLI:  Yeah -- I'm sorry.

16      MR. MOGIL:  Jared Mogil, Gordon Rees Scully

17   Mansukhani, on behalf of Linda Tirelli, the Tirelli Law Group.

18      THE COURT:  All right.  And I see Ms. Tirelli here as

19   well, so happy to have her here as well.

20      And I see the Subchapter Five Trustee in one of these

21   cases here.  So let me get that appearance.

22      MR. HUEBSCHER:  Yes.  Good afternoon, Your Honor.

23   Eric Huebscher, the former Subchapter Five Trustee in the

24   Granchelli matter.

25      THE COURT:  All right.  Good afternoon.

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

8

1          Any other party needs to make an appearance who I have

2   not yet heard from?

3          MS. KIRBY:  Yes, Your Honor.  Good afternoon, Dawn

4   Kirby.  Kirby, Eisner & Curly.  We represent Earth

5   Improvements, Inc.  And with me is Anthony Racanelli who's the

6   principal of Earth Improvements.

7          THE COURT:  All right.  Good afternoon.  Happy to have

8   you here.  Please be seated.

9          MS. KIRBY:  Thank you.

10          THE COURT:  And so we have a hybrid hearing.  We're

11   fully set up for hybrid in this Court.

12          I want to make sure that I do see our computers are

13   all -- our monitors are off, so let's turn those on here in the

14   courtroom.

15          Could folks on Zoom --

16          UNIDENTIFIED SPEAKER:  Procedurally, am I supposed to

17   move this one over here?

18          THE COURT:  You can move that over there.  That

19   actually is the Zoom microphone.

20          UNIDENTIFIED SPEAKER:  That's right.

21          THE COURT:  There's a microphone.  The one I'm using

22   is for amplification in this space.  That's for amplification

23   across the vast great internet, which, as you know, always

24   works.

25          So let me make sure that everybody on Zoom can hear

1   the folks in the courtroom.

2         MS. KIRBY:  Dawn Kirby representing Earth

3   improvements.

4         THE COURT:  Okay.  Great.  So I think we're all good

5   to go.

6         So how to begin?  So I have read all the papers back

7   and forth.  And as I understand it, the question for today is

8   the request to reopen the case, right?  That that's what the

9   question is, subject to those standards, which I don't think

10  anybody really disagrees with, that is when it's appropriate to

11  reopen a case.

12        And I mentioned that just because there's a lot of

13  discussion about the merits of people's arguments vis-a-vis

14  facts and whether they represent conflicts, whether they

15  represent things that should have been disclosed, weren't

16  disclosed, et cetera.  But my understanding is that today the

17  question is about reopening.  They obviously are related

18  questions.  So I think Tirelli's counsel would no doubt remind

19  me that if, for example, I found that there were no issues

20  worthy of examining, then obviously that would tell us a lot

21  about whether the cases should be reopened.

22        On the other hand, I don't think I necessarily need to

23  reach a final decision about potential -- the ultimate

24  conclusion about potential issues of disclosure and ethics.

25  For purposes of the record that I have necessarily to open, I

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

10

1  think I need to satisfy the requirements for reopening of the

2  cases.  And we would go from there.

3       So I just want to make sure I understand what we're

4  arguing, what we're not arguing.  And obviously, I invite your

5  wisdom on that topic.

6       But with that you can assume that I have read the

7  papers.  I have my notes here.  I've got highlights, I've got

8  stickies, I've got everything you would expect.  And so I don't

9  need you to start from in the beginning just because we're

10 talking about the history of two cases that were -- took a

11 while.  One was found in 2016, one was filed in 2018.  But

12 obviously I want to hear your views about the reopening

13 question.

14      And I thought I would follow the following order:  I

15 would hear from the U.S. Trustee's office, then I would hear

16 from Deutsche Bank, and then I would hear from Ms. Tirelli's

17 counsel on all of those issues that have been raised.  And then

18 we'll see where we are.

19      So unless there's any preliminary things to discuss, I

20 also that Earth Improvements is here.  And I will hear from

21 them as well.

22      So with that, I'll turn it over to the U.S. Trustee's

23 Office to start us off.

24      MR. VELEZ-RIVERA:  Good afternoon, Your Honor.  This

25 is Anthony Velez-Rivera for the U.S. Trustee.

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

11

1    From our perspective, all that is at issue is exactly
2 what the Court has said.  It is the motion to reopen the case
3 so that we could pursue relief vis-a-vis Ms. Tirelli who is the
4 debtor's counsel.

5    To get to the merits of our reopening motion, which is
6 distinct and separate and apart from the banks, we have to get
7 into the merits a little bit.  The issues are intertwined but
8 not that intertwined.  We don't have to get to the final merits
9 at all.

10    Generally speaking, our motion is premised on the view
11 that in this case, Ms. Tirelli didn't -- over the course of the
12 fourteen months in which the debtor was in Chapter 11, didn't
13 disclose that she was representing the debtor right upstairs
14 before Judge Seibel in a district court litigation and didn't
15 represent -- and didn't tell Judge Drain that she also
16 represented the spouse of the owner of the purchaser in a
17 separate bankruptcy case in the Bankruptcy Court.

18    There are several consequences that flow from those
19 nondisclosures which permeated the entire Chapter 11 phase of
20 the case.  Every single hearing that happened in that case had
21 that nondisclosure.  Ms. Tirelli's employment application did
22 not make those disclosures.  And even when asked pointedly at a
23 hearing, Ms. Tirelli elected not to make those disclosures.

24    For those reasons, we simply believe the case should
25 be opened, reopened I should say.  There's more than ample

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

1   cause.  There is case law for the proposition that cases can be

2   reopened for the pursuit of relief against debtor's counsel.

3   It's that simple, Your Honor.  And in two minutes, that's where

4   we stand.

5          THE COURT:  All right.  Thank you very much.  And let

6   me hear from Deutsche Bank.

7          MS. DICERBO:  Good afternoon, Your Honor.  Melissa

8   DiCerbo on behalf of Deutsche Bank.

9          My client is moving this Court to reopen instant

10  bankruptcy as cause exists to bring a motion to vacate the sale

11  order as a sale was not at an arm's-length transaction.  And

12  the buyers are not a BFP, bona fide purchaser, due to the

13  parties relationships and misrepresentations and/or omissions

14  that were made in the motion and during multiple hearings on

15  the motion.

16         Simply, a bona fide purchaser is someone who changes

17  value for property without any reason to suspect irregularities

18  in the transaction.  And this entire transaction has been

19  irregular, starting with the relationships of the debtors, the

20  buyer, the attorney representing all those parties at the same

21  time when the motion to sell was filed.

22         And nothing shows the conflict more accurately than

23  the length that I brought this motion to reopen and the buyer's

24  contact their attorney, Mr. Tirelli, only be told to find other

25  representation because she can't represent him because she's

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 13 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

13

1   representing the debtor.

2            This bankruptcy case was tumultuous from the filing

3   date.  As you know, the history has been stated out.  There are

4   questions that need to be answered here.  There was an

5   engineering report that was put with this motion to sell that

6   may have come from a Racanelli or Earth Improvements

7   contractor.  The judge asked the seller, the buyer, and the

8   debtor's attorney on more than one occasion for any reasons the

9   sale should not close.  And no one disclosed obvious conflicts

10  of interest.

11           My client ultimately didn't close in time, but they

12  did -- and they did receive the check and the approximate

13  400,000 but sent the check and letter back to the closing

14  attorney.  And it should be noted that you know, Earth

15  Improvements has not paid the property taxes or insurance at

16  all.  So the lender has been carrying these costs.  And given

17  all the facts and for the reasons stated today and for reasons

18  stated in my motion, I request that this case be reopened.

19           THE COURT:  So let me understand the return of the

20  check.  I'm trying to understand -- so the original motion was

21  filed where the there was an argument that the money was never

22  received.  That was changed, saying the money was received and

23  but it was returned.  But there wasn't -- I mean, what's the

24  timing of that and what happens that led to that event?

25           MS. DICERBO:  So it's been posted on the docket, the

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

14

1  letter that was sent back from the servicer, Mr. Cooper, back

2  to Mr. Haddam who was handling the closing at the time, just

3  stating that these funds were insufficient, we can't accept

4  that, and here's the check.  And that was sent back, I believe,

5  in January --

6      THE COURT:  Okay.  We're not -- I see somebody making

7  noises, shaking their head.  I hear from everybody in turn.

8  It's not a town hall meeting.  So everybody needs to keep

9  themselves professional.  And so everybody will get a chance to

10  be heard.

11      But let me ask you.  So the money was returned for

12  reasons unrelated to the motion to the request to reopen the

13  case in terms of your concerns about the arm's-length nature of

14  the proceeding?

15      MS. DICERBO:  That's correct.

16      THE COURT:  All right.  So I asked because I'm not

17  quite sure what I'm supposed to make of who's carrying the --

18  who's doing the carrying costs and who's not because I don't

19  really know where that fell apart and whose fault that was or

20  wasn't.

21      But let me just -- at the risk of sticking a toe in

22  those waters, let me ask.  When you say it was returned for

23  insufficient funds, I think it was some 403,000 dollars, when

24  you say insufficient funds, what was the amount that was

25  supposed to be tendered?

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 15 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

15

1          MS. DICERBO:  Close to over a million.  I don't have

2     the exact --

3          THE COURT:  No, no, that wasn't what the -- the backup

4     bidder had a different number, right?  I mean, I don't think

5     the backup bidder had bid a million-plus.  Am I misremembering

6     something?

7          MS. DICERBO:  No.  The Earth Improvements made a bid

8     for 403-.

9          THE COURT:  Right.

10         MS. DICERBO:  The proof of claim is over in excess of

11    $1 million dollars.  And there was a --

12         THE COURT:  Right.  But on what basis was the money

13    returned if the sale order said that the backup bidder at the

14    403,000-dollar number?

15         MS. DICERBO:  That it was returned as -- it was sent

16    directly to the servicer, and the servicer didn't know exactly

17    what it was.  And so they said this is insufficient to pay it

18    off, and we're returning it back to you.  That --

19         THE COURT:  I mean, I don't think that's the issue for

20    today, but I don't --

21         MS. DICERBO:  Understood, Your Honor.  I --

22         THE COURT:  That that seems problematic.  They're

23    supposed to know what's going on in the case.  And if

24    there's -- Judge Drain entered an order saying here's the way

25    this works, then here's the way it works.  That's the way it

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

16

1  goes.  So the issue about the payment of the money seems to be

2  completely separate and apart from this.  But I guess we'll

3  burn that bridge when we come to it.

4          So all right.  So I understand -- so what is it -- so

5  there's the money that's returned for whatever reason.  And

6  when what led to the filing of this motion?  I mean, like, in

7  other words, I have trouble imagining that you filed -- did you

8  file this motion because you said they haven't paid, you

9  returned the 403-, or you filed this motion because you say

10  we've learned the following facts about the relationships of

11  the parties and are troubled by it?

12          MS. DICERBO:  I learned the following facts of the

13  parties in this case.

14          THE COURT:  All right.  All right.  So your relief is

15  not premised on the money as I understand it at all.  It's

16  premised on the view of about potential and actual conflicts

17  that existed between various parties in the case.

18          MS. DICERBO:  Yes, Your Honor.

19          THE COURT:  All right.  Thank you.  I just wanted to

20  make sure I understood what relationship the deposit had with

21  the other issues and in terms of where your client stood.  All

22  right.  What else do you want to tell me about your motion to

23  reopen?

24          MS. DICERBO:  That's all I have, Your Honor.

25          THE COURT:  Okay.  All right.  So in that sense, it

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 17 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

17

1  might -- while there's -- you have different vantage points,

2  it's safe to say that there's overlap in the context of the

3  things your client is concerned about and the basis for its

4  motion and the U.S. Trustee's office and the basis for its

5  motion?

6       MS. DICERBO:  That's correct, Your Honor.

7       THE COURT:  All right.  All right.  If there's nothing

8  else, counsel, I think it probably also makes sense to hear

9  from the Subchapter V Trustee to the extent the Subchapter V

10  Trustee wanted to weigh in before I hear from Ms. Tirelli and

11  then from Earth Improvements.

12       So Mr. Huebscher, you don't -- I mean, you've been

13  much invoked.  I know, so I thought it only appropriate to give

14  you a chance to chime in.

15       MR. HUEBSCHER:  Good afternoon, Your Honor.  Eric

16  Huebscher, the former Subchapter V Trustee in the Granchelli

17  matter.

18       I really think that for at least from my perspective,

19  this case broke down into three areas.  One was the debt that

20  Mr. Grand Shelley had, I believe it was a sales tax issue.  The

21  second piece of it was how he was going to support his primary

22  residence.  And then the third piece was the sale of this piece

23  of real property.  And at each and every turn during the course

24  of the case the work that I did was met with resistance, an

25  objection.  In the case of --

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

18

1          THE COURT:  Well, let me back up here.  I'm not here

2    to -- these cases both have a lot of twists and turns, and I'm

3    not here necessarily to do a forensic analysis of the success

4    and all the twists and turns of the case.  We're here for the

5    motions to reopen, which really relate to, I think, the third

6    of the three issues you identified.  So I'm just trying to keep

7    us focused on that just because I think if we don't do that.

8    We may be here for an awfully long time this afternoon.

9          So if I could just ask you to focus your remarks on

10   the things relevant to the motions to reopen as identified by

11   the two parties.

12         MR. HUEBSCHER:  Yes, Your Honor.  I'm sorry.  I

13   apologize.

14         THE COURT:  No.  That's okay.  I'm sure as a

15   Subchapter V Trustee, it's difficult to parse these things down

16   because the case is a lived experience.  But I appreciate your

17   assistance.

18         MR. HUEBSCHER:  Thank you, Your Honor.

19         So with respect to the instant real property, when

20   that particular property came up for sale, I questioned the

21   validity of the contract of sale that was presented.  I

22   questioned the pricing that was set.  I also noted that Mr.

23   Granchelli actually, I believe, received $5,000 from Mr.

24   Racanelli to move out some personal goods.  And when I combined

25   a number of factors together, I filed I believe it was either

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

19

1  my second or third status report where I suggested to the Court

2  at that time that they asked Mr. Racanelli and Mr. Granchelli

3  to sign an arm's-length affidavit to demonstrate that this

4  transaction was at arm's length, that they didn't know each

5  other.  The information that was provided to me prior to that

6  was that Mr. Granchelli learned about Mr. Racanelli from a

7  business card left in his mailbox, that he didn't know this

8  person, and that based on this business card left in his

9  mailbox and 5,000 dollars later, he was selling the property

10  for at least a contract of sale, as I recall -- and I'm doing

11  this from memory, I apologize -- 403,000 dollars in change.

12  And as I recall, I only -- I don't believe I saw a bilaterally

13  signed contract of sale.  I think it was only signed by one of

14  the two parties.  That's what necessitated or precipitated,

15  excuse me, me writing the status report.

16        I believe that Judge Drain held a hearing on or around

17  that time.  Judge Drain asked both Ms. Tirelli and Mr.

18  Racanelli -- excuse me, and Mr. Granchelli whether they knew

19  each other.  And the disclosure was that they did not know each

20  other.  And then I believe at that point or shortly thereafter,

21  the sale order went through.

22        Now having the benefit of hindsight and reading the

23  papers, I think that my instinct was possibly correct.  But

24  that's yet to be seen.  Thank you, Your Honor.

25        THE COURT:  All right.  Thank you.

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

20

1       All right.  With that, let me hear from Ms. Tirelli's

2   counsel.

3       MR. MOGIL:  Good morning, Your Honor.  Or good

4   afternoon.

5       So as you described before, we're not going to burden

6   the Court with a recitation of our objections.  So I'm going do

7   my best not to tread on any old ground.  So seeing that

8   Racanelli was the first on the docket, I believe it makes sense

9   to focus on that first.  Although, of course, like Your Honor

10  said, there is a significant overlap.  One begets the other.

11      But that being said, I think there's something

12  interesting that the trustee said here, Mr. Velez, my

13  apologies, Rivera, that these disclosures permeated throughout

14  the proceeding.  And there's a line in the U.S. Trustee's

15  motion on the Racanelli matter saying that -- my apologies, in

16  the Granchelli matter that the overlapping representations

17  affected the Racanelli bankruptcy proceeding.  But that's it.

18  But just as he said right here, it affected it how?  The point

19  being is that the U.S. Trustee does nothing to explain how his

20  motion in the Racanelli matter benefits any of the interested

21  parties in the proceeding.

22      THE COURT:  Well, let me ask you the concern.  If

23  that's the case and somebody manages to have a case that --

24  let's assume for a second there's a clear violation of

25  disclosure issues and clearly things that are not disclosed

1  that should have been disclosed but all the parties having

2  reached a resolution at the end, say no harm, no foul.  What is

3  a court supposed to do in that circumstance?

4         MR. MOGIL:  No, understood, Your Honor.  But I think

5  this is where the debtor's affidavit speaks volumes, that from

6  her perspective, there was no conflict of interest.  There was

7  no disloyalty.  There was nothing that affected the

8  representation.

9         THE COURT:  Well, with all due respect to the debtor,

10  I don't think the debtor gets -- spends a lot of time on 327

11  and other things that we've got to parse here.  So I understand

12  the debtor has a view from the debtors perspective.  The

13  debtors tend to like their cases having been concluded to stay

14  concluded.  I get that.  So it's sort of -- I'm not casting any

15  aspersions on the debtor, but it's not really the debtor's

16  call.

17         And so I guess let me ask this question another way.

18  What am I supposed to make of your argument that none of this

19  mattered here, Judge, it all worked out just fine?  Like, where

20  does that fit into the analysis?  Is there cases that say that?

21  Is it the nature of -- are you trying to say something about

22  the nature of the relationships therefore not generating

23  anything that's worthy of looking at and reopening?  I'm just

24  trying to understand the legal --

25         MR. MOGIL:  Sure.

18-23674-shl    Doc 196    Filed 06/06/24    Entered 06/07/24 15:41:13    Main Document
Pg 22 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

22

1    THE COURT:  -- support for what you're saying.

2    MR. MOGIL:  And this kind of stems from Your Honor

3  saying that the parties mostly agree on the standard here on

4  what the matter to reopen, and one of them being futility or

5  waste of judicial resources.  And if there's no parties --

6    THE COURT:  Well, but that's almost a defense to

7  reopening.  I mean, it's almost a defense to say, well, we

8  think there's a reason to reopen, but, Judge, in this case it's

9  not very helpful.  So we're not saying there aren't issues to

10  look at.  We're just saying, again, no harm, no foul.

11    So now I'm not trying to be a pejorative in phrasing

12  it that way.  There are times when we don't get to the merits

13  of something because of some other legal doctrine.  I just

14  issued a lengthy opinion about standing, saying somebody has

15  got a very complicated issue, I don't think they have standing

16  to raise it.  So we're not getting there.  So I'm not trying to

17  throw any shade on what you're saying.  I'm just trying to

18  understand how the different arguments go together in a way

19  that I can sort of process.

20    So what would you rely on?  What would you cite to me

21  as the legal proposition that goes along with your argument?

22  Because obviously no harm, no foul is my phrase here, not

23  yours.  So I'm just trying to understand.

24    MR. MOGIL:  So we cited in our papers In re Carberry

25  (ph.) that denied a motion to reopen.  I think that there's no

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

23

1   asset, no bar date, no Chapter 7 case to schedule, no

2   creditors.  And it's that same vein here.  There are others

3   that we cited to, In re Marty (ph.).  The stated purpose there

4   was to reopen a post-charge reaffirmation.  It was

5   unenforceable.  Thus, there would be no relief that could be

6   provided.

7           So you're right.  To the extent, Your Honor, this is

8   more of like I can go through our application of why there

9   is -- it boils down to because there's smoke, there's fire, and

10  there really is no smoke here.  And that is exactly what I

11  intend to address.  But it was more of a threshold for Your

12  Honor saying --

13          THE COURT:  All right.

14          MR. MOGIL:  Even if the Trustee and Deutsche Bank are

15  correct, which I'm going to explain why they are not, then it

16  we're still left with the ineluctable conclusion that there's

17  no relief that could be afforded to a party.  So it is --

18          THE COURT:  So let me ask you.  I'm going to say what

19  I suspect Deutsche Bank would say, and they can straighten me

20  out if I got this wrong later.  But I suspect the argument

21  might be, and you might get it from the U.S. Trustee's office

22  as well, that if because you don't have the a truly arm's

23  length, fully disclosed set of relationships, that you don't

24  end up with a process that will yield to an appropriate result

25  and we'll never know.  And so for that, I harken back to Judge

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

24

1   Chin's decision in the General Motors case where he just said,

2   well, you say no harm, no foul, and everybody seems to think it

3   went fine, but we don't know unless these people are involved

4   in the process.  And it's a similar argument to say we won't

5   know unless we actually had a process where everybody

6   understood where people stood in the sense of I represent this

7   person and that and that person, and okay, well, maybe we need

8   a marketing -- so maybe Judge Drain would have said maybe we

9   need a marketing process.  Maybe we need to hire a real estate

10  broker just to make sure that that turns out to be the best and

11  final.  So what's your response to that concern?

12          MR. MOGIL:  And so I think that that's actually

13  something we plan to address.  In terms of the Granchelli

14  proceeding, because I think specifically there's the concept of

15  we don't know what we don't know and that really is a

16  justification for a fishing expedition, it doesn't really meet

17  the burden of, okay, the trustee should be entitled to this

18  sort of long standing, aimless, amorphous investigation of my

19  client.  But before we hit that, the reasons --

20          THE COURT:  Well, I don't know if -- I don't know if

21  that's what I'm getting.  It's a fair question, but what I

22  heard the UST just say was to reopen it so we can pursue

23  relief.  And they may have their motion filed.  This may be

24  their motion.  They have to reopen the case before they do it.

25  The question of the scope of discovery is another thing.

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 25 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

25

1  Again, I'm not going to throw the -- sorry.  I'm rampantly

2  mixing my metaphors this afternoon.  I'm not going to throw the

3  baby out with the bathwater and say, geez, they maybe they're

4  entitled to some things, but not other things; in light of that

5  though, I'm going to deny the motion to reopen.  So I don't

6  know that that gets that result.

7         But what do you say about the notion that there's

8  nothing to see here, there's no point to this if you might have

9  ended up with a sale process if you had enough concerns about

10  the arm's length nature?  Again, not casting any aspersions,

11  but saying now that we know, we know, we want to make sure and

12  stress test this and we should get a broker.

13         MR. MOGIL:  Sure.  And so then I think that's the

14  point I was trying to drive home, Your Honor, is that there is

15  more to discuss in terms of Granchelli.  But in terms of

16  Racanelli the other proceeding, there is nothing left to --

17  there's nothing that could be undone.  There could nothing that

18  could be reversed.  There's no allegation that the debtor is

19  involved in any sort of activity that would require this Court

20  to reexamine.

21         Now I can turn to the Granchelli matter.  I think that

22  is kind of where the more of the meat on the bones is.  And I

23  think that's where I can get into more of the specifics of why

24  there's nothing to undo there.

25         THE COURT:  All right.  So your argument, while not

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 26 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

26

1  conceding reopening on either, is that the Racanelli case is

2  different in kind because there's no transaction to sort of

3  take a look at to hang the sort of the reopening hat on.  It

4  has relevant facts, but it isn't -- to the extent that -- and

5  it may be that belt and suspenders that the request is made to

6  the extent that there's a need for a request for information

7  relating to how the sale transaction all of that worked in in

8  the one case that you want to open, reopen the second one.  But

9  I understand your view that they're different in kind.  That's

10 a fair point.

11        So why don't you turn to the other case and walk me

12 through your thinking on that?

13        MR. MOGIL:  Absolutely.  So I think ultimately, Your

14 Honor, we're left with what is at best a mere coincidence that

15 both the Trustee and Deutsche Bank are trying to dress up or

16 masquerade as some kind of ethical breach.

17        So to be clear, there's no dispute here that Anthony

18 Racanelli is a principal of Earth Improvements, who is the

19 stalking horse bidder on the Granchelli property and who also

20 happens to be the spouse of the Racanelli debtor.  But absent

21 is how Earth Improvements played any role in the Racanelli

22 proceeding.  So that's one matter.  But also either in his

23 corporate capacity or individual capacity, Anthony Racanelli

24 had no role in the Racanelli proceeding.  And so I know.

25 You're --

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

27

1          THE COURT:  Well, but is that the right question?  Is

2     the right question to be the attorney disclosing the

3     relationship so that the Court and the parties can figure out

4     an appropriate process to maximize value, right, that that's --

5     it can be cumbersome and it can be, frankly, not particularly

6     efficient.  But that's sort of beside the point when it comes

7     to the, the ability to have everybody's cards on the table,

8     whatever process comes out of it.

9          So I don't think this is a focus on Earth

10    Improvements.  I think it's a focus on disclosure and counsel

11    in the sense of what would you do if there was a dispute.  So

12    it's not hard to imagine a dispute.  So say Earth Improvements,

13    whether they're the backup bidder, the actual bidder, or

14    whatever it is, they decide to go ahead in that capacity.  And

15    the debtor is waiting for that to close for the case to work.

16    And then Earth Improvements doesn't want to close.  Then you

17    have a dispute between two parties with counsel who's

18    represented both.  So what do you say to that hypothetical?

19          MR. MOGIL:  Well, so I think counsel for Deutsche Bank

20    made the point that there was some kind of interesting fact

21    that Linda Tirelli refused to represent Earth Improvements in

22    this proceeding.  And that's not a coincidence.  That's nothing

23    other than consistency because Linda Tirelli never represented

24    Earth Improvements in the Granchelli matter, nor did she

25    represent the debtor in the transaction either.  She did not

1  play a role in that closing.  And so we -- I still don't see

2  how the argument --

3      THE COURT:  But aren't you supposed to look at

4  potential conflicts?  I mean, right?  So don't you have a thing

5  where -- I mean, when I was at a firm, I remember clients

6  wouldn't be very happy if you represented somebody who was on

7  the other side of a fight.  And that's how some of it played

8  out where somebody says, well, what are you doing going after

9  me or -- so wouldn't it require if Earth Improvements didn't

10  want to close and -- under my hypothetical and the debtor --

11  the Granchelli debtors had to go after them, in your view,

12  that's not a conflict?

13      MR. MOGIL:  Well, I don't -- but that's a hypothetical

14  that never actually occurred.  Would Linda Tirelli have --

15      THE COURT:  Yeah.  But again, I think the -- I think

16  the whole point of the conflicts issue is to identify potential

17  conflicts, because oftentimes conflicts don't come to pass, but

18  you're supposed to flag them just because you would hate -- I

19  mean, if you did that method and you said, well, let's see what

20  happens, and then you got far enough down you'd have to -- and

21  you did have a conflict, you'd have to pull on that string and

22  undo the whole ball of yarn potentially because you'd say,

23  well, none of what we've been able to do works now because we

24  have to get new counsel.

25      So again, maybe I'm missing something, but I think

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

29

1  that's why it's called actual and potential conflicts.  So, I

2  mean, maybe I'm missing something about one of the rules.  And

3  I'd be happy if you want to cite to something.  But that's one

4  of the concerns I have.

5          MR. MOGIL:  Well, I think we're looking at -- you're

6  looking at the 327(a) standard for what is an interested person

7  in terms of retention because that is, again, the focus that --

8  I understand United States Trustee said that disclosure at

9  every turn.  But really we're looking at her employment

10  application, Tirelli's employment application.  And there is no

11  adverse interest at stake.  There is no conflict at stake that

12  that's implicated either.  You have the DBL action that I'm --

13  I don't have to get into Your Honor if you're familiar with the

14  papers, but that was a minor representation.  It was a motion

15  to dismiss.  And it was an action that was disposed of at the

16  very first instance.  So for that part of the equation --

17          THE COURT:  But don't you normally have things like

18  that where people then get clients to sign things disclaiming

19  or waiving any conflict?  I mean, I think that's sort of a best

20  practice.  Now maybe it's best practices and it's not a

21  violation.  I don't know off the top of my head.  But that

22  oftentimes you get clients to say we're expressly waiving any

23  potential conflict we might -- we might assert here, Your

24  Honor, and we filed that to allow them to representation to go

25  forward.  But I don't know that that's the standard.  I mean,

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 30 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

30

1    the reason you have the waiver is because people are worried

2    about running into the standard.

3        MR. MOGIL:  And I think, Your Honor, you're absolutely

4    right.  You're discussing a best practice that if we had to

5    Monday morning quarterback, would there have been a waiver of

6    some kind?  Every practicing attorney operates differently.

7    Some people see it could a potential conflict where others may

8    not have noticed a potential conflict, but that does not rise

9    to the level of the misconduct that is at issue here that is

10   being alleged.

11       THE COURT:  All right.

12       MR. MOGIL:  Right?  And so I still fail to see because

13   you have really two -- in terms of Granchelli, you have two

14   instances where we're talking about representation.  The

15   Racanelli debtor is one.  And then it's Earth improvements in

16   the DBL action as the other.

17       Now the DBL action, like I explained, was wrapped up

18   as soon as -- as quick as could be.  And then I still don't

19   understand and I'm still struggling to see the connection

20   between how the representation of a debtor in one action and

21   then having that debtor's spouse purchase a property in the

22   other presents any sort of disclosure that's necessary.  I'm

23   sure --

24       THE COURT:  Well, isn't the notion that you have a

25   certain duty of loyalty to a client?  I mean, that's I think

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 31 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

31

1   that's what -- I think that's the concern, right?  And so you

2   just say I have a duty of loyalty, but I have a duty of loyalty

3   to these people as well.  And so one of you is not going to get

4   the benefit of my duty of loyalty.

5           MR. MOGIL:  Well, there --

6           THE COURT:  And again, that's why I think people ask

7   for waivers and things like that in the context of cases.

8           MR. MOGIL:  But respectfully, Your Honor, the

9   proceedings are so unrelated that there really isn't a

10  possibility of divided loyalties.  There's nothing --

11          THE COURT:  But I just identified a potential like

12  what if Earth improvements decided not to close?

13          MR. MOGIL:  And then what would -- the result would be

14  what?  They'd have to go back to the drawing board and --

15          THE COURT:  So Ms. Tirelli would have to say, as the

16  counsel for Granchelli debtor, whether to go after Earth

17  Improvements.

18          MR. MOGIL:  And then that could be analyzed at that

19  point if there was a potential conflict.  And I think -- and,

20  Your Honor, if what you're describing occurred, there would

21  have been a different calculation.  It would have been an

22  entirely different discussion.  Whether or not that Ms.

23  Tirelli --

24          THE COURT:  So you're saying if the conflict actually

25  did not arise in the course of the representation, I should not

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

32

1   reopen?

2   MR. MOGIL:  Precisely, Your Honor, that the conflict

3   was, if anything, potential and even then attenuated and

4   speculative.  And that's the point that I'm trying to drive

5   home, Your Honor, with the terms of these motions, that in

6   terms of Linda Tirelli's role, that there's not been any

7   allegation that there's been any harm to anyone or that anybody

8   was negatively affected.  And I will certainly address the

9   Deutsche Bank of it all, if the Court would permit me to.

10   THE COURT:  Yeah, please.

11   MR. MOGIL:  And so I respectfully disagree that the

12   chief concern here was facts that arose after the fact.  I

13   mean, it is telling that Deutsche Bank's motion was amended at

14   the last second once it was realized that the check was

15   circulated.  That --

16   THE COURT:  Well, frankly, I don't quite know what's

17   going on with any of that.  And that's its own problem.  But I

18   understand its current position.  Putting that aside -- and I

19   confess I wasn't overly persuaded by what I heard about its

20   unwillingness to close.  Butting that aside for a moment --

21   MR. MOGIL:  Putting that aside, Your Honor --

22   THE COURT:  -- in looking at what Mr. Huebscher said,

23   Mr. Huebscher, as an independent Subchapter V Trustee, was

24   concerned about the arm's-length nature of the preceding here.

25   And I suppose if you didn't have the counsel issue, you might

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 33 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

33

1  say, well, people can do what they want or whatever it is.  But

2  there seems to be related to that.  And so I -- it does -- it

3  is concerning to me that Mr. Huebscher was concerned as an

4  independent third party who is serving as a Subchapter V

5  Trustee about that.  So what's your response to his concerns?

6          MR. MOGIL:  And that is -- that was precisely his role

7  at the time.  And I still have -- there's still not a

8  misstatement in terms of the arm's-length nature of the

9  transaction.  It was explored by this Court, obviously, with

10  your predecessor, Judge Drain, but it was subject to a hearing.

11  And the nature of the introductions were made clear that this

12  was a flier that the debtor received.  And at that time, it

13  wasn't even clear that it was coming from Earth Improvements.

14          THE COURT:  Well, but I am a little concerned about

15  the sort of careful statement that I received.  And I'm just

16  going to see if I can read it.

17          "Neither my firm nor I has an interest material

18  adverse to the interest of the estate by reason of any direct

19  or indirect relationship."

20          And so that's -- it's the indirect relationship, I

21  think part of that, that I think most people say when in doubt,

22  disclose and they'll disclose.  But as counsel who's working

23  two cases when different parties -- when two debtors are

24  involved and have this kind of interrelationship, it does --

25  that I think is -- because that was, again, the representation

1   that was made.  So what do you say about concerns as to that

2   statement?

3         MR. MOGIL:  So just so I'm clear, when we're talking

4   about, the indirect interest that you're concerned with, Your

5   Honor, it is the representation of the principal of the

6   entity's spouse in a bankruptcy proceeding, right?  We're not

7   talking something --

8         THE COURT:  Well, I think there's -- I think you

9   identified that there's really two things.  One is the

10  representation of the entity somewhere else.  And the other is

11  that it's the representation of the debtor whose spouse is

12  involved in this.  So I think there's a couple of different

13  sets of facts.

14        Again, I'm not -- I don't have a final view on any of

15  this because I haven't put the pieces together.  And I don't

16  think that's what we're doing here today.  But I know you

17  called the DBL matter a minor matter that was wrapped up as

18  quickly as can be.  Again, that's sort of how things worked

19  out.  But when you go into these things, you don't -- that's

20  why you disclose, because you don't know how long that case

21  will take or this case will take or whether a potential

22  conflict will turn into an actual conflict.

23        So what's your view about that language about not

24  having any adverse interest by reason of any direct or indirect

25  relationship?

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

1          MR. MOGIL:  Well, I think it's also important to note,

2    and it hasn't really -- it has been lost in -- so far in this

3    discussion.  But this also goes back to Deutsche Bank as some

4    kind of innocent bystander.  Deutsche Bank was the winning --

5          THE COURT:  Well, that's a separate issue.  That's a

6    separate issue.  I've heard it.  And that's the thing about

7    return of the deposit, and they refused to close.  If there's a

8    backup bidder in the order, there's a backup bidder in the

9    order.  We can fight about that all the livelong day.  And I'm

10   not -- people reserve all their rights.  But that's a different

11   question as to the nature of the relationship and whether

12   there's any disclosure obligation by counsel.  So let's stick

13   with that for the moment.

14         MR. MOGIL:  Right.

15         THE COURT:  Again, I understand your argument.  And

16   you've clearly presented it.  So I've got it.  And I have

17   concerns about that, but I haven't been able to unpack all the

18   facts on that.

19         MR. MOGIL:  All right.  Your Honor.  Then I'll leave

20   that to the side.

21         And so in terms of an indirect relationship, I

22   still -- it's not as if -- it still reads as if it Tirelli has

23   some kind of, like, economic interest or something.  That's

24   what we're looking at, and that's just not the case.  She was

25   paid for a litigation service that has no relation to either

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

36

1 proceedings.  And she and Anthony Racanelli, in his individual

2 nor corporate capacity, had any sort of interest in either of

3 these proceedings other than as a stalking horse bidder whom

4 Tirelli never represented.

5        So I just -- I understand that you -- and you could

6 take it multiple levels out.  And at some point if you put

7 anything under a microscope, I'm sure it doesn't appear the way

8 that it was in reality which was there was no interest to

9 disclose.

10        THE COURT:  All right.  Anything else that you wanted

11 to address, counsel?

12        MR. MOGIL:  No.  I certainly wanted to spend a lot

13 more time on the Deutsche Bank end of it.  But I think, Your

14 Honor, you have a pretty clear image of what the arguments are

15 on that matter.

16        THE COURT:  Yeah.  No, no, I do.  And that may be

17 something that's sort of separate and independent of what we're

18 talking about.  We'll figure it out.  But I do I think have a

19 better understanding of the facts after talking to Deutsche

20 Bank's counsel, that I don't think there's the linkage between

21 the payment return and this issue we're all talking about.  And

22 I just wasn't sure about that.  But that seems to be pretty

23 clear.  All right.

24        MR. MOGIL:  Understood.  And I'll leave you then, Your

25 Honor, just with this, that what you're describing, I think

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

37

1  you're hitting the nail on the head, is that should a

2  disclosure been made and if that's the if that's where the

3  calculus is, wherever you turn on that issue, whether it is a

4  yes or a no, there's still not necessarily anything that would

5  flow from an intensive investigation.  It's just -- there is no

6  meat on the bones.  There is no smoke, let alone fire.  I mean,

7  you have perhaps at -- on the Trustee's best day an oversight

8  that perhaps, yes, maybe he should have put on paper.

9       But again, like I said -- and the reason why I brought

10  up the Deutsche Bank credit bid was that there really wasn't a

11  contemplation that Earth Improvements would eventually purchase

12  the property, nor is there any connection to the Racanelli

13  debtor.  So I think what we're left here is there's nothing

14  left to undo.  And there's nothing left to address.  And you're

15  going to have relief flow to debtors who do not want them.

16       And I understand that they don't get the final say, as

17  Your Honor said.  But ultimately, that is -- we're still

18  discussing futility and judicial resources.  Are we going to

19  use judicial resources to address an issue that cannot -- that

20  frankly wouldn't undo anything?

21       THE COURT:  All right.  I think I got it.  Thank you

22  very much.

23       And so let me hear from Earth Improvements, which is

24  here in the courtroom.

25       MS. KIRBY:  Thank you, Your Honor.  Dawn Kirby.

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

1        With respect to the U.S. Trustee's motion, Earth

2   Improvements does not take a position.

3        Obviously, with respect to Deutsche Bank's motion, we

4   do.

5        I think there is quite a bit of speculation in what if

6   this and what if that in in the motion.  But the one thing I'd

7   like to point to start with directly is the that the check for

8   400,000 dollars, I'll call it -- I'll round, was sent back.  It

9   was not.  There's nothing -- and it continues to be represented

10  to the Court today that it was.  But the letter from Mr.

11  Cooper, the servicer, does not say as Ms. DiCerbo said it says

12  enclosed is the check.

13       About two weeks later, Mr. Haddam, who was the real

14  estate counsel for Mr. Granchelli, wrote to Ms. DiCerbo and

15  said we got this letter from Mr. Cooper but without any check.

16  I suggest that you discuss this with the servicer, show them

17  the sale order, and resolve this and file a satisfaction of

18  mortgage.  I don't know why it's still being pushed that this

19  check was sent back because it was not.  And --

20       THE COURT:  So I think as I sort of hinted with other

21  folks, I think the issue about where the sale consummation fell

22  apart is in a way a distinct issue from the question about the

23  disclosure issues that I think are at the forefront of the U.S.

24  Trustee's motion.  And that's probably why you have a different

25  view and don't really take a position on that.

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

39

1        But I don't -- frankly, based on what I have, I don't

2    have a sufficient record to figure that out.  Also, I have a

3    question about if anyone -- I don't even know who owns the

4    property currently.  It sounds like one party is in there doing

5    things.  Another party is paying the taxes.  There's a sale

6    order.  I'm not -- it's not clear what the status is with the

7    check.  So that's a whole other kettle of fish, as my

8    grandmother would say.  I don't really know what to do with

9    that, but I think it's separate and apart from the disclosure

10   issue.

11       MS. KIRBY:  I use that, Your Honor, as an example of

12   one of the things that Earth Improvements is being accused of

13   or why an investigation needs to occur which is simple

14   speculation that's picked out of the air.  The speculation in

15   the papers that I heard Ms. Tirelli introduced the buyer and

16   seller was in the papers.  That's not true.  But beyond the

17   fact that we don't have to wrap our arms around it, there's

18   nothing, no basis, no implication whatsoever of why that

19   statement could be true coming from Deutsche Bank.

20       The statement that we just heard Earth Improvements

21   went to Ms. Tirelli and asked her to represent them in the

22   transaction and she said, no, I can't, that's completely not

23   true.  They had their own real estate counsel.

24       THE COURT:  So here's what I'm going to take from it,

25   that the facts regarding all that is are clearly disputed.  And

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 40 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

40

1  it's unclear what the situation is.

2        What I don't know though is whether it'll matter or

3  not.  So if, for example, first I decide -- there's a whole

4  decision tree.  And pardon me if I bore you all with the things

5  that I have to figure out.  But one is whether to reopen or not

6  to reopen.  If you don't reopen, then there's nothing left to

7  do.  And then we would revisit who owns the property, what's

8  the situation.  And that would be the focus of proceedings

9  going forward.  And people could -- I don't think any of the

10  motions I have -- they're all motions to reopen.  I guess

11  there's one other one floating around.

12        MS. KIRBY:  Earth Improvements agrees that the

13  Granchelli case should be reopened, Your Honor.

14        THE COURT:  You do?

15        MS. KIRBY:  That is part of the motion.  Yes.  We

16  believe that the case should be reopened for the purpose of

17  holding Deutsche Bank in contempt of the sale order.

18        THE COURT:  All right.

19        MS. KIRBY:  Yes.

20        THE COURT:  But again, what should happen with the

21  sale is one issue.  But if I do reopen the case for purposes of

22  the U.S. Trustee's request to deal with ethical -- to deal with

23  potential issues of disclosure, I don't know what the ultimate

24  remedy would be or not be in that context and whether it would

25  implicate the sale, especially since the sale hasn't

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 41 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

41

1   essentially closed.

2          And so you could eventually have that bumping into

3   what you're asking for because maybe there's a need to say,

4   well, we need this kind of a process or we need to start back

5   at square 1 because of disclosure issues.  I don't know.  I'm

6   frankly not smart enough to figure that out sitting here now.

7   But the reason why I'm pumping the brakes on the figuring out

8   the issue about why the check wasn't taken, where did things

9   fall apart there, and who's in the right and who's in the

10  wrong, is because I don't know if there's some other problem,

11  an issue that's going to bump into that later on down the line.

12  Am I missing something about that?

13          MS. KIRBY:  I respectfully disagree with Your Honor

14  that the closing did not occur.  It occurred consistent with

15  what the sale order said, and the funds were delivered.  The

16  fact were they never sent back, were they sent back, I guess

17  that's even -- despite the documents, maybe that's something

18  that the Court can't make a decision on right now.  However,

19  they were certainly delivered.  And that's not disputed.

20          THE COURT:  No, no.  Again, putting that aside, my

21  question is whether going down the rabbit hole of the

22  disclosure issues for a minute, if that path goes to a certain

23  place, I don't know, and I can ask the U.S. Trustee's Office,

24  whether that might have any impact on what ultimately should

25  happen in the case.  There are instances, for example, if you

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

42

1    think about bid procedures and issues about, well, this wasn't

2    disclosed or that wasn't disclosed, that you literally --

3    people will ask to unring the bell.  And I don't know, and I

4    haven't thought about what that would mean here or not,

5    depending on how where we went in disclosure.  That's why I

6    don't want to waste anybody's time and money until we sort of

7    figure out the lay of the land.

8           So if I'm if I'm wrong in conceptualizing it that

9    way -- I'm not asking you to agree with me.  But if I'm missing

10   something, saying oh, no, this will never have an instance

11   where this comes up, Judge, you may not -- as I said, I don't

12   know.  But it's perfectly fine if you don't know either.  I

13   just trying to clue you in on sort of my thinking about the

14   order of operations in terms of what to figure out first,

15   second, and third.

16          MS. KIRBY:  My view would be that the funds were

17   delivered under a sale order, that Earth Improvements

18   proceeded, as many house flippers do.  They didn't pay the

19   taxes while they did all the work to flip the house.  In some

20   of our filings I'm sure you saw they invested well over 300,000

21   dollars to take a property that was in horrible condition, take

22   it completely down to the studs, put in new kitchen, new

23   bathroom, new HVAC, even the new ducts and the new air

24   conditioning.  How do you undo that?  And the Subchapter V

25   Trustee's worry at the time of the sale or slightly thereafter,

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

43

1   between the value that was being paid of around 400- and the

2   other value that was higher, that was --he says in his papers,

3   I read them, that was a Zillow.  Maybe in the neighborhood that

4   would be a proper valuation.  But here no one came out.  There

5   was an auction.  Deutsche Bank chose not to close.

6           THE COURT:  I understand that.  But I guess my thought

7   is -- again, I don't know.  I'm not taking Zillow as evidence

8   of anything.  As anybody who's a frequent participant in court

9   hearings knows that everything in the internet we read is true.

10  So Zillow is not a valuation.  It's a really interesting thing

11  to talk to the neighbor about.  But I understand that.  But I

12  don't have that really in front of me for the moment.

13          But I understand your point.  And I understand your,

14  your contention where you're coming from.  And they all center

15  around whether there's any impediment to essentially things

16  going forward.  And I understand you have a pending request to

17  get Deutsche Bank to conclude whatever's left.

18          And that may be a good segue to ask Mr. Velez-Rivera

19  if he has any thoughts about whether these -- your request and

20  his inquiry have any relationship to one another.  So let me

21  hear from the U.S. Trustee's office, perhaps to sort of loop

22  back to some of the issues.

23          MR. VELEZ-RIVERA:  This is Andy Velez-Rivera for U.S.

24  Trustee.

25          Your Honor, our inquiry and the collateral inquiry

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

44

1   regarding the closing of the transaction with Deutsche Bank and

2   Earth Improvements are somewhat related but not much at the end

3   of the day.  My office's motion today just seeks to reopen the

4   case because of the omissions by Ms. Tirelli and not much else.

5   W seek relief with -- prospective relief with respect to Ms.

6   Tirelli only.

7           THE COURT:  All right.

8           MR. VELEZ-RIVERA:  And we take no position on any of

9   the other motions by the other folks today.

10          THE COURT:  All right.  So here's what I'd like to do.

11  I do think I need to reopen the case.  I'm not in a position to

12  make a decision on the issues in front of me.  And I think, to

13  use a pool analogy, I can't see the shot.  So I understand Ms.

14  Tirelli's counsel is very ably laid out your view.  And I get.

15  It was very well presented.  But it asked me to reach certain

16  conclusions that I can't based on the record because I can't

17  sort of fill in exactly what obligations flow or don't flow

18  from the fact that this is the husband of the debtor, what

19  obligations flow or don't flow in terms of the DBL case,

20  exactly what was that pending versus exactly -- I have a chart

21  with the two cases next to one another, but I don't have a

22  chart with the DBL case, so I can't quite remember when all

23  those things line up.  So I need to figure that stuff out.  So

24  some of what you've argued is sort of outcome determinative.  I

25  need to make a decision on certain things and then say no harm,

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 45 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

45

1  no foul.

2          So I think it meets the standard for reopening.  That

3  is, I think everyone agrees that disclosure is part and parcel

4  of the bankruptcy system.  It's an important part.  It

5  influences a lot of things in cases.  And I don't think anyone

6  disputes that it is a reasonable issue to raise even if they

7  differ wildly on what is actually implicated or not implicated

8  here.

9          And as to the standard for reopening, you can reopen

10  the case to take steps, including to address the kinds of

11  issues that have been raised by the United States Trustee's

12  office.  And I think that the U.S. Trustee's Office has raised

13  n issue that is worthy of, of running to ground.  And I'm going

14  to allow them to do that.

15          Let me ask the UST.  There was a suggestion that you

16  only need to reopen one case and not the other, meaning that

17  the only impact really is we're talking about the sale of this

18  property.  And that's where the rubber hits the road, that we

19  don't need to essentially drag the Racanelli case into it, am I

20  what's your view on that?

21          MR. VELEZ-RIVERA:  This is Andy Velez-Rivera.

22          I caught that in Mr. Mogil's presentation as well,

23  Your Honor.  Both cases need to be reopened for the simple

24  proposition that the nondisclosures happened in both cases.

25  And that Ms. Tirelli had the duty to disclose in both cases.

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 46 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

46

1    Mr. Mogil's papers didn't raise Bankruptcy Rule 2014, because

2    if it did it would get to the correct standard, which is that

3    all connections have to be disclosed.  The debtor doesn't get

4    to pick and -- the debtor's counsel, I should say, doesn't get

5    to pick and choose which disclosures to make.  If the rule had

6    been followed, we would not be here today.  That's because we

7    think both cases should be open to Your Honor.

8           THE COURT:  All right.  So jumping around a bit for a

9    second, as to the issue about concluding the sale, let's put it

10   that way.  I would like the parties and I'm going to direct the

11   parties to talk about whether that issue, even if you disagree

12   with the right -- with the proper result, can be unlinked from

13   any disclosure issues.  I don't see -- I'm seeing some

14   potential daylight in that regard.  The U.S. Trustee's Office

15   basically said essentially that's not what we're here for.  And

16   so I would -- so whether -- so I think we should reopen the

17   case for that reason because I think that issue likely seems to

18   be one that we can reach a conclusion on separate and

19   independently of any disclosure issues that the U.S. Trustee's

20   Office tees up.

21          But I'd ask you maybe to think about a procedure for

22   doing that.  And maybe the way to do it so that there's no  --

23   nothing hanging over anybody's -- a cloud over anything that

24   you reach in some sort of an order or stipulation, or we can

25   put something on the record, however you want to handle it,

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

47

1    where we essentially put on the record if all parties agree

2    that this issue about what should happen with the property is

3    squarely an issue needs to be resolved, doesn't implicate these

4    other things, there's no impediment to going ahead just so you

5    all can go ahead and not have the other aspect of today somehow

6    come back and snatch victory from the jaws of defeat or vice

7    versa, however you want to call it.  You need some finality.

8            So that's the -- so I'm happy to run it to ground if

9    we can make sure that by doing so we actually can reach a final

10   conclusion.  And I do have a lot of things teed up.  So a

11   question would be if there's any other additional information,

12   it sounds like you disagree with some of the things that have

13   been represented by Deutsche Bank.  So there may be some -- so

14   it's a two-step process.  One is if you all can reach an

15   agreement that you can pursue this without any worry about

16   interference with the disclosure issues.  And two is, if you

17   can, what else do I need to make a decision?  It sounds like

18   you'd want to respond to some things.  Or again, you can think

19   about any other briefing schedule if you think anything else

20   needs to be done.  And then it'll be teed up.  And I can make a

21   decision on that without waiting for any disclosure issues.

22           MS. KIRBY:  Thank you so much.  That's so much -- I

23   know Mr. Racanelli has an offer on the house, and they've been

24   avoiding the person hoping that it would be resolved.

25           THE COURT:  You can blame me.  People do it all the

1   time.

2           MS. KIRBY:  But I will also say there is good news,

3   that Ms. DiCerbo did already reach out to me late last week.

4   And we had a conference call and talked about the issues.  And

5   I sort of put in her lap what I would ask -- what I would be --

6   my ask is.  And so I think we've already informally started

7   that process.

8           THE COURT:  All right.  That's fine.

9           MS. KIRBY:  And I think that's an excellent idea to

10  have a stipulation and a sort of expedited dealing with the

11  real property in a bubble.

12          THE COURT:  Yeah.  And then circulated to -- obviously

13  to Ms. Tirelli's counsel and to the U.S. Trustee's office so

14  that you can get everyone on board and essentially make these

15  issues which potentially could be related into separate and

16  distinct issues that we can independently figure out.

17          MS. KIRBY:  Thank you for that.

18          THE COURT:  And if at some point you all want to have

19  a conversation, a mediator or whatever it is, you reach out to

20  me and let me know if I can be of assistance, whether it's

21  entering an order to appoint a mediator or something else,

22  you'll let me know.

23          As to the disclosure issues, so I think the case

24  should be reopened so we can do that and figure that out.

25  However it comes out, Deutsche Bank wins, your client wins,

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

49

1    there's some other solution.

2          As to the disclosure issues, I do think there is

3    enough here to reopen the case.  I need some additional

4    information.  I understand that this should not be a -- I don't

5    want to burden debtors with an extensive amount of activity.

6    It's not really their issue.  So what I would ask is that you

7    all think about what is necessary to bring this issue to a

8    conclusion in terms of discovery.  If you have any disputes, we

9    can talk about them and try to figure them out, save you all

10   from motion practice.  This motion practice on discovery is

11   among the more painful ways to spend money.  So I'm happy to

12   talk with you through the issues.

13          So what I would say is, if the U.S. Trustee's Office

14   can think about what it needs in terms of a record and what it

15   contemplates the next step forward, then reach out to Ms.

16   Tirelli's counsel, get a sense of how to do that and expedited

17   way.  If there's any disagreements about that then we can talk

18   about them.  And then we can come up with, with a briefing

19   schedule.

20          I certainly have a lot of things that are here that

21   you've teed up.  There are some things that have been raised

22   here, both about the legal standard that is -- and again, I'm

23   not trying to use pejoratively, the sort of no harm, no foul

24   standard, whether that's something you say, Judge, you know,

25   looking at these cases -- and I understand that Ms. Tirelli's

1  counsel has cited a bunch of those cases.  I'm going to go back

2  and look at them.  So you can figure out how we get from here

3  to a conclusion.

4          And I don't need you to give me the stuff you've

5  already given me.  But I think there are some issues that have

6  been highlighted here today that are worthy of additional

7  development, whether it's legally or factually.  So for

8  example, I don't think anybody sort of teased out exactly the

9  timeline of the DBL case versus the other cases here and

10  whether that matters doesn't matter, also the question about

11  the husband of the debtor as opposed to the debtor, what does

12  that mean or not mean for purposes of disclosure obligations

13  and some other things along the way.

14          So what I would suggest is that the U.S. Trustee's

15  Office think about a way to proceed, present that  Ms.

16  Tirelli's counsel.  And then if you have an agreement, you can

17  submit a letter.  I'll happy to so order it.  You can figure

18  out a way to get from where we are to conclusion.  And if you

19  can't reach an agreement, then just let me --just let me know,

20  and we can have a conference and try to figure it out.

21          So let me ask folks, starting with the -- I'll go

22  through the -- I'll go in the same order, starting with U.S.

23  Trustee's Office, any other questions, concerns, comments?

24          MR. VELEZ-RIVERA:  This is Andy Velez-Rivera, Your

25  Honor.

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 51 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

51

1          Just for purposes of clarifying the record, is the

2   Court ordering the reopening of both cases, Granchelli and

3   Racanelli?

4          THE COURT:  I think I have to.  Again, I'm not

5   agreeing with your position, but I'm saying that in order to

6   appropriately address it, I think I do have to reopen both

7   cases.  I'd like to do that with a minimum of disruption to the

8   debtors obviously.  And I understand the challenges that that

9   represents.  If there's a time when -- if folks have a more

10  creative way to look at it, well, we can only reopen one, I'm

11  open to that suggestion if you all can find your way there.

12  But I understand your position.

13         MR. VELEZ-RIVERA:  Thank you, Your Honor.

14         THE COURT:  All right.  So let me hear from Deutsche

15  Bank.

16         MS. DICERBO:   Nothing else at this time, Your Honor.

17         THE COURT:  All right.

18         MS. DICERBO:  thank you.

19         THE COURT:  And for Ms. Tirelli's counsel?

20         MR. MOGIL:  Nothing further, Your Honor.

21         THE COURT:  All right.  Thank you very much.  Let me

22  ask the Subchapter V Trustee.  Anything else?

23         MR. HUEBSCHER:  Nothing further, Your Honor.  Thank

24  you.

25         THE COURT:  All right.  Anything else from Earth

52

1   improvements?

2       MS. KIRBY:  No, thank you, Your Honor.

3       THE COURT:  All right.  So let me ask Ms. Tirelli's

4   counsel.  I don't want to burden you all, given the hour.  But

5   I certainly if you want can give you a more fulsome recitation

6   of the applicable legal standards and tied into my ruling

7   today.  I'm sort of giving you sort of the more practical

8   barebones.  If that's something you want, let me know.  I'm

9   happy to do it.  You're entitled to it if that's something you

10  want.  But I also don't want to keep you all here for you to

11  hear.  A significant amount of legal boilerplate which are all

12  contained in your motion.

13      So I'll leave it to you.  If you want that, I'm happy

14  to o that.  You can mull it over if you want and think about it

15  and let me know when if you want me to do that.  I can schedule

16  that and let parties know and give you a more traditional

17  looking bench ruling.

18      MR. MOGIL:  Your Honor, allow me to, if you may, to

19  discuss with my client and mull it over as you said.

20      THE COURT:  Yeah.  No, that's fair.  I'm not trying to

21  put you on the spot, but I also not trying have everyone's eyes

22  glaze over as I go through extensive amounts of boilerplate.

23  Not that that isn't a fun way to spend an afternoon.

24      So all right.  So with that, I think I've heard from

25  everybody.  I appreciate everybody's arguments.  They're all

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

53

1  very helpful and right on point.  And so we'll get there.  And

2  so I would expect that let's say two weeks or so, aspirational,

3  if it slides a little bit, three weeks, that's fine, to get

4  back to me about the notion of the two separate issues

5  potentially, are they separate, that is the conclusion of the,

6  the property disposition and the disclosure issues.  And that I

7  think is something Ms. Kirby s probably going to take the

8  laboring more on.  And the second is something the UST will

9  take the laboring more on, which is the steps to take from here

10  to a -- to conclusion as to the disclosure issues.  That

11  includes discovery and motion practice to supplement whatever's

12  here.

13          And I'll expect to get letters on what your proposals

14  are in about two to three weeks.  Nobody should cancel a

15  vacation to do that.  At the same time, I don't want this to

16  linger.  I know how important these issues are when these kinds

17  of things are raised.

18          And in the meantime, if I can be of any assistance, as

19  long as you talk to each other first, you can always reach out

20  to chambers and we'll schedule a call.

21          I guess last things last thing I can think, Mr.

22  Huebscher, I don't know where reopening a case leaves you.

23  This doesn't seem to be something that you're pursuing per se.

24  But I also don't want to leave you in the lurch.  So perhaps

25  when Ms. Tirelli's counsel and the U.S. Trustee's Office talk

1   about what that disclosure proceeding looks like, they can also

2   think your unique circumstance and whether we need to do

3   anything in connection with you as the Subchapter V Trustee in

4   the case for which you served.

5           MR. HUEBSCHER:  Thank you, Your Honor.  I'll reach out

6   to Mr. Velez-Rivera.

7           THE COURT:  All right.

8           MR. VELEZ-RIVERA:  I appreciate it.

9           THE COURT:  All right.

10          MR. VELEZ-RIVERA:  Your Honor, this is Andy Velez-

11  Rivera.

12          Just to keep people's expectations in check, I'm about

13  to leave the Country for a couple of weeks.  I'm going to be

14  completely offline.  So this this exercise necessarily have to

15  slip into to the end of June.

16          THE COURT:  I think that's fine from my perspective.

17  And other than my jealousy that you'll be offline for several

18  weeks, I have no problem with that.

19          MR. VELEZ-RIVERA:  And thank you, Your Honor.

20          MR. MOGIL:  I happen to be on paternity leave right

21  now.  I have a newborn at home.  So that is a welcome to

22  timeline from Mr. Velez-Rivera.

23          THE COURT:  Are you are you waiting for someone to

24  arrive or someone just arrived?

25          MR. MOGIL:  Someone just arrived.

18-23674-shl   Doc 196   Filed 06/06/24   Entered 06/07/24 15:41:13   Main Document
Pg 55 of 68
**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

55

1           THE COURT:  When?  Congratulations?

2           MR. MOGIL:  Thak you.  She was born on Leap Day.  So

3   not -- a little bit of time, but --

4           THE COURT:  So you've got a lot of free time and

5   you're well rested.

6           MR. MOGIL:   Exactly.

7           THE COURT:  I'm sorry.  As the father of four, I

8   always make the same joke when I hear someone's had a child.

9   Congratulations.  Is this your first?

10          MR. MOGIL:  Thank you.  It is my first.  So every

11  panic, every noise, every little thing.  Yeah.

12          THE COURT:  Well, congratulations.

13          MR. VELEZ-RIVERA:  This is Andy Velez-Rivera.

14          I'm not leaving for a few days.  I will be able to

15  speak with Mr. Mogil before I go.

16          THE COURT:  I'll be guided by you all.  I will not be

17  sitting there with an egg timer waiting for -- you've got other

18  things going on.  And so I trust your ability to handle your

19  professional responsibilities appropriately in light of

20  everything else.  I'll stay out of the way and wait to hear

21  from you.

22          And again, congratulations.  And good for you.

23          All right.  Anything else from any other party?  All

24  right.  Well, thank you very much.  Have a good afternoon.  And

25  we'll be chatting.

**HELEN RACANELLI, JOSEPH T. GRANCHELLI**

56

1          IN UNISON:  Thank you, Your Honor.

2      (Whereupon these proceedings were concluded at 3:33 PM)

57

1

2                              C E R T I F I C A T I O N

3

4      I, Michael Drake, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7

8

9      _____

10     Michael Drake (CER-513, CET-513)

11     AAERT Certified Electronic Transcriber

12

13     eScribers

14     7227 North 16th Street, Suite #207

15     Phoenix, AZ 85020

16

17     Date:  May 28, 2024

18

19

20

21

22

23

24

25

In the Matter of: HELEN RACANELLI and JOSEPH G. RACANELLI

May 21, 2024

**$**

**$1 (1)**
15:11
**$5,000 (1)**
18:23

**A**

**ability (2)**
27:7;55:18
**able (3)**
28:23;35:17;55:14
**ably (1)**
44:14
**absent (1)**
26:20
**Absolutely (2)**
26:13;30:3
**accept (1)**
14:3
**accurately (1)**
12:22
**accused (1)**
39:12
**across (1)**
8:23
**action (5)**
29:12,15;30:16,17,
20
**activity (2)**
25:19;49:5
**actual (4)**
16:16;27:13;29:1;
34:22
**actually (8)**
8:19;18:23;24:5,12;
28:14;31:24;45:7;
47:9
**additional (3)**
47:11;49:3;50:6
**address (8)**
23:11;24:13;32:8;
36:11;37:14,19;
45:10;51:6
**adverse (3)**
29:11;33:18;34:24
**affected (4)**
20:17,18;21:7;32:8
**affidavit (1)**
19:3;21:5
**afforded (1)**
23:17
**afternoon (14)**
7:8,12,22,25;8:3,7;
10:24;12:7;17:15;
18:8;20:4;25:2;52:23;
55:24
**again (19)**
22:10;25:1,10;
28:15,25;29:7;31:6;
33:25;34:14,18;

35:15;37:9;40:20;
41:20;43:7;47:18;
49:22;51:4;55:22
**against (1)**
12:2
**agree (3)**
22:3;42:9;47:1
**agreeing (1)**
51:5
**agreement (3)**
47:15;50:16,19
**agrees (2)**
40:12;45:3
**ahead (3)**
27:14;47:4,5
**aimless (1)**
24:18
**air (2)**
39:14;42:23
**allegation (2)**
25:18;32:7
**alleged (1)**
30:10
**allow (3)**
29:24;45:14;52:18
**almost (2)**
22:6,7
**alone (1)**
37:6
**along (2)**
22:21;50:13
**Although (1)**
20:9
**always (3)**
8:23;53:19;55:8
**amended (1)**
32:13
**among (1)**
49:11
**amorphous (1)**
24:18
**amount (3)**
14:24;49:5;52:11
**amounts (1)**
52:22
**ample (1)**
11:25
**amplification (2)**
8:22,22
**analogy (1)**
44:13
**analysis (2)**
18:3;21:20
**analyzed (1)**
31:18
**and/or (1)**
12:13
**ANDY (7)**
5:8;7:8;43:23;
45:21;50:24;54:10;
55:13
**answered (1)**
13:4

**Anthony (5)**
8:5;10:25;26:17,23;
36:1
**apart (6)**
11:6;14:19;16:2;
38:22;39:9;41:9
**apologies (2)**
20:13,15
**apologize (2)**
18:13;19:11
**appear (1)**
36:7
**appearance (2)**
7:21;8:1
**appearances (1)**
7:6
**applicable (1)**
52:6
**application (4)**
11:21;23:8;29:10,
10
**appoint (1)**
48:21
**appreciate (3)**
18:16;52:25;54:8
**appropriate (4)**
9:10;17:13;23:24;
27:4
**appropriately (2)**
51:6;55:19
**approximate (1)**
13:12
**areas (1)**
17:19
**argued (1)**
44:24
**arguing (2)**
10:4,4
**argument (8)**
13:21;21:18;22:21;
23:20;24:4;25:25;
28:2;35:15
**arguments (4)**
9:13;22:18;36:14;
52:25
**arise (1)**
31:25
**arms (1)**
39:17
**arm's (3)**
19:4;23:22;25:10
**arm's-length (5)**
12:11;14:13;19:3;
32:24;33:8
**arose (1)**
32:12
**around (6)**
19:16;39:17;40:11;
43:1,15;46:8
**arrive (1)**
54:24
**arrived (2)**
54:24,25

**aside (4)**
32:18,20,21;41:20
**ASINER (1)**
5:19
**aspect (1)**
47:5
**aspersions (2)**
21:15;25:10
**aspirational (1)**
53:2
**assert (1)**
29:23
**asset (1)**
23:1
**assistance (3)**
18:17;48:20;53:18
**assume (2)**
10:6;20:24
**attenuated (1)**
32:3
**attorney (6)**
12:20,24;13:8,14;
27:2;30:6
**Attorneys (1)**
5:20
**auction (1)**
43:5
**Avenue (1)**
5:12
**avoiding (1)**
47:24
**awfully (1)**
18:8

**B**

**baby (1)**
25:3
**back (19)**
9:6;13:13;14:1,1,4;
15:18;18:1;23:25;
31:14;35:3;38:8,19;
41:4,16,16;43:22;
47:6;50:1;53:4
**backup (6)**
15:3,5,13;27:13;
35:8,8
**ball (1)**
28:22
**Bank (22)**
7:11,13;10:16;12:6,
8;23:14,19;26:15;
27:19;32:9;35:3,4;
36:13;37:10;39:19;
40:17;43:5,17;44:1;
47:13;48:25;51:15
**Bankruptcy (8)**
11:17,17;12:10;
13:2;20:17;34:6;45:4;
46:1
**banks (1)**
11:6
**Bank's (3)**

**bar (1)**
23:1
**barebones (1)**
52:8
**based (3)**
19:8;39:1;44:16
**basically (1)**
46:15
**basis (4)**
15:12;17:3,4;39:18
**bathroom (1)**
42:23
**bathwater (1)**
25:3
**begets (1)**
20:10
**begin (1)**
9:6
**beginning (1)**
10:9
**behalf (5)**
7:10,13,14,17;12:8
**bell (1)**
42:3
**belt (1)**
26:5
**bench (1)**
52:17
**benefit (2)**
19:22;31:4
**benefits (1)**
20:20
**beside (1)**
27:6
**best (7)**
20:7;24:10;26:14;
29:19,20;30:4;37:7
**better (1)**
36:19
**beyond (1)**
39:16
**BFP (1)**
12:12
**bid (4)**
15:5,7;37:10;42:1
**bidder (9)**
15:4,5,13;26:19;
27:13,13;35:8,8;36:3
**bilaterally (1)**
19:12
**bit (5)**
11:7;38:5;46:8;
53:3;55:3
**blame (1)**
47:25
**board (2)**
31:14;48:14
**boilerplate (2)**
52:11,22
**boils (1)**
23:9
**bona (2)**

**C**

32:13;36:20;38:3

12:12,16
**bones (2)**
   25:22;37:6
**bore (1)**
   40:4
**born (1)**
   55:2
**both (12)**
   7:5;18:2;19:17;
   26:15;27:18;45:23,
   24,25;46:7;49:22;
   51:2,6
**Bowling (1)**
   5:4
**brakes (1)**
   41:7
**breach (1)**
   26:16
**bridge (1)**
   16:3
**briefing (2)**
   47:19;49:18
**bring (2)**
   12:10;49:7
**broke (1)**
   17:19
**broker (2)**
   24:10;25:12
**brought (2)**
   12:23;37:9
**bubble (1)**
   48:11
**bump (1)**
   41:11
**bumping (1)**
   41:2
**bunch (1)**
   50:1
**burden (4)**
   20:5;24:17;49:5;
   52:4
**burn (1)**
   16:3
**business (2)**
   19:7,8
**Butting (1)**
   32:20
**buyer (3)**
   12:20;13:7;39:15
**buyers (1)**
   12:12
**buyer's (1)**
   12:23
**bystander (1)**
   35:4

**C**

**calculation (1)**
   31:21
**calculus (1)**
   37:3
**call (5)**

21:16;38:8;47:7;
   48:4;53:20
**called (2)**
   29:1;34:17
**came (2)**
   18:20;43:4
**can (52)**
   8:18,25;10:6;12:1;
   22:19;23:8,19;24:22;
   25:21,23;27:3,5,5;
   33:1,16;34:18;35:9;
   41:23;45:9;46:12,18,
   24;47:5,9,9,14,15,17,
   18,20,25;48:14,16,20,
   24;49:9,14,17,18;
   50:2,16,17,20;51:10,
   11;52:5,14,15;53:18,
   19,21;54:1
**cancel (1)**
   53:14
**capacity (4)**
   26:23,23;27:14;
   36:2
**Carberry (1)**
   22:24
**card (2)**
   19:7,8
**cards (1)**
   27:7
**careful (1)**
   33:15
**carrying (3)**
   13:16;14:17,18
**case (51)**
   7:4;9:8,11;11:2,11,
   17,20,20,24;12:1;
   13:2,18;14:13;15:23;
   16:13,17;17:19,24,25;
   18:4,16;20:23,23;
   22:8;23:1;24:1,24;
   26:1,8,11;27:15;
   34:20,21;35:24;
   40:13,16,21;41:25;
   44:4,11,19,22;45:10,
   16,19;46:17;48:23;
   49:3;50:9;53:22;54:4
**cases (22)**
   7:3,21;9:21;10:2,
   10;12:1;18:2;21:13,
   20;31:7;33:23;44:21;
   45:5,23,24,25;46:7;
   49:25;50:1,9;51:2,7
**casting (2)**
   21:14;25:10
**caught (1)**
   45:22
**cause (2)**
   12:1,10
**center (1)**
   43:14
**certain (3)**
   30:25;41:22;44:15,
   25

**certainly (5)**
   32:8;36:12;41:19;
   49:20;52:5
**cetera (1)**
   9:16
**challenges (1)**
   51:8
**chambers (1)**
   53:20
**chance (2)**
   14:9;17:14
**change (1)**
   19:11
**changed (1)**
   13:22
**changes (1)**
   12:16
**Chapter (4)**
   7:3;11:12,19;23:1
**chart (2)**
   44:20,22
**chatting (1)**
   55:25
**check (12)**
   13:12,13,20;14:4;
   32:14;38:7,12,15,19;
   39:7;41:8;54:12
**Chester (1)**
   5:14
**chief (1)**
   32:12
**child (1)**
   55:8
**chime (1)**
   17:14
**Chin's (1)**
   24:1
**choose (1)**
   46:5
**chose (1)**
   43:5
**circulated (2)**
   32:15;48:12
**circumstance (2)**
   21:3;54:2
**cite (2)**
   22:20;29:3
**cited (3)**
   22:24;23:3;50:1
**claim (1)**
   15:10
**clarifying (1)**
   51:1
**clear (8)**
   20:24;26:17;33:11,
   13;34:3;36:14,23;
   39:6
**clearly (3)**
   20:25;35:16;39:25
**client (8)**
   12:9;13:11;16:21;
   17:3;24:19;30:25;
   48:25;52:19

**clients (3)**
   28:5;29:18,22
**close (10)**
   13:9,11;15:1;27:15,
   16;28:10;31:12;
   32:20;35:7;43:5
**closed (1)**
   41:1
**closing (5)**
   13:13;14:2;28:1;
   41:14;44:1
**cloud (1)**
   46:23
**clue (1)**
   42:13
**coincidence (2)**
   26:14;27:22
**collateral (1)**
   43:25
**combined (1)**
   18:24
**coming (3)**
   33:13;39:19;43:14
**comments (1)**
   50:23
**completely (4)**
   16:2;39:22;42:22;
   54:14
**complicated (1)**
   22:15
**computers (1)**
   8:12
**conceding (1)**
   26:1
**concept (1)**
   24:14
**conceptualizing (1)**
   42:8
**concern (4)**
   20:22;24:11;31:1;
   32:12
**concerned (5)**
   17:3;32:24;33:3,14;
   34:4
**concerning (1)**
   33:3
**concerns (7)**
   14:13;25:9;29:4;
   33:5;34:1;35:17;
   50:23
**conclude (1)**
   43:17
**concluded (3)**
   21:13,14;56:2
**concluding (1)**
   46:9
**conclusion (9)**
   9:24;23:16;46:18;
   47:10;49:8;50:3,18;
   53:5,10
**conclusions (1)**
   44:16
**condition (1)**

42:21
**conditioning (1)**
   42:24
**conference (2)**
   48:4;50:20
**confess (1)**
   32:19
**conflict (14)**
   12:22;21:6;28:12,
   21;29:11,19,23;30:7,
   8;31:19,24;32:2;
   34:22,22
**conflicts (6)**
   9:14;13:9;16:16;
   28:4,16,17,17;29:1
**Congratulations (4)**
   55:1,9,12,22
**connection (3)**
   30:19;37:12;54:3
**connections (1)**
   46:3
**consequences (1)**
   11:18
**consistency (1)**
   27:23
**consistent (1)**
   41:14
**consummation (1)**
   38:21
**contact (1)**
   12:24
**contained (1)**
   52:12
**contemplates (1)**
   49:15
**contemplation (1)**
   37:11
**contempt (1)**
   40:17
**contention (1)**
   43:14
**context (3)**
   17:2;31:7;40:24
**continues (1)**
   38:9
**contract (3)**
   18:21;19:10,13
**contractor (1)**
   13:7
**conversation (1)**
   48:19
**CONWAY (1)**
   5:11
**Cooper (3)**
   14:1;38:11,15
**corporate (2)**
   26:23;36:2
**costs (2)**
   13:16;14:18
**counsel (27)**
   9:18;10:17;11:4;
   12:2;17:8;20:2;27:10,
   17,19;28:24;31:16;

In the Matter of: HELEN RACANELLI and JOSEPH GRACE RACANELLI

May 21, 2024

32:25;33:22;35:12;
36:11,20;38:14;
39:23;44:14;46:4;
48:13;49:16;50:1,16;
51:19;52:4;53:25
**Country (1)**
54:13
**couple (2)**
34:12;54:13
**course (4)**
11:11;17:23;20:9;
31:25
**COURT (101)**
7:2,10,14,18,25;8:7,
10,11,18,21;9:4;11:2,
14,17;12:5,9;13:19;
14:6,16;15:3,9,12,19,
22;16:14,19,25;17:7;
18:1,14;19:1,25;20:6,
22;21:3,9;22:1,6;
23:13,18;24:20;
25:19,25;27:1,3;28:3,
15;29:17;30:11,24;
31:6,11,15,24;32:9,
10,16,22;33:9,14;
34:8;35:5,15;36:10,
16;37:21;38:10,20;
39:24;40:14,18,20;
41:18,20;43:6,8;44:7,
10;46:8;47:25;48:8,
12,18;51:2,4,14,17,
19,21,25;52:3,20;
54:7,9,16,23;55:1,4,7,
12,16
**courtroom (3)**
8:14;9:1;37:24
**creative (1)**
51:10
**credit (1)**
37:10
**creditors (1)**
23:2
**cumbersome (1)**
27:5
**CURLEY (1)**
5:19
**Curly (1)**
8:4
**current (1)**
32:18
**currently (1)**
39:4

**D**

**date (2)**
13:3;23:1
**DAWN (4)**
5:25;8:3;9:2;37:25
**day (4)**
35:9;37:7;44:3;
55:2
**daylight (1)**

46:14
**days (1)**
55:14
**DBL (7)**
29:12;30:16,17;
34:17;44:19,22;50:9
**deal (2)**
40:22,22
**dealing (1)**
48:10
**debt (1)**
17:19
**debtor (22)**
11:12,13;13:1;21:9,
10,12,15;25:18;
26:20;27:15,25;
28:10;30:15,20;
31:16;33:12;34:11;
37:13;44:18;46:3;
50:11,11
**debtors (8)**
12:19;21:12,13;
28:11;33:23;37:15;
49:5;51:8
**debtor's (7)**
11:4;12:2;13:8;
21:5,15;30:21;46:4
**decide (2)**
27:14;40:3
**decided (1)**
31:12
**decision (8)**
9:23;24:1;40:4;
41:18;44:12,25;
47:17,21
**defeat (1)**
47:6
**defense (2)**
22:6,7
**delivered (3)**
41:15,19;42:17
**demonstrate (1)**
19:3
**denied (1)**
22:25
**deny (1)**
25:5
**DEPARTMENT (1)**
5:2
**depending (1)**
42:5
**deposit (2)**
16:20;35:7
**described (1)**
20:5
**describing (2)**
31:20;36:25
**despite (1)**
41:17
**determinative (1)**
44:24
**Deutsche (25)**
7:10,13;10:16;12:6,

8;23:14,19;26:15;
27:19;32:9,13;35:3,4;
36:13,19;37:10;38:3;
39:19;40:17;43:5,17;
44:1;47:13;48:25;
51:14
**development (1)**
50:7
**DICERBO (20)**
7:12,13;12:7,8;
13:25;14:15;15:1,7,
10,15,21;16:12,18,24;
17:6;38:11,14;48:3;
51:16,18
**differ (1)**
45:7
**different (11)**
15:4;17:1;22:18;
26:2,9;31:21,22;
33:23;34:12;35:10;
38:24
**differently (1)**
30:6
**difficult (1)**
18:15
**direct (3)**
33:18;34:24;46:10
**directly (2)**
15:16;38:7
**disagree (4)**
32:11;41:13;46:11;
47:12
**disagreements (1)**
49:17
**disagrees (1)**
9:10
**DISCERBO (1)**
5:16
**disclaiming (1)**
29:18
**disclose (6)**
11:13;33:22,22;
34:20;36:9;45:25
**disclosed (9)**
9:15,16;13:9;20:25;
21:1;23:23;42:2,2;
46:3
**disclosing (1)**
27:2
**disclosure (25)**
9:24;19:19;20:25;
27:10;29:8;30:22;
35:12;37:2;38:23;
39:9;40:23;41:5,22;
42:5;45:3;46:13,19;
47:16,21;48:23;49:2;
50:12;53:6,10;54:1
**disclosures (4)**
11:22,23;20:13;
46:5
**discovery (4)**
24:25;49:8,10;
53:11

**discuss (4)**
10:19;25:15;38:16;
52:19
**discussing (2)**
30:4;37:18
**discussion (3)**
9:13;31:22;35:3
**disloyalty (1)**
21:7
**dismiss (1)**
29:15
**disposed (1)**
29:15
**disposition (1)**
53:6
**dispute (4)**
26:17;27:11,12,17
**disputed (2)**
39:25;41:19
**disputes (2)**
45:6;49:8
**disruption (1)**
51:7
**distinct (3)**
11:6;38:22;48:16
**district (1)**
11:14
**divided (1)**
31:10
**docket (2)**
13:25;20:8
**doctrine (1)**
22:13
**documents (1)**
41:17
**dollars (6)**
14:23;15:11;19:9,
11;38:8;42:21
**done (1)**
47:20
**doubt (2)**
9:18;33:21
**down (7)**
17:19;18:15;23:9;
28:20;41:11,21;42:22
**drag (1)**
45:19
**Drain (6)**
11:15;15:24;19:16,
17;24:8;33:10
**drawing (1)**
31:14
**dress (1)**
26:15
**drive (2)**
25:14;32:4
**ducts (1)**
42:23
**due (2)**
12:12;21:9
**during (2)**
12:14;17:23
**duty (5)**

30:25;31:2,2,4;
45:25

**E**

**Earth (30)**
5:20;8:4,6;9:2;
10:20;13:6,14;15:7;
17:11;26:18,21;27:9,
12,16,21,24;28:9;
30:15;31:12,16;
33:13;37:11,23;38:1;
39:12,20;40:12;
42:17;44:2;51:25
**economic (1)**
35:23
**efficient (1)**
27:6
**egg (1)**
55:17
**Eisner (1)**
8:4
**either (8)**
18:25;26:1,22;
27:25;29:12;35:25;
36:2;42:12
**elected (1)**
11:23
**else (13)**
16:22;17:8;34:10;
36:10;44:4;47:17,19;
48:21;51:16,22,25;
55:20,23
**employment (3)**
11:21;29:9,10
**enclosed (3)**
38:12
**end (5)**
21:2;23:24;36:13;
44:2;54:15
**ended (1)**
25:9
**engineering (1)**
13:5
**enough (4)**
25:9;28:20;41:6;
49:3
**entered (1)**
15:24
**entering (1)**
48:21
**entire (2)**
11:19;12:18
**entirely (1)**
31:22
**entitled (3)**
24:17;25:4;52:9
**entity (1)**
34:10
**entity's (1)**
34:6
**equation (1)**
29:16

In the Matter of: HELEN RACANELLI and JOSEPH GRANCANELLI

May 21, 2024

**ERIC (3)**
6:3;7:23;17:15
**especially (1)**
40:25
**ESQ (3)**
5:8,16,25
**essentially (6)**
41:1;43:15;45:19;
46:15;47:1;48:14
**estate (4)**
24:9;33:18;38:14;
39:23
**et (1)**
9:16
**ethical (2)**
26:16;40:22
**ethics (1)**
9:24
**even (9)**
11:22;23:14;32:3;
33:13;39:3;41:17;
42:23;45:6;46:11
**event (1)**
13:24
**eventually (2)**
37:11;41:2
**everybody (7)**
8:25;14:7,8,9;24:2,
5;52:25
**everybody's (2)**
27:7;52:25
**everyone (2)**
45:3;48:14
**everyone's (1)**
52:21
**evidence (1)**
43:7
**exact (1)**
15:2
**exactly (8)**
11:1;15:16;23:10;
44:17,20,20;50:8;
55:6
**examining (1)**
9:20
**example (5)**
9:19;39:11;40:3;
41:25;50:8
**excellent (1)**
48:9
**excess (1)**
15:10
**excuse (3)**
7:4;19:15,18
**exercise (1)**
54:14
**existed (1)**
16:17
**exists (1)**
12:10
**expect (3)**
10:8;53:2,13
**expectations (1)**

54:12
**expedited (2)**
48:10;49:16
**expedition (1)**
24:16
**experience (1)**
18:16
**explain (2)**
20:19;23:15
**explained (1)**
30:17
**explored (1)**
33:9
**expressly (1)**
29:22
**extensive (2)**
49:5;52:22
**extent (4)**
17:9;23:7;26:4,6
**eyes (1)**
52:21

**F**

**fact (5)**
27:20;32:12;39:17;
41:16;44:18
**factors (1)**
18:25
**facts (10)**
9:14;13:17;16:10,
12;26:4;32:12;34:13;
35:18;36:19;39:25
**factually (1)**
50:7
**fail (1)**
30:12
**fair (3)**
24:21;26:10;52:20
**fall (1)**
41:9
**familiar (1)**
29:13
**far (2)**
28:20;35:2
**father (1)**
55:7
**fault (1)**
14:19
**fell (2)**
14:19;38:21
**few (1)**
55:14
**fide (2)**
12:12,16
**fight (2)**
28:7;35:9
**figure (14)**
27:3;36:18;39:2;
40:5;41:6;42:7,14;
44:23;48:16,24;49:9;
50:2,17,20
**figuring (1)**

41:7
**file (2)**
16:8;38:17
**filed (8)**
10:11;12:21;13:21;
16:7,9;18:25;24:23;
29:24
**filing (2)**
13:2;16:6
**filings (1)**
42:20
**fill (1)**
44:17
**final (6)**
9:23;11:8;24:11;
34:14;37:16;47:9
**finality (1)**
47:7
**find (2)**
12:24;51:11
**fine (6)**
21:19;24:3;42:12;
48:8;53:3;54:16
**fire (2)**
23:9;37:6
**firm (2)**
28:5;33:17
**first (8)**
20:8,9;29:16;40:3;
42:14;53:19;55:9,10
**fish (1)**
39:7
**fishing (1)**
24:16
**fit (1)**
21:20
**Five (2)**
7:20,23
**flag (1)**
28:18
**flier (1)**
33:12
**flip (1)**
42:19
**flippers (1)**
42:18
**floating (1)**
40:11
**flow (7)**
11:18;37:5,15;
44:17,17,19,19
**focus (6)**
18:9;20:9;27:9,10;
29:7;40:8
**focused (1)**
18:7
**folks (6)**
8:15;9:1;38:21;
44:9;50:21;51:9
**follow (1)**
10:14
**followed (1)**
46:6

**following (3)**
10:14;16:10,12
**forefront (1)**
38:23
**forensic (1)**
18:3
**Former (3)**
6:3;7:23;17:16
**forth (1)**
9:7
**forward (4)**
29:25;40:9;43:16;
49:15
**foul (6)**
21:2;22:10,22;24:2;
45:1;49:23
**found (2)**
9:19;10:11
**four (1)**
55:7
**fourteen (1)**
11:12
**frankly (5)**
27:5;32:16;37:20;
39:1;41:6
**free (1)**
55:4
**frequent (1)**
43:8
**front (2)**
43:12;44:12
**fully (2)**
8:11;23:23
**fulsome (1)**
52:5
**fun (1)**
52:23
**funds (5)**
14:3,23,24;41:15;
42:16
**further (2)**
51:20,23
**futility (2)**
22:4;37:18

**G**

**geez (1)**
25:3
**General (1)**
24:1
**Generally (1)**
11:10
**generating (1)**
21:22
**gets (2)**
21:10;25:6
**given (3)**
13:16;50:5;52:4
**giving (1)**
52:7
**glaze (1)**
52:22

**goes (4)**
16:1;22:21;35:3;
41:22
**Good (16)**
7:8,12,22,25;8:3,7;
9:4;10:24;12:7;17:15;
20:3,3;43:18;48:2;
55:22,24
**goods (1)**
18:24
**Gordon (1)**
7:16
**Granchelli (19)**
7:4,24;17:16;18:23;
19:2,6,18;20:16;
24:13;25:15,21;
26:19;27:24;28:11;
30:13;31:16;38:14;
40:13;51:2
**Grand (1)**
17:20
**grandmother (1)**
39:8
**great (2)**
8:23;9:4
**Green (1)**
5:4
**ground (3)**
20:7;45:13;47:8
**Group (1)**
7:17
**guess (6)**
16:2;21:17;40:10;
41:16;43:6;53:21
**guided (1)**
55:16

**H**

**Haddam (2)**
14:2;38:13
**hall (1)**
14:8
**hand (1)**
9:22
**handle (2)**
46:25;55:18
**handling (1)**
14:2
**hang (1)**
26:3
**hanging (1)**
46:23
**happen (4)**
40:20;41:25;47:2;
54:20
**happened (2)**
11:20;45:24
**happens (3)**
13:24;26:20;28:20
**happy (7)**
7:19;8:7;28:6;29:3;
47:8;49:11;50:17;

In the Matter of: HELEN RACANELLI and JOSEPH GRACANELLI

May 21, 2024

52:9,13

**hard (1)**
27:12

**harken (1)**
23:25

**harm (7)**
21:2;22:10,22;24:2;
32:7;44:25;49:23

**hat (1)**
26:3

**hate (1)**
28:18

**head (3)**
14:7;29:21;37:1

**hear (17)**
8:25;10:12,15,15,
16,20;12:6;14:7;17:8,
10;20:1;37:23;43:21;
51:14;52:11;55:8,20

**heard (8)**
8:2;14:10;24:22;
32:19;35:6;39:15,20;
52:24

**hearing (5)**
8:10;11:20,23;
19:16;33:10

**hearings (2)**
12:14;43:9

**held (1)**
19:16

**Helen (1)**
7:3

**helpful (2)**
22:9;53:1

**here's (5)**
14:4;15:24,25;
39:24;44:10

**higher (1)**
43:2

**highlighted (1)**
50:6

**highlights (1)**
10:7

**hindsight (1)**
19:22

**hinted (1)**
38:20

**hire (1)**
24:9

**history (2)**
10:10;13:3

**hit (1)**
24:19

**hits (1)**
45:18

**hitting (1)**
37:1

**holding (1)**
40:17

**hole (1)**
41:21

**home (3)**
25:14;32:5;54:21

**Honor (54)**
7:8,12,22;8:3;
10:24;12:3,7;15:21;
16:18,24;17:6,15;
18:12,18;19:24;20:3,
9;21:4;22:2;23:7,12;
25:14;26:14;29:13,
24;30:3;31:8,20;32:2,
5,21;34:5;35:19;
36:14,25;37:17,25;
39:11;40:13;41:13;
43:25;45:23;46:7;
50:25;51:13,16,20,23;
52:2,18;54:5,10,19;
56:1

**hoping (1)**
47:24

**horrible (1)**
42:21

**horse (2)**
26:19;36:3

**hour (1)**
52:4

**house (3)**
42:18,19;47:23

**HUEBSCHER (14)**
6:3;7:22,23;17:12,
15,16;18:12,18;32:22,
23;33:3;51:23;53:22;
54:5

**husband (2)**
44:18;50:11

**HVAC (1)**
42:23

**hybrid (2)**
8:10,11

**hypothetical (3)**
27:18;28:10,13

**I**

**idea (1)**
48:9

**identified (4)**
18:6,10;31:11;34:9

**identify (1)**
28:16

**image (1)**
36:14

**imagine (1)**
27:12

**imagining (1)**
16:7

**impact (2)**
41:24;45:17

**impediment (2)**
43:15;47:4

**implicate (2)**
40:25;47:3

**implicated (3)**
29:12;45:7,7

**implication (1)**
39:18

**important (3)**
35:1;45:4;53:16

**Improvements (30)**
5:20;8:5,6;9:3;
10:20;13:6,15;15:7;
17:11;26:18,21;
27:10,12,16,21,24;
28:9;30:15;31:12,17;
33:13;37:11,23;38:2;
39:12,20;40:12;
42:17;44:2;52:1

**Inc (2)**
5:20;8:5

**includes (1)**
53:11

**including (1)**
45:10

**independent (3)**
32:23;33:4;36:17

**independently (2)**
46:19;48:16

**indirect (5)**
33:19,20;34:4,24;
35:21

**individual (2)**
26:23;36:1

**ineluctable (1)**
23:16

**influences (1)**
45:5

**informally (1)**
48:6

**information (4)**
19:5;26:6;47:11;
49:4

**innocent (1)**
35:4

**inquiry (3)**
43:20,25,25

**instance (2)**
29:16;42:10

**instances (2)**
30:14;41:25

**instant (2)**
12:9;18:19

**instinct (1)**
19:23

**insufficient (4)**
14:3,23,24;15:17

**insurance (1)**
13:15

**intend (1)**
23:11

**intensive (1)**
37:5

**interest (10)**
13:10;21:6;29:11;
33:17,18;34:4,24;
35:23;36:2,8

**interested (1)**
20:20;29:6

**interesting (3)**
20:12;27:20;43:10

**interference (1)**
47:16

**internet (2)**
8:23;43:9

**interrelationship (1)**
33:24

**intertwined (2)**
11:7,8

**into (14)**
11:7;17:19;21:20;
25:23;29:13;30:2;
34:19,22;41:2,11;
45:19;48:15;52:6;
54:15

**introduced (1)**
39:15

**introductions (1)**
33:11

**invested (1)**
42:20

**investigation (3)**
24:18;37:5;39:13

**invite (1)**
10:4

**invoked (1)**
17:13

**involved (4)**
24:3;25:19;33:24;
34:12

**irregular (1)**
12:19

**irregularities (1)**
12:17

**issue (28)**
11:1;15:19;16:1;
17:20;22:15;28:16;
30:9;32:25;35:5,6;
36:21;37:3,19;38:21,
22;39:10;40:21;41:8,
11;45:6,13;46:9,11,
17;47:2,3;49:6,7

**issued (1)**
22:14

**issues (31)**
9:19,24;10:17;11:7;
16:21;18:6;20:25;
22:9;38:23;40:23;
41:5,22;42:1;43:22;
44:12;45:11;46:13,
19;47:16,21;48:4,15,
16,23;49:2,12;50:5;
53:4,6,10,16

**J**

**January (1)**
14:5

**Jared (1)**
7:16

**jaws (1)**
47:6

**jealousy (1)**
54:17

**joke (1)**
55:8

**Joseph (1)**
7:4

**Judge (13)**
11:14,15;13:7;
15:24;19:16,17;
21:19;22:8;23:25;
24:8;33:10;42:11;
49:24

**judicial (3)**
22:5;37:18,19

**jumping (1)**
46:8

**June (1)**
54:15

**JUSTICE (1)**
5:2

**justification (1)**
24:16

**K**

**keep (4)**
14:8;18:6;52:10;
54:12

**kettle (1)**
39:7

**kind (11)**
22:2;25:22;26:2,9,
16;27:20;30:6;33:24;
35:4,23;41:4

**kinds (2)**
45:10;53:16

**KIRBY (22)**
5:19,25;8:3,4,4,9;
9:2,2;37:25,25;39:11;
40:12,15,19;41:13;
42:16;47:22;48:2,9,
17;52:2;53:7

**kitchen (1)**
42:22

**knew (1)**
19:18

**knows (1)**
43:9

**L**

**laboring (2)**
53:8,9

**laid (1)**
44:14

**land (1)**
42:7

**language (1)**
34:23

**lap (1)**
48:5

**last (4)**
32:14;48:3;53:21,
21

**late (1)**

48:3

**later (4)**
19:9;23:20;38:13;
41:11

**Law (2)**
7:17;12:1

**lay (1)**
42:7

**Leap (1)**
55:2

**learned (3)**
16:10,12;19:6

**least (2)**
17:18;19:10

**leave (6)**
35:19;36:24;52:13;
53:24;54:13,20

**leaves (1)**
53:22

**leaving (1)**
55:14

**led (2)**
13:24;16:6

**left (10)**
19:7,8;23:16;25:16;
26:14;37:13,14,14;
40:6;43:17

**legal (6)**
21:24;22:13,21;
49:22;52:6,11

**legally (1)**
50:7

**lender (1)**
13:16

**length (4)**
12:23;19:4;23:23;
25:10

**lengthy (1)**
22:14

**letter (5)**
13:13;14:1;38:10,
15;50:17

**letters (1)**
53:13

**level (1)**
30:9

**levels (1)**
36:6

**light (2)**
25:4;55:19

**likely (1)**
46:17

**Linda (5)**
7:17;27:21,23;
28:14;32:6

**line (3)**
20:14;41:11;44:23

**linger (1)**
53:16

**linkage (1)**
36:20

**literally (1)**
42:2

**litigation (2)**
11:14;35:25

**little (5)**
11:7;33:14;53:3;
55:3,11

**lived (1)**
18:16

**livelong (1)**
35:9

**LLC (1)**
5:11

**LLP (1)**
5:19

**long (4)**
18:8;24:18;34:20;
53:19

**look (5)**
22:10;26:3;28:3;
50:2;51:10

**looking (8)**
21:23;29:5,6,9;
32:22;35:24;49:25;
52:17

**looks (1)**
54:1

**loop (1)**
43:21

**lost (1)**
35:2

**lot (9)**
9:12,20;18:2;21:10;
36:12;45:5;47:10;
49:20;55:4

**loyalties (1)**
31:10

**loyalty (4)**
30:25;31:2,2,4

**lurch (1)**
53:24

**M**

**mailbox (2)**
19:7,9

**makes (2)**
17:8;20:8

**making (1)**
14:6

**manages (1)**
20:23

**Mansukhani (1)**
7:17

**many (1)**
42:18

**marketing (2)**
24:8,9

**Marty (1)**
23:3

**masquerade (1)**
26:16

**material (1)**
33:17

**matter (15)**

7:2,24;17:17;20:15,
16,20;22:4;25:21;
26:22;27:24;34:17,
17;36:15;40:2;50:10

**mattered (1)**
21:19

**matters (1)**
50:10

**maximize (1)**
27:4

**may (11)**
13:6;18:8;24:23,23;
26:5;30:7;36:16;
42:11;43:18;47:13;
52:18

**maybe (14)**
24:7,8,8,9;25:3;
28:25;29:2,20;37:8;
41:3,17;43:3;46:21,
22

**MCCABE (1)**
5:11

**mean (18)**
13:23;15:4,19;16:6;
17:12;22:7;28:4,5,19;
29:2,19,25;30:25;
32:13;37:6;42:4;
50:12,12

**meaning (1)**
45:16

**meantime (1)**
53:18

**meat (2)**
25:22;37:6

**mediator (2)**
48:19,21

**meet (1)**
24:16

**meeting (1)**
14:8

**meets (1)**
45:2

**MELISSA (3)**
5:16;7:12;12:7

**memory (1)**
19:11

**mentioned (1)**
9:12

**mere (1)**
26:14

**merits (5)**
9:13;11:5,7,8;22:12

**met (1)**
17:24

**metaphors (1)**
25:2

**method (1)**
28:19

**microphone (2)**
8:19,21

**microscope (1)**
36:7

**Midland (1)**

5:12

**might (8)**
17:1;23:21,21;25:8;
29:23,23;32:25;41:24

**million (2)**
15:1,11

**million-plus (1)**
15:5

**minimum (1)**
51:7

**minor (2)**
29:14;34:17

**minute (1)**
41:22

**minutes (1)**
12:3

**misconduct (1)**
30:9

**misremembering (1)**
15:5

**misrepresentations (1)**
12:13

**missing (4)**
28:25;29:2;41:12;
42:9

**misstatement (1)**
33:8

**mixing (1)**
25:2

**Mogil (38)**
7:16,16;20:3;21:4,
25;22:2,24;23:14;
24:12;25:13;26:13;
27:19;28:13;29:5;
30:3,12;31:5,8,13,18;
32:2,11,21;33:6;34:3;
35:1,14,19;36:12,24;
51:20;52:18;54:20,
25;55:2,6,10,15

**Mogil's (2)**
45:22;46:1

**moment (3)**
32:20;35:13;43:12

**Monday (1)**
30:5

**money (9)**
13:21,22;14:11;
15:12;16:1,5,15;42:6;
49:11

**monitors (1)**
8:13

**months (1)**
11:12

**more (16)**
11:25;12:22;13:8;
23:8,11;25:15,22,23;
36:13;49:11;51:9;
52:5,7,16;53:8,9

**morning (2)**
20:3;30:5

**mortgage (1)**
38:18

**most (1)**

33:21

**mostly (1)**
22:3

**motion (36)**
11:2,5,10;12:10,14,
15,21,23;13:5,18,20;
14:12;16:6,8,9,22;
17:4,5;20:15,20;
22:25;24:23,24;25:5;
29:14;32:13;38:1,3,6,
24;40:15;44:3;49:10,
10;52:12;53:11

**motions (7)**
7:5;18:5,10;32:5;
40:10,10;44:9

**Motors (1)**
24:1

**movants (1)**
7:7

**move (3)**
8:17,18;18:24

**moving (1)**
12:9

**much (9)**
12:5;17:13;37:22;
44:2,4;47:22,22;
51:21;55:24

**mull (2)**
52:14,19

**multiple (2)**
12:14;36:6

**N**

**nail (1)**
37:1

**nature (8)**
14:13;21:21,22;
25:10;32:24;33:8,11;
35:11

**necessarily (5)**
9:22,25;18:3;37:4;
54:14

**necessary (2)**
30:22;49:7

**necessitated (1)**
19:14

**need (22)**
9:22;10:1,9;13:4;
24:7,9,9;26:6;41:3,4,
4;44:11,23,25;45:16,
19,23;47:7,17;49:3;
50:4;54:2

**needs (6)**
8:1;14:8;39:13;
47:3,20;49:14

**negatively (1)**
32:8

**neighbor (1)**
43:11

**neighborhood (1)**
43:3

**Neither (1)**

18-23674-shl    Doc 196    Filed 06/06/24    Entered 06/07/24 15:41:13    Main Document
Pg 64 of 68
In the Matter of: HELEN RACANELLI and JOSEPH GRACANELLI

May 21, 2024

33:17
**New (7)**
5:6;28:24;42:22,22,
23,23,23
**newborn (1)**
54:21
**news (1)**
48:2
**next (3)**
7:2;44:21;49:15
**Nobody (1)**
53:14
**noise (1)**
55:11
**noises (1)**
14:7
**nondisclosure (1)**
11:21
**nondisclosures (2)**
11:19;45:24
**none (2)**
21:18;28:23
**nor (4)**
27:24;33:17;36:2;
37:12
**normally (1)**
29:17
**note (1)**
35:1
**noted (2)**
13:14;18:22
**notes (1)**
10:7
**noticed (1)**
30:8
**notion (3)**
25:7;30:24;53:4
**number (3)**
15:4,14;18:25
**NY (3)**
5:6,14,23

**O**

**objection (1)**
17:25
**objections (1)**
20:6
**obligation (1)**
35:12
**obligations (3)**
44:17,19;50:12
**obvious (1)**
13:9
**obviously (9)**
9:17,20;10:4,12;
22:22;33:9;38:3;
48:12;51:8
**occasion (1)**
13:8
**occur (2)**
39:13;41:14
**occurred (3)**

28:14;31:20;41:14
**off (4)**
8:13;10:23;15:18;
29:21
**offer (1)**
47:23
**Office (17)**
5:3;7:7;10:15,23;
17:4;23:21;41:23;
43:21;45:12,12;
46:14,20;48:13;
49:13;50:15,23;53:25
**office's (1)**
44:3
**offline (2)**
54:14,17
**oftentimes (2)**
28:17;29:22
**old (1)**
20:7
**omissions (2)**
12:13;44:4
**once (1)**
32:14
**One (35)**
5:4;7:20;8:17,21;
10:11,11;13:8,9;
17:19;19:13;20:10;
22:4;26:8,8,22;29:2,
3;30:15,20;31:3;34:9;
38:6;39:4,12;40:5,11,
11,21;43:4,20;44:21;
45:16;46:18;47:14;
51:10
**only (8)**
12:24;17:13;19:12,
13;44:6;45:16,17;
51:10
**open (4)**
9:25;26:8;46:7;
51:11
**opened (1)**
11:25
**operates (1)**
30:6
**operations (1)**
42:14
**opinion (1)**
22:14
**opposed (1)**
50:11
**order (18)**
10:14;12:11;15:13,
24;19:21;35:8,9;
38:17;39:6;40:17;
41:15;42:14,17;
46:24;48:21;50:17,
22;51:5
**ordering (1)**
51:2
**original (1)**
13:20
**others (2)**

23:2;30:7
**out (36)**
13:3;18:24;21:19;
23:20;24:10;25:3;
27:3,8;28:8;34:19;
36:6,18;39:2,14;40:5;
41:6,7;42:7,14;43:4;
44:14,23;48:3,16,19,
24,25;49:9,15;50:2,8,
18,20;53:19;54:5;
55:20
**outcome (1)**
44:24
**over (12)**
8:17,18;10:22;
11:11;15:1,10;42:20;
46:23,23;52:14,19,22
**overlap (2)**
17:2;20:10
**overlapping (1)**
20:16
**overly (1)**
32:19
**oversight (1)**
37:7
**own (2)**
32:17;39:23
**owner (1)**
11:16
**owns (2)**
39:3;40:7

**P**

**paid (4)**
13:15;16:8;35:25;
43:1
**painful (1)**
49:11
**panic (1)**
55:11
**paper (1)**
37:8
**papers (9)**
9:6;10:7;19:23;
22:24;29:14;39:15,
16;43:2;46:1
**parcel (1)**
45:3
**pardon (1)**
40:4
**parse (2)**
18:15;21:11
**part (5)**
29:16;33:21;40:15;
45:3,4
**participant (1)**
43:8
**particular (1)**
18:20
**particularly (1)**
27:5
**parties (18)**

12:13,20;16:11,13,
17;18:11;19:14;
20:21;21:1;22:3,5;
27:3,17;33:23;46:10,
11;47:1;52:16
**party (6)**
8:1;23:17;33:4;
39:4,5;55:23
**pass (1)**
28:17
**paternity (1)**
54:20
**path (1)**
41:22
**pay (2)**
15:17;42:18
**paying (1)**
39:5
**payment (2)**
16:1;36:21
**pejorative (1)**
22:11
**pejoratively (1)**
49:23
**pending (2)**
43:16;44:20
**people (13)**
24:3,6;29:18;30:1,
7;31:3,6;33:1,21;
35:10;40:9;42:3;
47:25
**people's (2)**
9:13;54:12
**per (1)**
53:23
**perfectly (1)**
42:12
**perhaps (4)**
37:7,8;43:21;53:24
**permeated (2)**
11:19;20:13
**permit (1)**
32:9
**person (5)**
19:8;24:7,7;29:6;
47:24
**personal (1)**
18:24
**perspective (5)**
11:1;17:18;21:6,12;
54:16
**persuaded (1)**
32:19
**ph (2)**
22:25;23:3
**phase (1)**
11:19
**phrase (1)**
22:22
**phrasing (1)**
22:11
**pick (2)**
46:4,5

**picked (1)**
39:14
**piece (3)**
17:21,22,22
**pieces (1)**
34:15
**place (1)**
41:23
**plan (1)**
24:13
**play (1)**
28:1
**played (2)**
26:21;28:7
**Please (2)**
8:8;32:10
**PM (1)**
56:2
**point (15)**
19:20;20:18;25:8,
14;26:10;27:6,20;
28:16;31:19;32:4;
36:6;38:7;43:13;
48:18;53:1
**pointedly (1)**
11:22
**points (1)**
17:1
**pool (1)**
44:13
**Port (1)**
5:14
**position (7)**
32:18;38:2,25;44:8,
11;51:5,12
**possibility (1)**
31:10
**possibly (1)**
19:23
**Post (1)**
5:21
**post-charge (1)**
23:4
**posted (1)**
13:25
**potential (15)**
9:23,24;16:16;28:4,
16;29:1,23;30:7,8;
31:11,19;32:3;34:21;
40:23;46:14
**potentially (3)**
28:22;48:15;53:5
**practical (1)**
52:7
**practice (5)**
29:20;30:4;49:10,
10;53:11
**practices (1)**
29:20
**practicing (1)**
30:6
**preceding (1)**
32:24

**precipitated (1)**
19:14
**Precisely (2)**
32:2;33:6
**predecessor (1)**
33:10
**preliminary (1)**
10:19
**premised (3)**
11:10;16:15,16
**PRESENT (2)**
6:2;50:15
**presentation (1)**
45:22
**presented (3)**
18:21;35:16;44:15
**presents (1)**
30:22
**pretty (2)**
36:14,22
**pricing (1)**
18:22
**primary (1)**
17:21
**principal (3)**
8:6;26:18;34:5
**prior (1)**
19:5
**probably (3)**
17:8;38:24;53:7
**problem (3)**
32:17;41:10;54:18
**problematic (1)**
15:22
**Procedurally (1)**
8:16
**procedure (1)**
46:21
**procedures (1)**
42:1
**proceed (1)**
50:15
**proceeded (1)**
42:18
**proceeding (11)**
14:14;20:14,17,21;
24:14;25:16;26:22,
24;27:22;34:6;54:1
**proceedings (5)**
31:9;36:1,3;40:8;
56:2
**process (11)**
22:19;23:24;24:4,5,
9;25:9;27:4,8;41:4;
47:14;48:7
**professional (2)**
14:9;55:19
**proof (1)**
15:10
**proper (2)**
43:4;46:12
**property (16)**
12:17;13:15;17:23;

18:19,20;19:9;26:19;
30:21;37:12;39:4;
40:7;42:21;45:18;
47:2;48:11;53:6
**proposals (1)**
53:13
**proposition (3)**
12:1;22:21;45:24
**prospective (1)**
44:5
**provided (2)**
19:5;23:6
**pull (1)**
28:21
**pumping (1)**
41:7
**purchase (2)**
30:21;37:11
**purchaser (3)**
11:16;12:12,16
**purpose (2)**
23:3;40:16
**purposes (4)**
9:25;40:21;50:12;
51:1
**pursue (3)**
11:3;24:22;47:15
**pursuing (1)**
53:23
**pursuit (1)**
12:2
**pushed (1)**
38:18
**put (10)**
13:5;34:15;36:6;
37:8;42:22;46:9,25;
47:1;48:5;52:21
**Putting (3)**
32:18,21;41:20

**Q**

**quarterback (1)**
30:5
**quick (1)**
30:18
**quickly (1)**
34:18
**quite (4)**
14:17;32:16;38:5;
44:22

**R**

**rabbit (1)**
41:21
**Racanelli (24)**
7:3;8:5;13:6;18:24;
19:2,6,18;20:8,15,17,
20;25:16;26:1,18,20,
21,23,24;30:15;36:1;
37:12;45:19;47:23;
51:3

**raise (3)**
22:16;45:6;46:1
**raised (5)**
10:17;45:11,12;
49:21;53:17
**rampantly (1)**
25:1
**re (2)**
22:24;23:3
**reach (12)**
9:23;44:15;46:18,
24;47:9,14;48:3,19;
49:15;50:19;53:19;
54:5
**reached (1)**
21:2
**read (5)**
9:6;10:6;33:16;
43:3,9
**reading (1)**
19:22
**reads (1)**
35:22
**reaffirmation (1)**
23:4
**real (6)**
17:23;18:19;24:9;
38:13;39:23;48:11
**reality (1)**
36:8
**realized (1)**
32:14
**really (21)**
7:3;9:10;14:19;
17:18;18:5;21:15;
23:10;24:15,16;29:9;
30:13;31:9;34:9;35:2;
37:10;38:25;39:8;
43:10,12;45:17;49:6
**reason (9)**
12:17;16:5;22:8;
30:1;33:18;34:24;
37:9;41:7;46:17
**reasonable (1)**
45:6
**reasons (6)**
11:24;13:8,17,17;
14:12;24:19
**recall (2)**
19:10,12
**receive (1)**
13:12
**received (5)**
13:22,22;18:23;
33:12,15
**recitation (2)**
20:6;52:5
**record (7)**
9:25;39:2;44:16;
46:25;47:1;49:14;
51:1
**Rees (1)**
7:16

**reexamine (1)**
25:20
**refused (2)**
27:21;35:7
**regard (1)**
46:14
**regarding (2)**
39:25;44:1
**relate (1)**
18:5
**related (5)**
7:3;9:17;33:2;44:2;
48:15
**relating (1)**
26:7
**relation (1)**
35:25
**relationship (8)**
16:20;27:3;33:19,
20;34:25;35:11,21;
43:20
**relationships (5)**
12:13,19;16:10;
21:22;23:23
**relevant (2)**
18:10;26:4
**relief (9)**
11:3;12:2;16:14;
23:5,17;24:23;37:15;
44:5,5
**rely (1)**
22:20
**remarks (1)**
18:9
**remedy (1)**
40:24
**remember (2)**
28:5;44:22
**remind (1)**
9:18
**reopen (32)**
7:5;9:8,11;11:2;
12:9,23;14:12;16:23;
18:5,10;22:4,8,25;
23:4;24:22,24;25:5;
26:8;32:1;40:5,6,6,10,
21;44:3,11;45:9,16;
46:16;49:3;51:6,10
**reopened (8)**
9:21;11:25;12:2;
13:18;40:13,16;
45:23;48:24
**reopening (12)**
9:17;10:1,12;11:5;
21:23;22:7;26:1,3;
45:2,9;51:2;53:22
**report (3)**
13:5;19:1,15
**represent (9)**
8:4;9:14,15;11:15;
12:25;24:6;27:21,25;
39:21
**representation (11)**

12:25;21:8;29:14,
24;30:14,20;31:25;
33:25;34:5,10,11
**representations (1)**
20:16
**represented (7)**
11:16;27:18,23;
28:6;36:4;38:9;47:13
**representing (4)**
9:2;11:13;12:20;
13:1
**represents (1)**
51:9
**request (8)**
9:8;13:18;14:12;
26:5,6;40:22;43:16,
19
**require (2)**
25:19;28:9
**requirements (1)**
10:1
**reserve (1)**
35:10
**residence (1)**
17:22
**resistance (1)**
17:24
**resolution (1)**
21:2
**resolve (1)**
38:17
**resolved (2)**
47:3,24
**resources (3)**
22:5;37:18,19
**respect (5)**
18:19;21:9;38:1,3;
44:5
**respectfully (3)**
31:8;32:11;41:13
**respond (1)**
47:18
**response (2)**
24:11;33:5
**responsibilities (1)**
55:19
**rested (1)**
55:5
**result (4)**
23:24;25:6;31:13;
46:12
**retention (1)**
29:7
**return (3)**
13:19;35:7;36:21
**returned (7)**
13:23;14:11,22;
15:13,15;16:5,9
**returning (1)**
15:18
**reversed (1)**
25:18
**revisit (1)**

In the Matter of: HELEN RACANELLI and JOSEPH GRACANELLI

May 21, 2024

40:7
**right (61)**
7:10,14,18,25;8:7,
20;9:8;11:13;12:5;
14:16;15:4,9,12;16:4,
14,14,19,22,25;17:7,
7;19:25;20:1,18;23:7,
13;25:25;27:1,2,4;
28:4;30:4,11,12;31:1;
34:6;35:14,19;36:10,
23;37:21;40:18;41:9,
18;44:7,10;46:8,12;
48:8;51:14,17,21,25;
52:3,24;53:1;54:7,9,
20;55:23,24
**rights (1)**
35:10
**rise (1)**
30:8
**risk (1)**
14:21
**Rivera (2)**
20:13;54:11
**Road (2)**
5:21;45:18
**role (5)**
26:21,24;28:1;32:6;
33:6
**round (1)**
38:8
**rubber (1)**
45:18
**Rule (2)**
46:1,5
**rules (1)**
29:2
**ruling (2)**
52:6,17
**run (1)**
47:8
**running (2)**
30:2;45:13

**S**

**safe (1)**
17:2
**sale (24)**
12:10,11;13:9;
15:13;17:22;18:20,
21;19:10,13,21;25:9;
26:7;38:17,21;39:5;
40:17,21,25,25;41:15;
42:17,25;45:17;46:9
**sales (1)**
17:20
**same (5)**
12:20;23:2;50:22;
53:15;55:8
**satisfaction (1)**
38:17
**satisfy (1)**
10:1

**save (1)**
49:9
**saw (2)**
19:12;42:20
**saying (14)**
13:22;15:24;20:15;
22:1,3,9,10,14,17;
23:12;25:11;31:24;
42:10;51:5
**Scarsdale (1)**
5:23
**schedule (5)**
23:1;47:19;49:19;
52:15;53:20
**scope (1)**
24:25
**Scully (1)**
7:16
**se (1)**
53:23
**seated (1)**
8:8
**second (8)**
17:21;19:1;20:24;
26:8;32:14;42:15;
46:9;53:8
**seeing (2)**
20:7;46:13
**seek (1)**
44:5
**seeks (1)**
44:3
**seem (1)**
53:23
**seems (6)**
15:22;16:1;24:2;
33:2;36:22;46:17
**segue (1)**
43:18
**Seibel (1)**
11:14
**sell (2)**
12:21;13:5
**seller (2)**
13:7;39:16
**selling (1)**
19:9
**sense (6)**
16:25;17:8;20:8;
24:6;27:11;49:16
**sent (8)**
13:13;14:1,4;15:15;
38:8,19;41:16,16
**separate (11)**
11:6,17;16:2;35:5,
6;36:17;39:9;46:18;
48:15;53:4,5
**served (1)**
54:4
**service (1)**
35:25
**servicer (5)**
14:1;15:16,16;

38:11,16
**serving (1)**
33:4
**set (3)**
8:11;18:22;23:23
**sets (1)**
34:13
**several (2)**
11:18;54:17
**shade (1)**
22:17
**shaking (1)**
14:7
**Shelley (1)**
17:20
**shortly (1)**
19:20
**shot (1)**
44:13
**show (1)**
38:16
**shows (1)**
12:22
**side (2)**
28:7;35:20
**sign (2)**
19:3;29:18
**signed (2)**
19:13,13
**significant (2)**
20:10;52:11
**similar (1)**
24:4
**simple (3)**
12:3;39:13;45:23
**simply (2)**
11:24;12:16
**single (1)**
11:20
**sitting (2)**
41:6;55:17
**situation (2)**
40:1,8
**slides (1)**
53:3
**slightly (1)**
42:25
**slip (1)**
54:15
**smart (1)**
41:6
**smoke (3)**
23:9,10;37:6
**snatch (1)**
47:6
**solution (1)**
49:1
**somebody (5)**
14:6;20:23;22:14;
28:6,8
**somehow (1)**
47:5
**someone (4)**

12:16;54:23,24,25
**someone's (1)**
55:8
**somewhat (1)**
44:2
**somewhere (1)**
34:10
**soon (1)**
30:18
**sorry (4)**
7:15;18:12;25:1;
55:7
**sort (26)**
21:14;22:19;24:18;
25:19;26:2,3;27:6;
29:19;30:22;33:15;
34:18;36:2,17;38:20;
42:6,13;43:21;44:17,
24;46:24;48:5,10;
49:23;50:8;52:7,7
**sounds (3)**
39:4;47:12,17
**space (1)**
8:22
**speak (1)**
55:15
**SPEAKER (2)**
8:16,20
**speaking (1)**
11:10
**speaks (1)**
21:5
**specifically (1)**
24:14
**specifics (1)**
25:23
**speculation (3)**
38:5;39:14,14
**speculative (1)**
32:4
**spend (3)**
36:12;49:11;52:23
**spends (1)**
21:10
**spot (1)**
52:21
**spouse (5)**
11:16;26:20;30:21;
34:6,11
**square (1)**
41:5
**squarely (1)**
47:3
**stake (2)**
29:11,11
**stalking (2)**
26:19;36:3
**stand (1)**
12:4
**standard (9)**
22:3;29:6,25;30:2;
45:2,9;46:2;49:22,24
**standards (2)**

9:9;52:6
**standing (3)**
22:14,15;24:18
**start (5)**
7:6;10:9,23;38:7;
41:4
**started (1)**
48:6
**starting (4)**
7:7;12:19;50:21,22
**stated (4)**
13:3,17,18;23:3
**statement (4)**
33:15;34:2;39:19,
20
**STATES (5)**
5:2,3;7:7;29:8;
45:11
**stating (1)**
14:3
**status (3)**
19:1,15;39:6
**stay (2)**
21:13;55:20
**stems (1)**
22:2
**step (1)**
49:15
**steps (2)**
45:10;53:9
**stick (1)**
35:12
**stickies (1)**
10:8
**sticking (1)**
14:21
**still (12)**
23:16;28:1;30:12,
18,19;33:7,7;35:22,
22;37:4,17;38:18
**stipulation (2)**
46:24;48:10
**stood (2)**
16:21;24:6
**straighten (1)**
23:19
**stress (1)**
25:12
**string (1)**
28:21
**struggling (1)**
30:19
**studs (1)**
42:22
**stuff (2)**
44:23;50:4
**Subchapter (12)**
6:3;7:20,23;17:9,9,
16;18:15;32:23;33:4;
42:24;51:22;54:3
**subject (2)**
9:9;33:10
**submit (1)**

50:17

**success (1)**
18:3

**sufficient (1)**
39:2

**suggest (2)**
38:16;50:14

**suggested (1)**
19:1

**suggestion (2)**
45:15;51:11

**Suite (3)**
5:5,13,22

**supplement (1)**
53:11

**support (2)**
17:21;22:1

**suppose (1)**
32:25

**supposed (8)**
8:16;14:17,25;
15:23;21:3,18;28:3,
18

**sure (15)**
8:12,25;10:3;14:17;
16:20;18:14;21:25;
24:10;25:11,13;
30:23;36:7,22;42:20;
47:9

**suspect (3)**
12:17;23:19,20

**suspenders (1)**
26:5

**system (1)**
45:4

**T**

**table (1)**
27:7

**talk (7)**
43:11;46:11;49:9,
12,17;53:19,25

**talked (1)**
48:4

**talking (8)**
10:10;30:14;34:3,7;
36:18,19,21;45:17

**tax (1)**
17:20

**taxes (3)**
13:15;39:5;42:19

**teased (1)**
50:8

**teed (3)**
47:10,20;49:21

**tees (1)**
46:20

**telling (1)**
32:13

**tend (1)**
21:13

**tendered (1)**

**14:25**

**terms (15)**
14:13;16:21;24:13;
25:15,15;29:7;30:13;
32:5,6;33:8;35:21;
42:14;44:19;49:8,14

**test (1)**
25:12

**Thak (1)**
55:2

**thereafter (2)**
19:20;42:25

**therefore (1)**
21:22

**thinking (2)**
26:12;42:13

**third (5)**
17:22;18:5;19:1;
33:4;42:15

**though (2)**
25:5;40:2

**thought (4)**
10:14;17:13;42:4;
43:6

**thoughts (1)**
43:19

**three (4)**
17:19;18:6;53:3,14

**threshold (1)**
23:11

**throughout (1)**
20:13

**throw (3)**
22:17;25:1,2
23:5

**Thus (1)**
23:5

**tied (1)**
52:6

**timeline (2)**
50:9;54:22

**timer (1)**
55:17

**times (1)**
22:12

**timing (1)**
13:24

**Tirelli (23)**
7:14,15,17,17,18;
11:3,11,23;12:24;
17:10;19:17;27:21,
23;28:14;31:15,23;
35:22;36:4;39:15,21;
44:4,6;45:25

**Tirelli's (14)**
9:18;10:16;11:21;
20:1;29:10;32:6;
44:14;48:13;49:16,
25;50:16;51:19;52:3;
53:25

**today (12)**
9:7,16;13:17;15:20;
34:16;38:10;44:3,9;
46:6;47:5;50:6;52:7

**toe (1)**
14:21

**together (3)**
18:25;22:18;34:15

**told (1)**
12:24

**took (1)**
10:10

**top (1)**
29:21

**topic (1)**
10:5

**town (1)**
14:8

**traditional (1)**
52:16

**transaction (10)**
12:11,18,18;19:4;
26:2,7;27:25;33:9;
39:22;44:1

**tread (1)**
20:7

**tree (1)**
40:4

**trouble (1)**
16:7

**troubled (1)**
16:11

**true (4)**
39:16,19,23;43:9

**truly (1)**
23:22

**trust (1)**
55:18

**Trustee (21)**
5:3;6:3;7:9,20,23;
10:25;17:9,10,16;
18:15;20:12,19;
23:14;24:17;26:15;
29:8;32:23;33:5;
43:24;51:22;54:3

**Trustee's (22)**
7:7;10:15,22;17:4;
20:14;23:21;37:7;
38:1,24;40:22;41:23;
42:25;43:21;45:11,
12;46:14,19;48:13;
49:13;50:14,23;53:25

**try (2)**
49:9;50:20

**trying (15)**
13:20;18:6;21:21,
24;22:11,16,17,23;
25:14;26:15;32:4;
42:13;49:23;52:20,21

**tumultuous (1)**
13:2

**turn (9)**
8:13;10:22;14:7;
17:23;25:21;26:11;
29:9;34:22;37:3

**turns (3)**
18:2,4;24:10

**twists (2)**
18:2,4

**two (17)**
7:3;10:10;12:3;
18:11;19:14;27:17;
30:13,13;33:23,23;
34:9;38:13;44:21;
47:16;53:2,4,14

**two-step (1)**
47:14

**U**

**ultimate (2)**
9:23;40:23

**ultimately (4)**
13:11;26:13;37:17;
41:24

**unclear (1)**
40:1

**under (3)**
28:10;36:7;42:17

**Understood (5)**
15:21;16:20;21:4;
24:6;36:24

**undo (5)**
25:24;28:22;37:14,
20;42:24

**undone (1)**
25:17

**unenforceable (1)**
23:5

**UNIDENTIFIED (2)**
8:16,20

**unique (1)**
54:2

**UNISON (1)**
56:1

**UNITED (5)**
5:2,3;7:7;29:8;
45:11

**unless (3)**
10:19;24:3,5

**unlinked (1)**
46:12

**unpack (1)**
35:17

**unrelated (2)**
14:12;31:9

**unring (1)**
42:3

**unwillingness (1)**
32:20

**up (16)**
8:11;18:1,20;23:24;
25:9;26:15;30:17;
34:17;37:10;42:11;
44:23;46:20;47:10,
20;49:18,21

**upstairs (1)**
11:13

**use (4)**
37:19;39:11;44:13;

**49:23**

**using (1)**
8:21

**UST (3)**
24:22;45:15;53:8

**V**

**vacate (1)**
12:10

**vacation (1)**
53:15

**validity (1)**
18:21

**valuation (2)**
43:4,10

**value (4)**
12:17;27:4;43:1,2

**vantage (1)**
17:1

**various (1)**
16:17

**vast (1)**
8:23

**vein (1)**
23:2

**Velez (1)**
20:12

**Velez- (1)**
54:10

**VELEZ-RIVERA (21)**
5:8;7:8,9;10:24,25;
43:18,23,23;44:8;
45:21,21;50:24,24;
51:13;54:6,8,10,19,
22;55:13,13

**versa (1)**
47:7

**versus (2)**
44:20;50:9

**vice (1)**
47:6

**victory (1)**
47:6

**view (11)**
11:10;16:16;21:12;
26:9;28:11;34:14,23;
38:25;42:16;44:14;
45:20

**views (1)**
10:12

**violation (2)**
20:24;29:21

**vis-a-vis (2)**
9:13;11:3

**volumes (1)**
21:5

**W**

**wait (1)**
55:20

**waiting (4)**

In the Matter of: HELEN RACANELLI and JOSEPH GRACANELLI

May 21, 2024

27:15;47:21;54:23;
55:17
**waiver (2)**
30:1,5
**waivers (1)**
31:7
**waiving (2)**
29:19,22
**walk (1)**
26:11
**waste (2)**
22:5;42:6
**waters (1)**
14:22
**way (19)**
15:24,25,25;21:17;
22:12,18;36:7;38:22;
42:9;46:10,22;49:17;
50:13,15,18;51:10,11;
52:23;55:20
**ways (1)**
49:11
**week (1)**
48:3
**weeks (6)**
38:13;53:2,3,14;
54:13,18
**weigh (1)**
17:10
**WEISBERG (1)**
5:11
**welcome (1)**
54:21
**weren't (1)**
9:15
**whatever's (2)**
43:17;53:11
**what's (8)**
13:23;15:23;24:11;
32:16;33:5;34:23;
40:7;45:20
**whatsoever (1)**
39:18
**Whereupon (1)**
56:2
**wherever (1)**
37:3
**whole (4)**
28:16,22;39:7;40:3
**who's (9)**
8:5;14:17,18,18;
27:17;33:22;41:9,9;
43:8
**whose (2)**
14:19;34:11
**wildly (1)**
45:7
**winning (1)**
35:4
**wins (2)**
48:25,25
**wisdom (1)**
10:5

**without (4)**
12:17;38:15;47:15,
21
**words (1)**
16:7
**work (3)**
17:24;27:15;42:19
**worked (3)**
21:19;26:7;34:18
**working (1)**
33:22
**works (4)**
8:24;15:25,25;
28:23
**worried (1)**
30:1
**worry (2)**
42:25;47:15
**worthy (4)**
9:20;21:23;45:13;
50:6
**wrap (1)**
39:17
**wrapped (2)**
30:17;34:17
**writing (1)**
19:15
**wrong (3)**
23:20;41:10;42:8
**wrote (1)**
38:14

**Y**

**yarn (1)**
28:22
**yield (1)**
23:24
**York (1)**
5:6

**Z**

**Zillow (3)**
43:3,7,10
**Zoom (3)**
8:15,19,25

**1**

**1 (1)**
41:5
**10 (1)**
5:12
**10004 (1)**
5:6
**10573 (1)**
5:14
**10583 (1)**
5:23
**11 (3)**
7:4;11:12,19
**1205 (1)**

5:13
**16-22616 (1)**
7:4
**18-23-674 (1)**
7:5

**2**

**2014 (1)**
46:1
**2016 (1)**
10:11
**2018 (1)**
10:11
**237 (1)**
5:22

**3**

**3:33 (1)**
56:2
**300,000 (1)**
42:20
**327 (1)**
21:10
**327a (1)**
29:6

**4**

**400- (1)**
43:1
**400,000 (2)**
13:13;38:8
**403- (2)**
15:8;16:9
**403,000 (2)**
14:23;19:11
**403,000-dollar (1)**
15:14

**5**

**5,000 (1)**
19:9
**534 (1)**
5:5

**6**

**617 (1)**
7:4

**7**

**7 (1)**
23:1
**700 (1)**
5:21