```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
In re:
                                                              Case No.: 16-22617-SHL
HELEN RACANELLI,                                              (Chapter 11)
                    Debtor.
------------------------------------------------------------------------X
In re:                                                        Case No.: 18-23674-SHL
                                                              (Chapter 11)
JOSEPH T. GRANCHELLI,
                    Debtor.                                   OBJECTION
------------------------------------------------------------------------X
```

**LINDA M. TIRELLI ESQ.'S OBJECTION TO UNITED STATES TRUSTEE'S MOTION FOR AN ORDER: (1) VACATING ORDERS AUTHORIZING EMPLOYMENT OF DEBTORS' COUNSEL, LINDA M. TIRELLI, ESQ; (2) REQUIRING RETURN OF ALL FEES PAID; AND (3) IMPOSING SANCTIONS**

TO:   THE HONORABLE SEAN H. LANE,
      UNITED STATES BANKRUPTCY JUDGE:

NOW HERE COMES Linda M. Tirelli, Esq. ("Tirelli"), counsel to debtors, Helen Racanelli ("Debtor Racanelli") and Joseph T. Granchelli ("Debtor Granchelli"), by way of objection to the motion filed by William K. Harrington, the United States Trustee for Region 2 ("United States Trustee"), for an order: (1) vacating the orders authorizing the retention and employment of Tirelli in the above-captioned chapter 11 cases[1]; (2) requiring the return of all fees for legal services paid to Tirelli in the Racanelli and Granchelli; and (3) imposing sanctions against Tirelli. Tirelli, through counsel, states as follows:

## PRELIMINARY STATEMENT

1.   The United States Trustee's motion is nothing more than a regurgitation of his motions to reopen the Racanelli and Granchelli Cases, which is equally flawed, dressing up mere

---

[1] The case known as *In re Helen Racanelli*, (No. 16-22617-SHL)), is referred to as the "Racanelli Case." The case known as *In re Joseph T. Granchelli*, (No. 18-23674-SHL), is referred to as the "Granchelli Case," and when referred to jointly, the "Racanelli and Granchelli Cases."

1

coincidence and minor overlap in representation with a nefarious attempt to withhold information to the Court, which wholly fails to support the incredulous relief sought against Tirelli. The United States Trustee's motion serves no purpose other than to burden and harass Tirelli.

2. As discussed below, the United States Trustee takes issue with the candor of disclosures that do not trigger any ethical obligations and did not materially affect the Cases. Tirelli had no obligation to make such disclosures, and her purported failures to disclose relationships that otherwise had no relationship to the Cases do not warrant the vacatur of Tirelli's retention orders, disgorgement of fees, or sanctions.

### **RELEVANT FACTUAL AND PROCEDURAL HISTORY**

3. For brevity, Tirelli incorporates each and every allegation, including the facts and procedural history from the Racanelli Case, the "Relevant Factual and Procedural History" from Tirelli's Objection to the United States Trustee's motion to reopen the Racanelli Case [Racanelli ECF Doc. 167], along with any and all defined terms (unless otherwise indicated), as if fully stated herein.

4. Tirelli also incorporates each and every allegation, including the facts and procedural history from the Granchelli Case, from Debtor Granchelli's Objection to the United States Trustee's motion to reopen the Granchelli Case. [Granchelli ECF Doc. No. 191], Tirelli's Objection to the United States Trustee's motion to reopen the Granchelli Case [Granchelli ECF Doc. 189], along with any and all defined terms (unless otherwise indicated), as if fully stated herein.

## ANALYSIS

**A.     Tirelli Did Not Violate her Disclosure Obligations Under Bankruptcy Code §§ 327 and 330, the Disciplinary Rules, or her Fiduciary Duties as Chapter 11 Counsel**

5.     Section 327(a) of the Bankruptcy Code requires an attorney employed by a trustee be "disinterested." *In re Granite Partners, L.P.*, 219 B.R. 22, 23 (Bankr .S.D.N.Y. 1998) (internal citations omitted). Section 101(14) defines a disinterested person as (a) not a creditor, an equity security holder, or an insider; (b) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. *See* 11 U.S.C. § 101(14).

6.     Undefined by the Bankruptcy Code, an "adverse interest" has "come to mean either (1) the possession or assertion of any economic interest that would tend to lessen the value of the bankruptcy estate or create an actual or potential dispute with the estate as a rival claimant, or (2) a predisposition of bias against the estate." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (internal citations omitted). Moreover, the professional has a disabling conflict if he or she has "either a meaningful incentive to act contrary to the best interests of the estate … or the reasonable perception of one." *Id*. Said differently, remedial measures are appropriate if "it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation." *Id.*, *quoting*, *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).

7.     Here, the United States Trustee's motion is based on Tirelli's failure to disclose: (1) in the Granchelli Case, (a) her representation of Earth Improvements in the Dibble Action, and (b) her representation of the Racanelli Debtor, because the Racanelli Debtor's spouse held an

3

ownership interest in Earth Improvements; and (2) in the Racanelli Case, (a) her representation of Earth Improvements in the Dibble Action, and (b) that Earth Improvements was the counter-party in the sale by Debtor Granchelli. However, in support, the United States Trustee implicitly acknowledges that such representations were not adverse to any interest of the Debtors. Rather, the United States Trustee only recites the standards of disclosure and factually inapposite cases, seemingly indicating that in the event of a 'close call' a practitioner should err on the side of disclosure. However, noticeably absent in his motion is any actual articulation of an adverse interest that would trigger Tirelli's disclosure obligations.

8. As a threshold matter, Earth Improvements was not ever a creditor in the Racanelli Case and Debtor Racanelli's spouse, individually, was not seeking relief in bankruptcy or otherwise had an actual or conceivable adverse interest in the Racanelli Case. Turning first to Tirelli's representation of Earth Improvements in the Dibble Action, the United States Trustee explicitly provides the factual underpinnings and scope of that action. Specifically, the United States Trustee stated that the Dibble Action concerned a real estate development project in Sleepy Hollow, New York. (ECF Doc. 174, ¶48). The United States Trustee does not even hint or suggest that the Dibble Action had any relation to the Racanelli Case, the Property, or Debtor Racanelli. In doing so, the United States Trustee ignores corporate formalities and paints with an impermissibly wide brush. Said differently, there is not even a suggestion that the Dibble Action could reasonably impair Tirelli's actions as counsel for Debtor Racanelli, nor could it be perceived as such. In the Dibble Action, Tirelli's limited representation of Earth Improvements involved filing a motion to dismiss on the grounds that Earth Improvements was incorrectly named as defendant, which was granted by the Court. The Dibble Action posed no adverse interest to Debtor Racanelli, a school teacher, who had no involvement in Earth Improvement's construction

business.

9. Moreover, the United States Trustee even concedes that the representation of Earth Improvements in the Dibble Action required minimal legal work. There is no dispute that Tirelli and her Firm appeared in the Dibble Action, filed a pre-answer dispositive motion, argued it, and then secured dismissal. [ECF Doc. 174, ¶¶50 – 52]. The United States Trustee has not, because he cannot, demonstrate that the Dibble Action representation even tangentially concerned these Cases. Rather, the United States Trustee points to all of the opportunities to disclose the representation. Most notably, nowhere in the United States Trustee's moving papers does he argue how Earth Improvements is a party in interest triggering Tirelli's disclosure obligations or how the representation of a non-debtor, non-creditor rendered Tirelli "interested."

10. As to the Granchelli case, other than asserting bare-boned conclusions based on pure speculation, the United States Trustee similarly has not demonstrated how Tirelli's loyalty could possibly be divided between: (1) Debtor Racanelli and the representation of any entity that has no interest in the Racanelli Case; and (2) Debtor Granchelli and Earth Improvements, especially light of the fact that Tirelli did not represent the Debtor in the sale of the Property. Any argument to the contrary would be utter fantasy.

11. Second, with respect to Tirelli's failure to disclose her representation of Debtor Granchelli in the Racanelli Case, such a 'connection' is even more remote and, at best, *de minimis*. In the Granchelli Case, Earth Improvements was in fact a stalking horse bidder, submitting the second highest bid in trying to purchase the Granchelli Property from Debtor Granchelli's estate. However, the United States Trustee purposefully ignores that Tirelli did not represent either Earth Improvements or Debtor Granchelli in the sale of the Granchelli Property. Moreover, the United States Trustee simply refuses to acknowledge the Granchelli Case record, which conclusively

established that Tirelli had no role in Earth Improvements' bidding on the Granchelli Property. Tirelli did not introduce Debtor Granchelli to Earth Improvements, nor did she represent Debtor Granchelli or Earth Improvements at the closing of the Granchelli Property. [Granchelli ECF Doc. 85]. A flyer was delivered to Debtor Granchelli, with no indication that Earth Improvements would ultimately submit a bid, and Tirelli did not engage in any negotiations with respect to Earth Improvements' bid; rather, she simply submitted the bid to the Court. The negotiations and sale of the Granchelli Property were, in fact, conducted at arms' length. The United States Trustee has only pointed to a vague "connection" that is far too attenuated to pass muster. To be specific, Tirelli did contact some of the individuals and entities that submitted flyers or otherwise demonstrated interest in purchasing the Granchelli Property. However, only one entity submitted an offer, *i.e.*, Earth Improvements. Once Earth Improvements submitted an offer, Tirelli was put in touch with counsel for Earth Improvements, and the offer was presented to the Court. [Granchelli ECF Doc. 56].

12. Third, with respect to failure Tirelli's failure to disclose her representation of the Racanelli Debtor in the Granchelli Case, such a 'connection' is remote and *de minimis* at best. Again, in the Racanelli Case, Earth Improvements had no role whatsoever. The Racanelli Debtor's spouse was not a creditor, nor were his assets part of the Racanelli Debtor's estate. It cannot follow that the mere technical overlap posed any ethical issues, or even the appearance of same.

13. Perhaps most damning, the United States Trustee advances fantastical leaps of logic, tacitly alleging that Tirelli *must* have had some role in introducing Earth Improvements to the Granchelli Debtor. However, in doing so, the United States Trustee offers nothing in support other than speculation and conjecture. Most glaringly, the United States Trustee offers no evidence, and despite the passage of time, has conducted no discovery, has not noticed a single deposition,

6

offered any sworn statements or produced any fact witnesses to support the false allegation that Tirelli introduced Debtor Granchelli and Earth Improvements. Again, there remains no mystery as to how Earth Improvements came to submit a bid. The Property was known to be in distress and in foreclosure. As is often the practice, a development firm delivered a mailing to the Debtor. Thereafter, both the Debtor and Earth Improvements closed on the Property, after DBNTC failed to close on its credit bid, and both parties were represented by counsel other than Tirelli. [ECF Doc. 183-4].

14. Moreover, in the United States Trustee's desperate attempt to articulate how the alleged non-disclosures caused harm, he conclusively states, "[t]he nature of the non-disclosures in this case directly affected another bankruptcy – the Racanelli Case…". [ECF Doc. 174, p. 21]. However, the United States Trustee still has failed to articulate how the Racanelli Case was at all affected, negatively or otherwise, from the mere happenstance of Tirelli's representations. Boiled down, the United States Trustee's argument is nothing more than a passing reference to the Racanelli Case without any meaningful allegation of how the Tirelli's representation adversely affected anyone's interest. Precisely because it did no such thing.

15. The United States Trustee, in an exercise of futility, alleges that Tirelli had ample opportunities to correct the Granchelli Debtor's misstatements about his relationship with Earth Improvements. However, there are simply no misstatements to correct. The parties had not met in person until arriving at Tirelli's offices during the pendency of the Granchelli Case. [ECF Doc. 85]. Tirelli did not introduce the parties to each other. *Id.* By Debtor Granchelli and Tirelli representing that the sale of the Property was the result of an arms' length transaction between two non-insiders, no false statement, material or otherwise, was uttered. Moreover, DBNTC explicitly did not rely on upon any such statements as it opposed the Sale Order and entered a credit bid to

7

purchase the Property, which it failed to consummate. There simply is no nefarious conduct at issue here that would necessitate the drastic remedial measures sought.

16. Moreover, the United States Trustee, is ignoring corporate formalities, unable to fathom that an individual, other than the Racanelli Debtor's spouse, could possibly have located the Debtor and attempted to purchase the Property, which is exactly what occurred. [ECF Doc. 85]. Rather, the United States Trustee points to the Racanelli Debtor's spouse's signature on the contract of sale as some smoking gun. But, again, executing a document in a corporate capacity does not serve to otherwise support the fantasy that the United States Trustee puts before the Court. Said differently, the United States Trustee is left with only conjecture and conclusory allegations to support its grounds to vacate the retention orders and disgorgement of fees, which does nothing to satisfy his burden on the motion.

17. In light of the foregoing, it is abundantly clear that the United States Trustee has failed to establish that Tirelli violated her disclosure obligations under §§ 327 and 330. As required by § 327(a) and § 101(14), when Tirelli's representation of Debtor Granchelli and Debtor Racanelli were approved, the requirement of disinterestedness was met despite Tirelli's limited representation of Earth Improvements in an unrelated action. *See In re Trigee Foundation, Inc.*, 2017 WL 562425, Case No. 12-00624 (Bankr. D.D.C. Feb. 10, 2017). The United States Trustee's motion simply alleges no facts that there was a conflict of interest that would have required the Court to disapprove of the employment under 11 U.S.C. § 327(a) had the minor overlapping representations been disclosed.

18. Furthermore, to the extent there were minor overlapping representations, those relationships, again, were remote, unrelated to the Cases, and did not implicate Tirelli's loyalty or objectivity. As such, they were not "connections" required to be disclosed under Rule 2014(a). At

all relevant times, and as discussed above, Tirelli was a disinterested person within the meaning of 11 USC § 101(14) and § 327(a). The incidental representation did not create a bias or economic interest adverse to the estate or any class of creditors. There has been no showing of divided or impaired judgment. Rather, the United States Trustee's motion is premised upon pure speculation.

19. Even if the Court assumes, arguendo, that the disclosure under Rule 2014(a) was imperfect, the United States Trustee has failed to demonstrate any actual prejudice. The retentions were duly noticed, the work performed benefited the Debtors, and the fees awarded were reasonable and appropriately scrutinized. Rule 2014(a) is not a trap for technical omissions. It is intended to provide transparency, not to punish parties for nonmaterial oversights.

20. With respect to the United States Trustee's claims that Tirelli violated the Rules of Professional Conduct, no such violations occurred. The Rules of Professional Conduct cited by the United States Trustee, specifically, Rule 8.4 and Rule 3.3, relate to conduct involving dishonesty, fraud, deceit or misrepresentation with the court, and the ethical duty of candor to the tribunal, respectively. Again, neither of these ethical rules were violated since Tirelli's nondisclosure of attenuated, unrelated connections had no impact—let alone an adverse one—on the Cases, nor did these impact Tirelli's undivided loyalty to the Debtors and their estates. There was no misrepresentation or intentional withholding of information, as the connections were not required to be disclosed. Again, Tirelli was and remained completely disinterested. Nothing about Tirelli's disclosures even remotely resemble the sort of actionable omissions that the United States Trustee wishes them to be. Tirelli's nondisclosure did not harm the legal process or public trust, and the United States Trustee emphatically mischaracterizes these minute connections to bolster his own agenda designed to harass and discredit Tirelli.

21. As the Court begins to unravel the United States Trustee's motion, it is clear that he

relies only upon the vague idea of "where there is smoke, there is fire", which is patently insufficient. And, in this case, the smoke is mere coincidence coupled with the United States Trustee's misguided trust that DBNTC conducted even a shred of due diligence before filing its Motion to Reopen these Cases, which it clearly failed to do. Indeed, DBNTC brought its motion to reopen the Granchelli Case based on erroneous assumptions, as evidenced by DBNTC's amended motion to reopen and the settlement reached between DBNTC and Earth Improvements. [Granchelli ECF Doc. Nos. 185, 201].

22. As set forth in Tirelli's Omnibus Objection to the Motions to Reopen and Earth Improvements' cross-motion to reopen the Granchelli Case, DBNTC's prior motion falsely claimed that it was never paid after the sale of the Granchelli Property. [Granchelli ECF Doc. No. 189]. To the contrary, not only was a check issued and delivered by Granchelli Debtor's real estate counsel, but confirmation that the check was delivered to DBNTC's servicer was sent to the same counsel that filed DBNTC's defective motion immediately following the sale. Further, the company servicing DBNTC's mortgage confirmed receipt of the payment, in writing, rejecting it because it was not the full amount owed under the existing note. Clearly, DBNTC's statement that it never received the proceeds of sale of the Granchelli Property was, at best, an inexcusable error evidencing an utter failure to review its own records and communications. In addition, as part of the settlement following the Order reopening the Granchelli Case, DBNTC paid legal fees to Earth Improvement, further highlighting DBNTC's error in bringing the Motion to Reopen, which ultimately provided the United States Trustee false ammunition to continue the instant witch hunt against Tirelli.

23. Notably, the United States Trustee alleges at great length about how Tirelli challenged the assigned trustee in the Proceeding. [ECF Doc. 174, ¶29]. However, the United

States Trustee fails to bring to the Court's attention that Tirelli filed a report of misconduct with the United States Trustee's office to address the assigned trustee's abhorrent behavior. And, in response, the Assistant United States Trustee, Linda Rifkin, investigated the matter and apologized to Tirelli for the assigned trustee's conduct. After dismissal of the Proceeding, Tirelli filed a second complaint to address the same assigned trustee's conduct and his misuse of personal documents filed in the Proceeding for outside, unrelated matters.

24. At first glance, there is no meaningful purpose behind the articulation of Tirelli's relationship with the assigned trustee. Rather, it evidences the United States Trustee's intent in pursuing Tirelli, personal animus, which is far removed from operating as a legitimate basis to disturb the vacatur of the retention and fee orders.

25. Ultimately, the United States Trustee's motion serves no purpose other than to burden the Debtor and harass Tirelli. The United States Trustee takes issue with the candor of disclosures that do not actually implicate any ethical obligations, nor did it otherwise materially affect the Cases. The United States Trustee cannot articulate how his Motion serves to benefit any individual or entity, interested or otherwise. Even the United States' manifested interest of rewarding the bankruptcy system at large is misstated. The United States Trustee' Motion, if granted, will provide no benefit to the Debtors or creditors and, even if it hypothetically served to benefit the Debtors, they do not want the relief.

26. In light of the conduct of his assigned trustee and his abject failure to investigate DBNTC's allegations before joining them, the United States Trustee has proven himself to be biased and an inappropriate steward for the subject pursuit against Tirelli. This Court is not the proper forum for the United States Trustee to continue his campaign of harassment against a bankruptcy practitioner.

**B. The United States Trustee's Request to Vacate the Retention and Interim and Final Fee Orders in the Cases Must be Denied**

27. The United States Trustee's reliance on Federal Rule of Civil Procedure ("Rule") 60(b)(6) and 11 U.S.C. § 150(a) is gravely misplaced, and the instant motion seeking to vacate the retention and fee orders in these Cases must be denied.

28. With respect to Rule 60(b)(6), the United States Trustee points to the alleged misrepresentations made by Tirelli in her failure to disclose her representation of Earth Improvements in the Dibble Action, and her representation of the Racanelli Debtor in the Racanelli Case, because the Racanelli Debtor's spouse held an ownership interest in Earth Improvements. However, these alleged misrepresentations fit within the grounds for relief enumerated in Rule 60(b)(3), dealing with "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."

29. "A party may only seek relief under Rule 60(b)(6) citing any other reason that justifies relief, meaning any other reason not already enumerated in the preceding subsections." *See In re Trigee*, 20117 WL 562428, at *4. As the Court explained in *Trigee*, "[b]ecause the alleged misrepresentation would be grounds for relief under Rule 60(b)(3), the misrepresentation cannot be a ground for relief under Rule 60(b)(6)." *Id.* "To interpret 60(b)(6) any other way would make the time limitations on motions under 60(b)(1)-(3) meaningless. *Balta Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, 642 (D.C. Cir. 1996). Accordingly, the United States Trustee should not be permitted to use Rule 60(b)(6) to circumvent the one-year deadline, and relief under Rule 60(b)(3) is time-barred.

30. Notwithstanding, the United States Trustee fails to establish entitlement to relief under Rule 60(b)(6), which, as he acknowledges, is reserved for "extraordinary circumstances." *Ackerman v. Untied States*, 340 U.S. 193, 199 (1950). For instance, the United States Trustee relies

12

on *In re Southmark Corp.*, 181 B.R. 291 (Bankr. N.D. Tex. 1995) ("*Southmark*") to support the vacatur of Tirelli's retention and fee orders in these Cases. However, *Southmark* is entirely inapposite to the facts here.

31. In *Southmark*, the Chapter 11 debtor, Southmark, moved for relief from a final order awarding compensation to examiner's accountants, Coopers & Lybrand ("Coopers"), based on Coopers' alleged inadequate disclosures regarding actual conflict of interest involving Drexel, Southmark's investment banker. Specifically, Coopers failed to disclose that it provided audit services for Drexel, that Drexel paid Coopers approximately $18.5 million for those services, and that, during the course of Coopers' employment, Coopers recognized but did not pursue an investigation of Southmark securities claims against Drexel, Coopers' client. Additionally, prior to Coopers' appointment, Drexel pled guilty to federal criminal charges and agreed to a consent decree with the SEC, under which a $650 million fund was set to satisfy civil securities claims against Drexel. Drexel's parent company subsequently filed a petition for relief under Chapter 11.

32. Emphasizing Coopers' failure to inform the Court of the magnitude of its work for Drexel, the Court held: "It is one thing to analyze avoidance actions under the Bankruptcy Code or what Southmark did with the high yield bond revenue, it is another thing to investigate securities issues against a client that has paid the accountant $18.5 million in 2½ years, has pled guilty to criminal charges, has entered a consent decree with the SEC establishing a $650 million fund and whose parent has filed a Chapter 11 petition." *Id.* at 293. As a result, the Court ordered the partial disgorgement of fees and set aside the final order approving the fee application and awarding Coopers' accountants' fees. *Id*.

33. Clearly, Tirelli's failure to disclose the minimal overlapping representations that were not adverse to any interests falls abundantly short of the conduct that was at issue in

*Southmark*. Rather, Tirelli's representation in these cases are more akin to conduct that was raised in *Trigee* and ultimately deemed insufficient to warrant the fee order's vacatur. *See Trigee*, 2017 WL 562425.

34. In *Trigee*, the creditor-movant sought to vacate the fee order awarded to the debtor's counsel on the grounds that counsel failed to disclose their prior representation of another creditor. *Id.* The Court held that even had the conflict been disclosed, there was no basis to conclude it would have disqualified the attorneys under § 327 as the legal threshold for disqualification was not satisfied. *Id.* at *6. Further, the Court determined that even if a conflict had been raised, counsel's legal services to the other creditor were minimal, and that information was shared with the debtor, and the other creditor knew of the relationship and did not object, effectively waiving any potential conflict. *Id.*

35. The Court additionally rejected the creditor-movant's arguments regarding Rule 60 on the following grounds: (1) motions under Rule 60(b)(3) (fraud or misconduct) must be made within one-year of the order, and the movant's two-year delay disqualified her from such relief; (2) the creditor-movant's reliance on Rule 60(b)(6) was improper, as this section only applies when no other subsection covers the relief sought, and since the allegations of misrepresentation would fall under 60(b)(3), the creditor-movant could not use 60(b)(6) to circumvent the one-year deadline; (3) the creditor-movant failed to meet the extremely high standard of Rule 60(d)(3), which provides relief in cases of fraud on the court, as mere negligence or failure to disclose is not enough—there must be a calculated plan to corrupt the judicial process. *Id.* at *4-5. Thus, the Court's decision in *Trigee* highlights the refusal to void orders absent concrete harm or deception, neither of which exist here.

36. Since the United States Trustee has not and cannot establish that Tirelli violated her

disclosure obligations, vacatur of the retention and fee orders in these Cases is similarly not warranted under Bankruptcy Code § 105(a). Again, the cases cited by the United States Trustee in support of vacatur under this provision are wholly dissimilar to the facts of these Cases.

C. **The United States Trustee's Request for Sanctions Must be Denied**

37. For the reasons set forth above, the United States Trustee's request for sanctions in the form of disgorgement of legal fees must be denied. The disgorgement of fees provides no benefit to the Debtors or creditors, and the Debtors have explicitly stated that they do not want such relief.

38. Furthermore, the United States Trustee's baseless request to impose the suspension of Tirelli's privileges to file further chapter 11 cases in this Court is wholly inappropriate and unsupported. The United States Trustee's impetus for seeking sanctions is premised upon the false notion that Tirelli's failure to disclose "significant" connections demonstrates a "systemic lack of candor." No such pattern of conduct exists. There is no support for the assertion that the alleged failure to advise the Court of the coincidence in Tirelli's representation rises to a material misstatement, and certainly not one warranting the egregious sanctions being sought by the United States Trustee.

## CONCLUSION

39. Based upon the foregoing, the United States Trustee's motion must be denied since Tirelli did not violate any rules of disclosure.

40. Earth Improvements was never a creditor in the Racanelli Case, and Racanelli's spouse, individually, was not seeking relief in bankruptcy or otherwise had an interest in the Racanelli Case. Again, the United States Trustee's motion is wholly devoid of any suggestion that the Dibble Action had any relation either Case, the Granchelli Property, or either Debtors. The

Dibble Action could not reasonably impair Tirelli's actions as counsel for either Debtors, nor could it be perceived as such. Again, the representation in the Dibble Action required minimal legal services—a notice of appearance and motion to dismiss.

41. As to Tirelli's representation of Debtor Racanelli, such a "connection" is remote and *de minimis*. In the Racanelli Case, Earth Improvements had no role whatsoever. Debtor Racanelli's spouse was not a creditor, nor were his assets part of the Debtor Racanelli's bankruptcy estate.

42. Finally, the sale of the Granchelli Property occurred in the precise manner described. Tirelli did not introduce Earth Improvements to Debtor Granchelli, nor did she suggest that Earth Improvements place a bid. Tirelli merely sought approval of the sale, as counsel for Debtor Granchelli. And, DBNTC's valuation of the Granchelli Property did not account for the condition of the structures. The Granchelli Property was in a dilapidated condition and would not have generated a higher bid from any third-party.

43. The facts stated herein simply do not trigger any disclosure obligations, and the circumstances certainly do not justify the relief sought.

**WHEREFORE**, Tirelli prays that:

A. Each and every request for relief in the United States Trustee's motion be denied, with prejudice;

B. The Court grant such other and further relief that is deemed just and proper.

Dated: New York, New York
June 26, 2025

                                                   GORDON REES SCULLY MANSUKHANI, LLP

                                                   */s/ Sarah Prager*_____
                                                   Sarah Prager
                                                 Joseph Salvo
                                                 1 Battery Park Plaza, 28th Floor
                                                 New York, NY 10004
                                                 212-269-5500

                                                 *Attorneys for Linda M. Tirelli, Esq.*